# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

JANE ROE, individually and on behalf of all
others similarly situated,

              Plaintiff,

vs.

INTELLICORP RECORDS, INC., an Ohio
corporation, and DOES 1-50, inclusive,

              Defendant.

Case No.: 1:12-CV-02288-JG

Judge: James S. Gwin

**PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS
CERTIFICATION AND APPROVAL OF
CLASS COUNSEL**

## TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................. ii

II. SUMMARY OF CLASS CLAIMS ....................................................................... 4

    A.  The "Maximum Possible Accuracy" Requirements of The FCRA ..................................... 4

    B.  Intellicorp's Violations ............................................................................ 6

    C.  Statutory Penalties ................................................................................. 9

    D.  Plaintiff's Experience............................................................................. 10

III. ARGUMENT ...................................................................................................... 11

    A.  The Class Is Numerous ......................................................................... 13

    B.  This Case Presents Common Issues of Law and Fact........................................ 13

    C.  Plaintiff's Claims Are Typical of The Class She Seeks to Represent ............................ 15

    D.  Plaintiff and Her Counsel Are Adequate Representatives of The Class.......................... 16

    E.  Common Issues Predominate.................................................................... 16

    F.  A Class Action Is The Superior Method For Resolution of Plaintiff's Claims ................ 19

IV. CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acosta v. Trans Union*
 243 F.R.D. 377 (C.D. Cal. 2007) ................................................................................. 13

*Alexander Grant & Co. v. McAlister*
 116 F.R.D 583 (S.D.Ohio 1987) ................................................................................. 16

*Amchem Prods. Inc. v. Windsor*
 521 U.S. 591 (1997) .............................................................................................. 14, 19

*Beattie v. CenturyTel Inc.*
 511 F.3d 554 (6th Cir. 2007) ................................................................................ 15, 17

*Beaudry v. TeleCheck Services, Inc.*
 578 F.3d 702 (6th Cir. 2009) ............................................................................. 5, 6, 18

*Boggio v. USAA Federal Sav. Bank*
 696 F.3d 611 (6th Cir. 2012) ................................................................................. 5, 10

*Bremiller v. Cleveland Psych. Inst.*
 195 F.R.D. 1 (N.D. Ohio 2000) ................................................................................. 14

*Card v. City of Cleveland*
 270 F.R.D. 280 (N.D. Ohio 2010) ............................................................................. 13

*Cavin v. Home Loan Ctr., Inc.*
 236 F.R.D. 387 (N.D. Ill. 2006) .......................................................................... 18, 19

*Chakejian v Equifax Info. Services*
 256 F.R.D. 492 (E.D. Penn. 2009) ...................................................................... 12, 17

*Clark v. Experian Info Solutions, Inc.*
 2002 WL 2005709 (D.S.C. June 26, 2002) ......................................................... 13, 18

*Gillespie v. Equifax Info. Serv. LLC*
 2008 WL 4614327 (N.D.Ill. Oct. 15, 2008) .............................................................. 19

*Guimond v. Trans Union Credit Info. Co.*
 45 F.3d 1329 (9th Cir.1995) ......................................................................................... 4

*Harris v. Experian Info. Solutions, Inc.*
 D. S.Car. No. 6:06-CV-01808-GRA (May 29, 2008) ............................................... 13

*In re Farmers Ins. Co., Inc. FCRA Litig.*
 741 F. Supp. 2d 1211 (W.D. Okla. 2010) .................................................................. 19

*In re Telectronics Pacing Systems, Inc.*
 164 F.R.D. 222 (S.D. Ohio 1995) .............................................................................. 15

*In re Whirlpool Corp Front-Loading Washer Products Liability Litig.*
 678 F.3d 409 (6th Cir. 2012) ........................................................................................ 12, 14

*Int'l Union v. General Motors Corp.*
 497 F.3d 615 (6th Cir. 2007) ............................................................................................... 16

*Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris Inc.*
 182 F.R.D. 523 (N.D. Ohio 1998) ........................................................................................ 14

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*
 271 F.R.D. 572 (N.D. Ohio 2010) ........................................................................................ 19

*Kelly v. Montgomery Lunch & Associates Inc.*
 2007 WL 4562913 (No. 1:07-CV-919, Dec. 19, 2007) ......................................................... 16

*Koropoulos v. Credit Bureau, Inc.*
 734 F.2d 37 (D.C. Cir. 1984) ................................................................................................. 4

*Murray v. GMAC Mortgage Corp.*
 434 F.3d 948 (7th Cir. 2006) ............................................................................................... 18

*Murray v. New Cingular Wireless Services, Inc.*
 232 F.R.D. 295 (N.D. Ill. 2005) ........................................................................................... 18

*Obabueki v. Int'l Business Machines Corp.*
 145 F.Supp.2d 371 (S.D.N.Y. 2001) ....................................................................................... 9

*Pella Corp. v. Saltzman*
 60 F.3d 391 (7th Cir. 2010) ................................................................................................. 18

*Poore v. Sterling Testing Systems, Inc.*
 410 F.Supp.2d 557 (E.D. Ky. 2006) ........................................................................................ 5

*Safeco Ins. Co. of Am. v. Burr*
 551 U.S. 47 (2007) ............................................................................................................... 10

*Senter v. General Motors Corp.*
 532 F.2d 511 (6th Cir. 1976) ..................................................................................... 13, 14, 15

*Serrano v. Sterling Testing Systems, Inc.*
 711 F.Supp.2d 402 (E.D. Pa. 2010) ...................................................................................... 13

*Singleton v. Domino's Pizza, LLC*
 2012 WL 245965 (D. Md. Jan. 25, 2012) ............................................................................. 10

*Smith v. HireRight Solutions, Inc.*
 711 F.Supp.2d 426 (E.D. Pa. 2010) ................................................................................... 4, 12

*Sprague v. Gen. Motors Corp.*
 133 F.3d 388 (6th Cir.1998) ...................................................................................... 12, 14, 15

*Stanich v. Travelers Indm. Co.*
 249 F.R.D. 506 (N.D. Ohio 2008) ......................................................................................... 12

*Taylor v. CSX Transp.*
  264 F.R.D. 281 (N.D. Ohio 2007) ........................................................................ 20

*Thomas v. Intellicorp Records, Inc.*
  N.D. Ohio No. 1:12-cv-02443-DAP .................................................................... 19

*Vidoni v. Acadia Corp.*
  2012 WL 1565128 (D. Me. Apr. 27, 2012) ........................................................ 10

*Wal–Mart Stores, Inc. v. Dukes*
  131 S.Ct. 2541 (2011) .......................................................................... 12, 15, 19

*Young v. Nationwide Ins.*
  693 F.3d 532 (6th Cir. 2012) ......................................................................... 15, 17

## Rules & Statutes

Fair Credit Reporting Act, 15 U.S.C. § 1681 ........................................................ *passim*

Federal Rules of Civil Procedure 23 ................................................................... *passim*

## Other Authorities

FTC Staff Opinion Letter, May 5, 1999 .................................................................. 6

FTC *Statement of General Policy or Interp., Commentary on the FCRA*
  55 Fed. Reg. 18,804, 18,820 (May 4, 1990) ...................................................... 9

FTC, *40 Years Of Experience With The Fair Credit Reporting Act*, July 2011 ............................. 9

S. 823 introduced at 115 Cong. Rec. 2412 (1969) ....................................................... 4

## I.    INTRODUCTION

Defendant IntelliCorp Records, Inc. ("Intellicorp") is a nationwide provider of consumer reports, including credit reports and criminal background checks.  One of the company's most popular products is an "instant" background report, "Criminal SuperSearch" ("CSS") that enables a prospective employer to log onto Intellicorp's website and determine, within seconds, whether an applicant has a criminal record.[1]  Intellicorp markets CSS reports as "FCRA Compliant," and contends that they comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.  That is not, however, the case.  The FCRA requires consumer reporting agencies to use "reasonable procedures to assure maximum possible accuracy."  (15 U.S.C. §1681e(b).)  Yet, because Intellicorp's instant reports are generated *solely* from information collected from bulk data sources and stored in its internal databases (rather than a review of court records), CSS reports are out of date and in many cases materially incomplete, inaccurate, and misleading.

Intellicorp is well aware that many of the records uploaded into its database are missing *what the company itself describes* as the "core criteria" necessary to make a background report complete, and that it advises its customers to review:  the disposition of the charges (conviction or acquittal?), the level of the charges (infraction, misdemeanor or felony), and the corresponding dates.[2]  That information is readily and cheaply available from the court records, but many of the sources of the bulk data input into Intellicorp's system do not include those data fields.  Rather than waiting to furnish a report until it has completed its investigation by obtaining the missing data from the court records, Intellicorp in such cases furnishes CSS reports that falsely state the information is "NOT PROVIDED."

Acknowledging that such reports are neither accurate nor complete, Intellicorp, through its sophisticated software platform "IntelliSearch" (*see* Dep. of Intellicorp Compliance Manager

---

[1] Intellicorp clients are given user ID's and passwords with which they can access Intellicorp's website and order a CSS without the involvement of any human.  The database spits out the results in 3 seconds. (Dep. of Intellicorp IT designee David Garrett [Mot. Exh. E], 52:18-53:24, 62:3-12, 105:19-20); Dep. of Intellicorp President Todd Carpenter [Mot. Exh.C], 64:14-65:13, 75:16-21, 122:24-123:7 and Dep. Exh. 25 [Client User Manual, Mot. Exh. Q, 194:22-195:22]; Deft. Responses to Pltf's. First Set of Interrogs. [Mot. Exh. A], Interrog. 12.)  At least 75% of the reports Intellicorp sells to employers are Criminal SuperSearches.  (Carpenter Dep., 51:7-20.)
[2] *See, e.g.,* Mot. Exh. N, S, discussed *infra*.

Jennifer Sebeck [Mot. Exh. H] 53:4-11), "recommends" that employers purchase *additional* search products.  When a CSS returns criminal history ("results") from a source that does not provide all the core criteria, Intellicorp recommends that employers also purchase a "Single County Criminal" ("SCC") or Criminal Case Update ("CCU") search that includes an individualized, on-line or in-person review of the consumer's current court records.  Such recommendations are not, however, a cure for – nor can they undo the harm caused by – the noncompliant instant reports that Intellicorp provides, for several reasons:

- First, Intellicorp's "recommendations" are just that.  A client purchasing a consumer report from Intellicorp for employment purposes is not required to buy a second report, but is free to purchase only the initial SuperSearch, even when Intellicorp's own analysis reveals the report is missing core criteria and is not, therefore, FCRA-compliant.[3]

- Second, even if the employer does purchase a SCC report, Intellicorp does not wait until that report is completed before furnishing the SuperSearch results, seconds after they are requested.  SCC searches – which are most often performed by third parties – take several days, at which point the harm caused by the inaccurate "instant" results has been done.[4]

- At the same time, Intellicorp instructs its customers to "go to the Results Center" to view their completed searches *as soon as they have submitted a search.* (Client User Manual [Mot. Exh. Q] at p.8 [INT_0001581].)

Thus, Intellicorp not only allows but actually encourages employers to base hiring decisions on the incomplete, out of date, and inherently misleading information in the instant search report, even when different – and often exonerating – information may later be provided in a second report.  This system injures both consumers and employers.

Plaintiff Jane Roe is one of the many victims of Intellicorp's shoddy practices, which lie

---

[3]  Carpenter Dep., 71:25-72:8, 72:21-73:14; Sebeck Dep., 53:12-54:6, 63:24-65:5.
[4] Intellicorp president Carpenter confirmed that "if you order a Criminal SuperSearch … and you are going to also get a single county search, …, you, the employer, can view the Criminal SuperSearch  results in advance of the results for the single county criminal…" (Carpenter Dep. 198:20-199:2; *see also* Garrett Dep. 63:2-12, 100:11-21.)

well outside the "maximum possible accuracy" standard.  Because the CSS reports that
Intellicorp furnished to Plaintiff's prospective employers were based only on the limited "index
file" data available in Intellicorp's database for the county where her charges arose – and not on
a search of her court records – Intellicorp inaccurately reported that Plaintiff had been charged
with two criminal offenses, without disclosing that she was convicted of only one of them.  On
one report, Intellicorp reported that Plaintiff had been charged with two violations of the Penal
Code, without specifying the level of the charges.  Worst of all, Intellicorp *reported criminal
convictions that had been lawfully expunged* (set aside and dismissed) under California law.[5]
Those errors could, and should have been, averted had Intellicorp properly searched the publicly
available court records*, which would have cost it less than $2.00*.  (Sebeck Dep. 197:4-198:14.)

Because Intellicorp's instant reports that omit core information such as the disposition
and level of criminal charges are not prepared using "reasonable procedures to assure maximum
possible accuracy of the information," and because the resulting reports are factually inaccurate
with respect to a large number of identifiable consumers, Plaintiff seeks certification of the
following class pursuant to 15 U.S.C. §1681e(b) (hereinafter, "section 1681e(b)):

> All consumers in the U.S. with respect to whom, during the period April 16, 2007
> through the date class certification is granted, Intellicorp furnished for
> employment purposes both a Criminal SuperSearch report and a report based on a
> Single County Criminal or other records-based search; whose Criminal
> SuperSearch report included results for criminal history; and whose Criminal
> SuperSearch report was inaccurate for one or more of the following reasons:
>> (1) The Criminal SuperSearch report showed "results," but a subsequent
>> Single County Criminal or other court record search showed "no results."
>> (2) The Criminal SuperSearch reported one or more criminal charges
>> without a disposition, but a subsequent Single County Criminal or other
>> court record search showed a disposition other than "conviction" or "guilty."
>> (3) The Criminal SuperSearch reported a higher level of offense (felony or
>> misdemeanor) for one or more criminal charges, but a subsequent Single
>> County Criminal or other court record search showed a lower level of
>> offense (misdemeanor or infraction).

As demonstrated below, the members of the class are readily determinable from

---

[5]  Copies of Plaintiff's background reports, with her identifying information redacted to protect
her privacy, are attached as Motion Exhibits K, L, M, discussed *infra*.

Intellicorp's computerized records, and each of the requirements for certification is met.[6]

## II.    SUMMARY OF CLASS CLAIMS

### A.    The "Maximum Possible Accuracy" Requirements of The FCRA

The FCRA is a consumer protection statute that requires consumer reporting agencies ("CRAs") to "adopt reasonable procedures for meeting the needs of commerce for consumer … information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…."  (15 U.S.C. §1681(b).)   One of the principal findings that motivated the legislation was that most CRAs "assiduously cull adverse information on people from … court records and other public documents," but "are not anywhere nearly as diligent in following up on the case to record information favorable to the consumer."  (S. 823 introduced at 115 Cong. Rec. 2412 (1969).)

In order to eliminate this systemic bias against consumers, 15 U.S.C. §1681e(b) ("compliance procedures") demands that, "Whenever a consumer reporting agency *prepares* a consumer report it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates" (emphasis added).  "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."  (*Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995).)

The plaintiff need not, however, establish that a report contains affirmative misrepresentations; rather, a report may be inaccurate because it omits information and is, on that basis, incomplete and misleading.  (*See, e.g., Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 40 (D.C. Cir. 1984) ["Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer"]; *Smith v. HireRight Solutions, Inc.*, 711 F.Supp.2d 426, 433 (E.D. Pa. 2010) [The majority of Circuit

---

[6]  The procedures Intellicorp follows in reporting instant results from sources that it knows do not include all of the core criteria are not "strict procedures" designed to insure that the information reported is "complete and up to date," and therefore (as the Complaint alleges) also violate 15 U.S.C. §1681k.  However, Plaintiff herein seeks certification of only her §1681e(b) claims.

Courts have held that an entry can be "incomplete or inaccurate" for purposes of §1681e(b) "either 'because it is patently incorrect, or because it is misleading' …."]; *Poore v. Sterling Testing Systems, Inc.*, 410 F.Supp.2d 557, 570 (E.D. Ky. 2006) ["A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.  [Citation]"].)

The Sixth Circuit's recent comments in *Boggio v. USAA Federal Sav. Bank,* 696 F.3d 611 (6th Cir. 2012) leave little doubt that this Circuit follows the majority view.  Addressing the similar question of what a consumer need prove to establish inaccuracy under §1681s-2(b)(1)(D) – which concerns reinvestigations by furnishers of information when they learn information is inaccurate or incomplete – the Court recognized that "false information" about a consumer is only one "example" of information that is "clearly inaccurate," and noted that cases from at least three other circuits (the 4th, 5th, and D.C. Circuit) have held that statute "is violated if a report of an investigation, although it contains correct information, nevertheless "provides information in such a manner as to create a materially misleading impression."  (*Boggio*, 696 F.3d at 617-18.)

In *Beaudry v. TeleCheck Services, Inc.*, 578 F.3d 702 (6th Cir. 2009), the Sixth Circuit further established the crucial point that a consumer may recover penalties for violations of the FCRA without proving s/he sustained actual monetary damages from the violation.  The Court expressly rejected the defendant CRA's argument that plaintiff needed to plead that its failure to follow reasonable procedures to assure maximum possible accuracy of her credit report caused her any damage beyond the deprivation of her statutory rights, explaining that:

> The Act does not require a consumer to wait for unreasonable credit reporting procedures to result in the denial of credit or other consequential harm before enforcing her statutory rights. It requires regulated companies to use "reasonable procedures" when "prepar[ing] a consumer report" "with respect to" a given consumer, and creates a cause of action in favor of the consumer when they do not. 15 U.S.C. §§ 1681e(b), 1681n(a). Section 1681n, which creates the cause of action for willful violations, also does not impose the consequential-damages requirement that defendants wish to add to the statute.  "Any consumer," it says, may sue to recover "any actual damages ... *or* damages of not less than $100 and not more than $1000" from "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to [that] consumer." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Because "actual damages" represent an *alternative* form of relief and because the statute permits a recovery when there

5

are no identifiable or measurable actual damages, this subsection implies that a claimant need not suffer (or allege) consequential damages to file a claim.

(578 F.3d at 705-706.)

### B.    Intellicorp's Violations

Intellicorp concedes that it is a CRA; that its CSS reports are "consumer reports;" that "every consumer report that [Intellicorp] provides has to comply with the FCRA;" and that "a consumer report [is] likely to have an adverse effect upon the ability of a consumer to obtain employment … if it discloses public criminal record information about the consumer." (Carpenter Dep., 120:3-9; Deft. Interrog. Response 8, 10.)

Intellicorp also admits that it provides the results of Criminal SuperSearches prior to the time that it completes its investigation (Deft. Response to Pltf's First Set of Requests for Admission ["Adm.," Mot. Exh. B], Adm.1; Deft. Interrog. Response 4), and that it provides CSS reports even when the results of its database search do not include all publicly available information as to the final disposition of the charges (Adm. 2).  It is, likewise, undisputed that when it provides an instant CSS report, Intellicorp makes no effort to ascertain "the current public record status" of the item; instead, its automated system generates the report from whatever information has been collected in its internal database.  (Deft. Interrog. Response 12; Carpenter Dep. 89:24-91:11 [after log-in, there is "no manual intervention in the process."].)

These procedures are unreasonable for FCRA purposes.  Intellicorp obtains the information that it loads into its database in various bulk digital formats from the courts, or by having its employees "scrape" the court websites. (Simenc Dep., Mot. Exh. I, 31:18-35, 34:18-19, 78:21-79:3.)  Because updated bulk data is provided only once every 30 days (*id.* at 65:4-8, 81:12-15; Carpenter Dep. 136:6-14), and it takes up to an additional week before Intellicorp loads the data (Simenc Dep. 24:22-25:20), the information in the database is by definition out of date.  (In contrast, court records are updated "continuously," at least once a day.  [Sebeck Dep. 89:15-25.])  Issuing instant reports based on such outdated records is not a "reasonable procedure designed to assure maximum possible accuracy."  (*Cf* FTC Staff Opinion Letter, May 5, 1999, available at http://www.ftc.gov/os/statutes/fcra/allan.shtm. [To comply with FCRA §1681k, a

CRA who furnishes consumer reports to employers based on stored data must "first verify… whether the information is complete and up to date."].)

Further, Intellicorp is well aware that many of these bulk data sources do not provide sufficient information to enable it to issue an accurate background report. Intellicorp's policy is that a record is complete if and only if it includes the following "core criteria:" charge, charge date, disposition, disposition date, and level of the charges. (Intellicorp Data Testing Policy and Procedure, Mot. Exh. N.) If the source does not provide information for each of those data fields, IntelliSearch is programmed to recommend that the employer supplement a CSS by also purchasing a Single County Criminal (SCC) or other records-based product. Compliance Department director Jennifer Sebeck testified:

> Q. [I]f the Criminal SuperSearch is run and the search reports result[s] for a jurisdiction where the source does not provide all of these pieces of core information, does Intellicorp then recommend that the purchaser also purchase another Intellicorp product?
> A. Yes, the recommendations, if the clients elect them, do suggest another Intellicorp product to be conducted at the jurisdiction in which the court case was adjudicated, if it's court case information that does not contain … this information.
> Q. Okay. And again the decision whether to purchase that additional product is up to the client, right?
> A. Yes, it is.

(Sebeck Dep. 82:15-83:6.) Intellicorp also uses these criteria to determine when it will recommend a SCC over an instant search, and when it will use a court's website to generate a SCC report. ("Recommendation Process," Mot. Exh. S; Sebeck Dep., 79:9-80:13, 83:10-14, 120:13-121:5, 122:4-19, 123:7-124:9.)

Intellicorp's knowledge that disposition and charging information is essential to the accuracy of a criminal background report is further reflected in its advice that customers "[r]eview all the fields of information, but pay close attention to: 1. Charge, 2. Disposition Date, 3. Disposition, 4. Sentence, 5. Offense Level." (Client User Manual, Mot. Exh. Q p. 12 [INT000_1585].)[7] Intellicorp maintains an active list of all jurisdictions with respect to which

---

[7] As another example, among the FAQ responses Intellicorp has provided to its employees regarding employment screening is the following: " Q. Why is it necessary to follow up on a record in the Cal Criminal Index with a single county search?  A. The majority of records included in the Cal Criminal Index do not contain DOB or specific charge info. It is therefore

these recommendations apply (Sebeck Dep. 130:11-23), and can conduct a search to identify all consumers with respect to whom it furnished a background report in those counties.  (Garrett Dep. 172:4-15, 174:7-176:4; Decl. Pltf. Database Expert Henk Valk ¶ 11(b).))

Nevertheless, Intellicorp indiscriminately loads into its database and bases its Criminal SuperSearch reports on whatever data each source chooses to provide.  (Sebeck Dep. 82:6-14; Adm. 6 [some sources "do not provide certain fields of information, including in some cases... final disposition of charges"]; Adm.7 [Intellicorp furnishes CSS reports based on such sources.].) Intellicorp's Senior Database Analyst Jeffrey Simenc confirmed that data will be loaded into the CSS database so long as the source provides the bare minimum information of the subject's name, date of birth, case number, and file date:  even "this least comprehensive data will be reported through Criminal SuperSearch."  (Simenc Dep.104:21-106:11, 109:10-110:14, 116:2-15.)  As a result, Intellicorp routinely furnishes consumer reports that inaccurately report charges that were dismissed, and crimes for which the subject was acquitted.

One group of consumers that is especially vulnerable to Intellicorp's reliance on bulk data are those whose court records have been expunged.  Intellicorp is a participant in the "Expungement Clearinghouse" (Carpenter Dep. 187:23-188:16), an industry cooperative whose website notes that, "Expungements are a problem for every company that holds a database of criminal history records" and that "the majority of courts" don't "tell us" when an expungement order is entered.  (www.expungementclearinghouse.org/database, last viewed Feb. 4, 2013.)  In other words, Intellicorp knows that in order to find out whether a record has been expunged, it cannot rely on its bulk data sources, but must inspect the actual court files.  Yet, Intellicorp continues to provide instant reports – and to report "results" based on convictions that have been expunged – in lieu of inspecting court records.  As Plaintiff's experience demonstrates, a SCC search for such individuals will result in an entirely different consumer report, one that shows "no results found," greatly increasing the likelihood of a consumer getting the job.

---

highly recommended to follow up with a single county search to provide a more definitive match based on name and DOB." (Mot. Exh.R, at INT_000896, Carpenter Dep. 199:9-17.)

That a failure to report the dismissal of charges and/or to report expunged records violates §1681e(b) (as well as §1681k(a)) is made clear in *Obabueki v. Int'l Business Machines Corp.*, 145 F.Supp.2d 371 (S.D.N.Y. 2001), *aff'd,* 319 F.3d 87 (2d Cir. 2003), in which the plaintiff, like Ms. Roe, alleged that the CRA (Choicepoint) wrongfully reported expunged records to an employer (IBM).  The district court found, *inter alia,* that, "[l]eaving aside … whether the conviction itself should have been disclosed given the disposition under 1203.4, *the information provided to IBM was clearly deficient because the dismissal was not mentioned.*" (145 F.Supp.2d at 396-97 [emphasis added]; *see also* 399.)

**C.     Statutory Penalties**

Intellicorp's ongoing failure to address these systemic data omissions violates established industry and legal standards for complying with §1681e(b).  Summarizing 40 years of consensus about this provision, the Federal Trade Commission explained:

> [W]hen a [CRA] learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems.  Similarly, it should establish procedures to avoid reporting information from its [sources] that appears implausible or inconsistent.

(FTC, *40 Years Of Experience With The Fair Credit Reporting Act*, July 2011 p. 67, available at www.ftc.gov/os/statutes/fcrajump.shtm.  *See also FTC Statement of General Policy or Interp., Commentary on the FCRA*, 55 Fed. Reg. 18,804, 18,820 (May 4, 1990) ["If the agency's review of its procedures reveals, or the agency should reasonable be aware of, steps it can take to improve the accuracy of its reports at a reasonable cost, it must take such steps."].)

In addition to authorizing a private right of action to recover actual damages, the FCRA entitles consumers to significant civil penalties against CRAs who fail to take such action.  15 U.S.C. §1681n(a) provides:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of – (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

9

A consumer may also recover (2) punitive damages and (3) attorney's fees.  (*Ibid.*)

As the U.S. Supreme Court held in *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 59-60 (2007), willfulness under the FCRA encompasses both knowing and reckless violations of the statute.  (*See Boggio, supra,* 696 F.3d at 620.)  For these purposes, a violation is "knowing" if "the defendant knew of the standard and voluntarily or intentionally violated it."  (*Vidoni v. Acadia Corp.*, 2012 WL 1565128 (D. Me. Apr. 27, 2012); *see also Singleton v. Domino's Pizza, LLC,* 2012 WL 245965 (D. Md. Jan. 25, 2012) [An allegation that "a defendant was aware of the FCRA, but failed to comply with its requirements, [is] sufficient to support an allegation of willfulness …. [Citations.]").  In the alternative, willfulness can be based on a finding that the CRA recklessly "'ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'"  (*Boggio,* quoting *Safeco* at 69.)

There is significant evidence of such knowing disregard and recklessness here.  In fact, Intellicorp's conduct is much worse than that at issue in *Safeco*, as Defendant's own policies demonstrate its awareness that consumer reports that lack case disposition and other "core criteria" do not comply with the FCRA, but nevertheless continues to furnish such reports.

### D.      Plaintiff's Experience

Plaintiff is a professional social worker with a Masters of Social Work degree.  Years ago she was convicted of retail store theft on two separate occasions.

In March 2011, Plaintiff interviewed for a caretaker position with 5Life Ventures, a local franchise of ComForcare ("ComForcare").  The employer procured through Intellicorp's website a CSS report that stated that "results" were found.  (Carpenter Dep. 102:24-105:24 and Dep. Exh. 12 [Mot. Exh. M]; Dep. ComForcare witness Van Castaneda [Mot. Exh. D], 44:6-23.)  The CSS report was inaccurate and incomplete in that it (1) omitted the offense date and (2) listed P.C. 211 felony charge without reporting that the charge was dismissed.  Instead, the instant report stated that the disposition date, disposition description, sentence, and offense date, were each "NOT PROVIDED."  Several days later, on March 15, 2011, Intellicorp furnished ComForcare with a second report based on a SCC for Los Angeles that was prepared by an

10

outside vendor.  This report showed the offense levels, the disposition, and the offense and disposition dates.  (Carpenter Dep. 103:16-20, 106:14-108:4 and Mot. Exh. M.)

In June 2011, with the help of the nonprofit A New Way of Life Reentry Project, Plaintiff had her record expunged (convictions dismissed) pursuant to California Penal Code §1203.4. (Roe Dep. [Mot. Exh. G], 78:23-79:12 and Dep. Exh. 5 [Mot. Exh. J], redacted excerpt].)

On October 20, 2011 – about 4 months *after* the expungement order was issued – Plaintiff interviewed for a job with SmartChoice Investments, a local franchise of BrightStar ("BrightStar").  During the interview, the employer logged onto Intellicorp's website and ordered both an instant CSS and a SCC for Los Angeles County.  The CSS database results were returned instantly, and despite the expungement, reported "results" for criminal history.  (Carpenter Dep. 79:4-10, 84:8-85:25, Dep. Exh. 9 [Mot. Exh. K]; Dep. BrightStar owner Maurice Geyen [Mot. Exh. F], 56:11-22 and Dep. Exh. 18 [Mot. Exh. O].)  The report was inaccurate because it (1) failed to specify the level of either of the charges; (2) failed to include the disposition of the P.C. 211 charge, which had been dismissed; and (3) stated that the disposition date, disposition description, sentence, and offense date, were each "NOT PROVIDED."  Upon receiving the CSS report, BrightStar informed Plaintiff, via letter sent that same day, that it would not offer her a job.  (Geyen Dep. 58:15-20, 62:3-63:24, Dep. Exh. 19 [Mot. Exh. P].)

BrightStar also ordered a SCC report which was furnished by Intellicorp over a week later, on October 28, 2011.  (Carpenter Dep. 98:18-99:16 and Dep. Exh. 11 [Mot. Exh. L].) The report accurately states "No Results Found" (*id,* 101:7-12); however, Intellicorp's website also continued to display to BrightStar the CSS report, which stated results *were* found.[8]

## III.   ARGUMENT

To obtain class certification, the plaintiff must show that "'(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

---

[8] This inconsistency results from Intellicorp's policy of *not* updating its database with additional information that may be learned through a record-based SCC search.  (Carpenter Dep. 112:24-114:5.)  This is further evidence of Intellicorp's failure to follow reasonable procedures to assure the accuracy of its reports. It was only after Plaintiff, through her attorney, wrote to Intellicorp about her expungement, that Intellicorp "flagged" its database to prevent her expunged records from being reported in the future. (Carpenter Dep. 114:7-115:13; Simenc Dep. 137:23-139:9.)

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.' Fed.R.Civ.P. 23(a)."  (*In re Whirlpool Corp Front-Loading Washer Products Liability Litig., 678 F.3d 409, 416 (6th Cir. 2012).)  The purpose of those requirements is "to limit class claims to those which are fairly encompassed within the claims of the named plaintiffs.  *Wal–Mart Stores, Inc. v. Dukes,* __ U.S. __, 131 S.Ct. 2541, 2550 … (2011)."  (*Ibid*.)

The proposed class must also meet at least one of the three requirements listed in Rule 23(b).  (*Id.* at 2548; *see also Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998) (en banc).)  Where, as here, the plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common questions predominate and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy.  (*Ibid*.)

However, "'the relative merits of the underlying dispute are to have no impact upon the determination of the propriety of the class action.' [Citations.]  '[W]hether the class members will ultimately be successful in their claims is not a proper basis for reviewing a certification of a class action.' [Citation.]"  (*Whirlpool,* 678 F.3d at 417; *see also Stanich v. Travelers Indm. Co.*, 249 F.R.D. 506, 512 (N.D. Ohio 2008).)

This case is appropriate for class certification under the above standards.  Plaintiff's claims do not arise from any anomaly in connection with her background reports; instead, they arise as a direct and entirely foreseeable result of Intellicorp's established business practices. Because Intellicorp's procedures predictably, uniformly, and detrimentally impact thousands of consumers, and only statutory damages are sought, this case is ideally suited for class certification.  (*See, e.g., Smith, supra,* 711 F.Supp.2d at 429  [certifying class action "on behalf of the thousands of employment applicants throughout the country who have purportedly been the subject of prejudicial, misleading, and inaccurate background reports"]; *Chakejian v Equifax Info. Services,* 256 F.R.D. 492, 501 (E.D. Penn. 2009).)  Section 1681e(b) claims based on systemic inaccuracy caused by a CRA's uniform failure to update and report complete and accurate public record information are well suited for class treatment.  (*See, e.g., Clark v.*

12

*Experian Info Solutions, Inc.,* 2002 WL 2005709 (D.S.C. June 26, 2002) [finding common issues and certifying class claims under §1681e(b)]; *Serrano v. Sterling Testing Systems, Inc.,* 711 F.Supp.2d 402, 413 (E.D. Pa. 2010) [approving settlement of national class action against CRA based on its practice of reporting outdated arrest records, and noting that "[i]n many cases, courts have recognized that Rule 23(b)(3) certification is particularly appropriate for consumer claims such as those asserted here. [Citations.]"];]; *Acosta v. Trans Union*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) [rejecting proposed settlement of FCRA claims as too weak, and finding that certification under §1681e(b) would be appropriate because, "the question of Defendant's liability for having violated the obligation to employ reasonable reporting procedures is common to the class and is the central issue in this case."]; *Harris v. Experian Info. Solutions, Inc.*, D. S.Car. No. 6:06-CV-01808-GRA (May 29, 2008) [Mot. Exh. T] [certifying class of millions of consumers harmed by CRA's practice of omitting credit limit information.]).

### A.     The Class Is Numerous

Rule 23(a)(1) provides that a class action may be maintained if "the class is so numerous that joinder of all members is impracticable."  There is no strict numerical test for determining this; rather, the court should look to the specific facts of each case.  (*Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir. 1976), *cert. denied,* 429 U.S. 870 (1976); *Card v. City of Cleveland*, 270 F.R.D. 280, 290 (N.D. Ohio 2010).)

The proposed class here is plainly too large to permit joinder of claims.  Intellicorp reports that it sold over 5 million consumer reports for employment purposes during the approximate class period; that 1,138,635 of those reports included criminal record information; and that it has made available the results of 586,440 instant reports that included adverse criminal history information to employers who did not order a SCC product.  (Deft. Interrog. Responses 1, 2, 14.).  Although Plaintiff's discovery into the size of the class is continuing, even if as few as 0.5% of those reports fit the proposed class definitions, the class would still consist of thousands of individuals, clearly enough to fulfill the "numerosity" requirement.

### B.     This Case Presents Common Issues of Law and Fact

13

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." (*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997).)  Commonality exists where the claims of all class members challenge a "general pattern or practice" of the defendant (*Senter, supra,* 532 F.2d at 523) and also where a "common nucleus of operative facts" underlies the claims of all class members.  (*Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris Inc.,* 182 F.R.D. 523, 532 (N.D. Ohio 1998).) [9]  The claims of all class members need not be exactly the same.  (*Bremiller v. Cleveland Psych. Inst.*, 195 F.R.D. 1, 20 (N.D. Ohio 2000).)  "'What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class.' [Citation.] Class certification is appropriate 'if class members complain of a pattern or practice that is generally applicable to the class as a whole." (*Whirlpool, supra,* 678 F.3d at 420.)  In fact, "there need only be one question common to the class" to fulfill this requirement.  (*Sprague, supra*, 133 F.3d at 397.)

Among the common questions on which Intellicorp's liability depends are:

1. Whether Intellicorp's uniform practice of furnishing instant CSS reports that omit one or more of the core criteria is a "reasonable procedure that assures maximum possible accuracy" of the information provided.

2. Whether Intellicorp's uniform practice of furnishing instant CSS results prior to the time it undertakes and completes a recommended, SCC search or case "update" is a "reasonable procedure that assures maximum possible accuracy" of the information provided.

3. Whether a consumer report that omits one or more of Intellicorp's "core criteria" (charge, charge date, level of the offense, disposition, disposition date) is "maximally accurate."

4. Whether an instant CSS report that states that criminal records exist, when a SCC or other court record-based search shows that "no results" exist, is "maximally accurate."

---

[9] All of Intellicorp's state databases have the same tables and fields, even for those sources that do not provide information for all fields.  (Simenc Dep. 101:25-102:5.)  Further, while the source "components" of the database have varied over time, at any given time a CSS will search all of the components in the database.  (Sebeck Dep. 68:10-69:6.) These similarities – along with the fact that a CSS is by definition a nationwide search – support certification of a national class.

5. Whether an instant CSS report is "maximally accurate" when it lists one or more criminal charges, though a SCC or other court record-based search shows a result other than "conviction" or "guilty."

6. Whether an instant CSS report is "maximally accurate" when it lists a higher level of offense (felony or misdemeanor) for one or more criminal charges, though a SCC or other court record-based search shows a lower level of offense (misdemeanor or infraction).

7. Whether Intellicorp acted "willfully."

Each of these issues "is central to the validity" of class members' claims, and is "capable of classwide resolution."  (*Dukes*, 131 S.Ct. at 2545; *Young v. Nationwide Ins.* 693 F.3d 532, 542 (6th Cir. 2012).)

**C.    Plaintiff's Claims Are Typical of The Class She Seeks to Represent**

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  (*Sprague,* 133 F.3d at 399.)  "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory ...."  (*In re Telectronics Pacing Systems, Inc.,* 164 F.R.D. 222, 228 (S.D. Ohio 1995); *see also Beattie v. CenturyTel Inc.,* 511 F.3d 554, 561 (6th Cir. 2007).)   A representative party's claims, however, need not be identical to those of the potential class members.  (*In re Telectronics, supra* ["The typicality requirement may be satisfied even if there are factual distinctions between the class members and those of other class members."]; *see also Senter,* 532 F.2d at 524.)

Here, both Ms. Roe's and all class members' claims focus on the deficiencies in Intellicorp's procedures that cause its database searches to report incomplete and inaccurate information.   Indeed, Intellicorp admits that it followed its typical procedures in preparing the background reports on Plaintiff.  (Sebeck Dep. 244:24-245:5.)  Precisely the same evidence and arguments that will determine whether, in furnishing CSS reports about Plaintiff that omitted publicly available, more favorable disposition and charge information, Intellicorp failed to

15

follow "reasonable procedures to ensure maximum accuracy" of the information, will also resolve class members' similar claims.

### D.    Plaintiff and Her Counsel Are Adequate Representatives of The Class

As this Court explained in *Kelly v. Montgomery Lunch & Associates Inc.,* 2007 WL 4562913 (No. 1:07-CV-919, Dec. 19, 2007) at *5 (internal quotes and citation omitted):

> Adequacy of class representation is initially measured by two standards.  First, class counsel must be qualified, experienced and generally able to conduct the litigation.  Second, class members must not have interests that are antagonistic to one another. [Citation.] Interests are antagonistic when there is evidence that the representative plaintiff appears unable to "vigorously prosecute the interests of the class."  [Citation.]  *See also Alexander Grant & Co. v. McAlister,* 116 F.R.D 583, 588-89 (S.D.Ohio 1987) (explaining that the three-pronged Rule 23(a)(4) test asks: "is the representative a class member, does the representative have a stake in the outcome, and is the representative familiar with the facts and conditions to be challenged on behalf of the class?").

(*See also Int'l Union v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) [Class representatives adequate when "they possess the same interest and suffer the same injury as class members" and can "vigorously prosecute the interests of the class through qualified counsel."].)

Plaintiff and class members have exactly the same stake in the outcome of this lawsuit:  if Plaintiff's claims are successful, she and each class member will receive the same statutory damages, in the amount determined by the Court.  Plaintiff has, in short, no claims antagonistic to those of other members of the class.  Plaintiff has actively participated in the litigation (Roe Dep. 179:8-24) and retained a team of legal professionals with significant expertise in class action litigation, the FCRA, and the impact of criminal background checks on consumers, including one of the nation's leading FCRA practitioners, Leonard Bennett.  All counsel are highly qualified and committed to zealous prosecution of this case.  (*See* Declarations of Leonard Bennett, Nance F. Becker, Joshua Kim, Devin Fok, Jason Bristol, and Joshua Cohen.) Accordingly, all requirements for certification under Rule 23(a), and appointment of class counsel under Rule 23(g), are met.

### E.    Common Issues Predominate

Certification is appropriate when "the court finds that the questions of law or fact

common to the members of the class predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy."   (Fed.R.Civ.P. 23(b)(3).)  To show predominance,

> "a plaintiff must establish that 'the issues in the class action that are subject to
> generalized proof, and thus applicable to the class as a whole, ... predominate over
> those issues that are subject only to individualized proof.' "  [Citation.]  Further,
> "the fact that a defense 'may arise and may affect different class members
> differently does not compel a finding that individual issues predominate over
> common ones.' " [Citation.]. Lastly, "[c]ommon issues may predominate when
> liability can be determined on a class-wide basis, even when there are some
> individualized damage issues." [Citation.]

(*Beattie, supra,* 511 F.3d at 564.)

The common issue of Intellicorp's liability is clearly the predominant issue here.  Indeed,

Intellicorp does not dispute that it knowingly includes in its database, and in its CSS reports,

criminal history information that is outdated and that omits the "core criteria" necessary for a

complete and accurate description of a consumer's criminal record.  Whether Intellicorp's

procedures are reasonable, and whether database-generated reports that state that one or more of

the core criteria concerning the nature, date, and disposition of criminal charges is "Not

Provided" when in fact the information is both available and more favorable to the consumer, are

inaccurate, are common legal questions that can and should be resolved on behalf of all of the

consumers who have been subject to those practices.

A recent Sixth Circuit decision involving verification of facts through a process that

omitted key information, albeit not an FCRA case, strongly supports Plaintiff's theory here.  In

*Young, supra,* 693 F.3d at 544-545, the Court stated:

> Plaintiffs proceed on the theory that [certain] verification processes . . . would
> catch most types of errors and that Defendants caused each class members'
> injury simply by failing to use such processes.  Plaintiffs will have to prove
> their theory at trial; but for class certification, this is a predominate issue
> central to each of Plaintiffs' claims and subject to generalized proof.

Because Plaintiff seeks only statutory damages, determination of the damages due is

likewise a common question.  (*Chakejian, supra,* 256 F.R.D. at 501 ["Given the nature of

plaintiff's [FCRA statutory damages] claims, this is not a case in which the amount of the

damage award is likely to differ from consumer to consumer"]; *Beaudry, supra* [reversing dismissal of FCRA class claims alleging only statutory damages]; *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006) (defendant's argument that damages were an individual issue was "a nonstarter" because the class sought only statutory damages, and class members with actual damages could opt out); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295, 302 (N.D. Ill. 2005) ("the existence of individual damages is not a barrier to class certification" in a FCRA statutory damages case]; *Clark, supra* at *3.)

This issue was squarely addressed in *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir. 2006), in which the Seventh Circuit held certification of a consumer's claims for violation of FCRA disclosure requirements for credit offers and stated:

> The district court's [finding] – that [plaintiff] should have sought compensatory damages for herself and all class members rather than relying on the statutory-damages remedy – would make consumer class actions impossible. What each person's injury may be is a question that must be resolved one consumer at a time. Although compensatory damages may be awarded to redress negligence, while statutory damages require wilful conduct, introducing the "easier" negligence theory would preclude class treatment. Common questions no longer would predominate, and an effort to determine a million consumers' individual losses would make the suit unmanageable. Yet individual losses, if any, are likely to be small …. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.

434 F.3d at 452-53. "Rule 23(b)(3) was designed for situations such as this." (*Id*. at 453.)[10]

Whether Intellicorp's knowledge that its database systematically omits the very core criteria that it advises its customers to review – and which it recommends they purchase additional products to obtain – and its policy of nevertheless furnishing reports that omit or misstate that information, renders its violations sufficiently "willful" to justify statutory penalties under §1681n is, likewise, a question common to all class members' claims:

> [T]he recovery of statutory damages under the FCRA is not dependent on proof of injury or harm … [T]he factor most germane to the amount of a statutory damages award to class members is the jury's perception of the importance, and hence the value, of the rights and protections conferred on the consuming public by [the FCRA provision being violated].

---

[10] Further, even if Intellicorp should successfully prove that most class members suffered, could prove, and would sue to recover actual damages, the Court should still certify a liability-only class. (*Pella Corp. v. Saltzman,* 60 F.3d 391, 394 (7th Cir. 2010), *cert.den.* 131 S.Ct. 998 (2011).)

(*In re Farmers Ins. Co., Inc. FCRA Litig.*, 741 F. Supp. 2d 1211, 1224 (W.D. Okla. 2010) (internal quotations omitted).  *See also Gillespie v. Equifax Info. Serv. LLC*, 2008 WL 4614327 (N.D.Ill. Oct. 15, 2008) at *7 ["whether Equifax knowingly or recklessly disregarded its statutory obligations under FCRA … is plainly a common issue … as it concerns a standardized practice that Equifax used.  In short, willfulness is perfectly suitable for class-wide proof…."].)

### F.    A Class Action Is The Superior Method For Resolution of Plaintiff's Claims

In determining whether a class action is the "superior" method for resolving this dispute, the Court is obliged to consider:  (1) the class members' interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) the likely difficulties in managing a class action.  (Rule 23(b)(3).) Each of those factors supports class certification here.

The vast majority of absent class members are unaware their FCRA rights have been violated, and lack the knowledge, resources, or incentive to sue for statutory damages, which are limited to $1,000 per violation.  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive of any individual to bring a solo action prosecuting his or her rights."  (*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 271 F.R.D. 572, 575 (N.D. Ohio 2010), *quoting Amchem Prod.,* 521 U.S. at 617.) [11] Further, Plaintiff is unaware of other actions seeking individual or class damages for the violations alleged here,[12] and there is no dispute that this is the best forum for resolution of the issues, as Intellicorp forcefully argued for transfer to this district.

Because Intellicorp is a computer-driven business with highly centralized operations, the case also presents no special management difficulties.   The class definition is clear and precise,

---

[11] Of course, any class member who feels s/he has a significant claim for *actual* damages will be free to opt out of the class.  (*See Cavin v. Home Loan Ctr., supra; Dukes,* 131 S. Ct. at 2559.
[12]  Another putative class action has been filed against Intellicorp arising from its furnishing of inaccurate background reports, in alleged violation of 1681k. *Thomas v. Intellicorp Records, Inc.,* N.D. Ohio No. 1:12-cv-02443-DAP.  *Thomas* is a "mixed file" case in which plaintiffs allege that Intellicorp included in their background reports criminal history information pertaining to other people, and that Intellicorp's notice procedures are deficient. *Thomas* does not assert any class claims pursuant to §1681e(b).

and class membership can be "objectively ascertained." (*See Taylor v. CSX Transp.*, 264 F.R.D. 281, 286 (N.D. Ohio 2007).)  Based on the testimony of Intellicorp's designated witnesses, the technical information (including the database schema) produced in discovery, and an examination of that evidence by Plaintiff's database expert Henk Valk, Intellicorp (or an independent IT expert) can, for the class period and without undue time or expense:

- Identify the bulk data sources (counties) that Intellicorp has uploaded into its database, but that Intellicorp has determined lack one or more of the core criteria required to make the information accurate and complete.  (Sebeck Dep. 130:11-23; Mot. Exh. N.)

- Identify those consumers with respect to whom Intellicorp reported CSS and/or SCC "results." (Garrett Dep. 166:4-171:5, 174:21-179:7; Valk Decl. ¶11(a).)

- Identify those consumers whose CSS displayed "Not Provided" for one or more core criteria. (Garrett Dep. 166:4-171:5, 174:21-179:7; Simenc Dep. 98:9-13; Valk Decl. ¶11(c).)

- Identify those consumers whose CSS reported "results," but a subsequent SCC or other court record search showed "no results."  (Valk Decl. ¶11(d).)

- Identify those consumers whose CSS reported one or more criminal charges, but a subsequent SCC or other court record search showed a result other than "conviction" or "guilty," *i.e*., the charge was dismissed or the consumer was acquitted.  (*Ibid.*)

- Identify those consumers whose CSS reported a higher level of charge (felony or misdemeanor) for one or more criminal charges, but a subsequent SCC or other court record search showed a lower level of charge (misdemeanor or infraction).  (*Ibid.*)

That is more than enough information to identify the members of the class in this case.

## IV.    CONCLUSION

For all of the reasons discussed above, Plaintiff respectfully requests the Court to find that she has satisfied all of the requirements of Fed.R.Civ.Proc. 23, to certify her class claims, to approve her as the class representative, and to appoint Chavez & Gertler LLP, A New Way of Life Reentry Project, the Law Offices of Devin Fok, Cohen Rosenthal & Kramer LLP, and Consumer Litigation Associates as counsel for the class.

DATED: February 18, 2013

CHAVEZ & GERTLER LLP
THE LAW OFFICES OF DEVIN H. FOK
A NEW WAY OF LIFE REENTRY PROJECT

By:  _____*/s/ Nance F. Becker*_____
Nance F. Becker (Cal. Bar # 99292)
(admitted *pro hac vice*)
CHAVEZ & GERTLER LLP
42 Miller Ave.
Mill Valley, CA 94941
Phone: (415) 381-5599
Fax: (415) 381-5572
nance@chavezgertler.com
Attorneys for Plaintiff and the Proposed Class

***Additional Attorneys for Plaintiff JANE ROE and the Proposed Class:***

THE LAW OFFICES OF DEVIN H. FOK
Devin H. Fok (Cal. Bar #256599) (admitted
*pro hac vice*)
P.O. Box 7165
Alhambra, CA 91802-7165
Phone: (310) 430-9933
Fax: (323) 563-3445
devin@devinfoklaw.com

A NEW WAY OF LIFE REENTRY
PROJECT
Joshua E. Kim (Cal Bar #257260) (admitted
*pro hac vice*)
958 E. 108th St.
Los Angeles, CA 90059
Phone: (323) 563-3575
Fax: (323) 563-3445
joshua@anewwayoflife.org

COHEN ROSENTHAL & KRAMER LLP
Jason R. Bristol (Ohio Bar #0072989)
Joshua R. Cohen (Ohio Bar #0032368)
The Hoyt Block Building – Suite 400
700 West St. Clair Avenue
Cleveland, Ohio 44113
Phone:  (216) 781-7956
Fax:  (216) 781-8061
jbristol@crklaw.com
jcohen@crklaw.com

LEONARD A. BENNETT
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
Phone:  (757) 930-3660
Fax:  (757) 930-3662
lenbennett@clalegal.com

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I hereby certify that this case has been assigned to the standard track and that

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

MOTION FOR CLASS CERTIFICATION AND APPROVAL OF CLASS COUNSEL complies

with the page limitation (20) provided in L.R.7.1 for a dispositive motion being filed in a case

assigned to this track.

DATED:  February 18, 2013

By: _____*/s/ Nance F. Becker*_____
Nance F. Becker
CHAVEZ & GERTLER LLP

21

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2013 a copy of foregoing PLAINTIFF'S

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR

CLASS CERTIFICATION AND APPROVAL OF CLASS COUNSEL was filed electronically,

along with the following supporting declarations and exhibits:

- DECLARATION OF NANCE F. BECKER IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPROVAL OF CLASS COUNSEL; and Exhibits A-T

- DECLARATION OF PROPOSED CLASS COUNSEL JASON R. BRISTOL

- DECLARATION OF PROPOSED CLASS COUNSEL JOSHUA R. COHEN

- DECLARATION OF JOSHUA EUNSUK KIM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPROVAL OF CLASS COUNSEL

- DECLARATION OF DEVIN H. FOK IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPROVAL OF CLASS COUNSEL

- DECLARATION OF HENK VALK IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; and Exhibit

Notice of this filing will be sent by operation of the Court's electronic filing system to all

parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S.

mail.  Parties may access this filing through the Court's system.

DATED:  February 18, 2013          By:  _____*/s/ Nance F. Becker*_____
                                        Nance F. Becker
                                        CHAVEZ & GERTLER LLP

2