UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JANE ROE, individually and on behalf of all
others similarly situated,

Plaintiff,

- v. -

INTELLICORP RECORDS, Inc., an Ohio
corporation, and DOES 1-50, inclusive,

Defendants.

Case no.: 1:12-cv-02288-jg

Judge James S. GWIN

Magistrate Judge Greg White

DEFENDANT INTELLICORP
RECORDS, INC.'S
OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS
CERTIFICATION

# TABLE OF CONTENTS

PAGE

**INTRODUCTION** ................................................................................................... 1

**FACTUAL BACKGROUND** ................................................................................ 2

    A.    Intellicorp's Products ................................................................. 2

    B.    Jane Roe ......................................................................................... 3

    C.    This Lawsuit .................................................................................. 5

**ARGUMENT** ........................................................................................................... 6

**I.**    **PLAINTIFF CANNOT SATISFY THE RULE 23(b)(3) REQUIREMENT OF PREDOMINANCE** ................................................. 7

    A.    Proof of "Inaccuracy" is Not Amenable to Class-Wide Adjudication ....... 7

    B.    Plaintiff Cannot Define Around the Individual Issues of Proof .............. 10

    C.    Whether Each Plaintiff's Claim Is Timely Is Not Amenable to Class-Wide Adjudication ................................................................. 12

**II.**    **JANE ROE CANNOT ADEQUATELY REPRESENT THE CLASS** ........... 13

**III.**    **THE CLASS IS NOT READILY ASCERTAINABLE** ................................. 16

**CONCLUSION** ..................................................................................................... 20

# TABLE OF AUTHORITIES

PAGE

## Cases

Acosta v. Trans Union, LLC,
    243 F.R.D. 377 (C.D. Cal. 2007) ...................................................................... 8

Beaudry v. TeleCheck Servs. Inc.,
    579 F.3d 702 (6th Cir. 2009) ...................................................................... 10

Beattie v. CenturyTel, Inc.,
    511 F.3d 554 (6th Cir. 2007) ...................................................................... 7

Boggio v. USAA Federal Sav. Bank,
    696 F.3d 611 (6th Cir. 2012) ...................................................................... 9

Butler v. Sterling, Inc.,
    2000 WL 353502 (6th Cir. Mar. 31, 2000) .................................................. 13

Cerdant, Inc. v. DHL Express (USA), Inc.,
    2010 WL 3397501 (S.D. Ohio Aug. 25, 2010) .......................................... 20

Chakejian v. Equifax Info. Services,
    246 F.R.D. 492 (E.D. Pa. 2009) .................................................................. 9

Clark v. Experian Info. Solutions, Inc.,
    2002 WL 2005709 (D.S.C. June 26, 2002) ................................................. 8

Dickens v. Trans Union Corp.,
    18 F. App'x 315 (6th Cir. 2001) ................................................................. 9

Farmer v. The Phillips Agency, Inc.,
    285 F.R.D. 688 (N.D. Ga. 2012) ................................................................ 7

Friedman-Katz v. Lindt & Sprungli,
    270 F.R.D. 150 (S.D.N.Y. 2010) ......................................................... 14, 16

Garrett v. Trans Union, L.L.C.,
    2006 WL 2850499 (S.D. Ohio Sep. 29, 2006) ........................................... 9

Garrish v. UAW,
    149 F. Supp. 2d 326 (E.D. Mich. 2001) .................................................... 17

Grays v. Trans Union Credit Info. Co.,
   759 F. Supp. 390 (N.D. Ohio 1990) ....................................................................... 10, 11

Gooch v. Life Investors Ins. Co. of Am.,
   672 F.3d 402 (6th Cir. 2012) ............................................................................. 6, 14

Harper v. TransUnion, LLC,
   2006 WL 3762035 (E.D. Pa. Dec. 20, 2006)..................................................... 7, 8, 9, 10

Harris v. Experian Info. Solutions, Inc.,
   No. 6:06-CV-01808-GRA (D.S.C. May 29, 2008)....................................................... 9

Holman v. Experian Info. Solutions, Inc.,
   2012 WL 1496203 (N.D. Cal. Apr. 27, 2012) ............................................................. 13

Holmes v. Telecheck Int'l, Inc.,
   556 F. Supp. 2d 819 (M.D. Tenn. 2008)....................................................................... 9

In re Am. Med. Sys. Inc.,
   75 F.3d 1069 (6th Cir. 1996) ....................................................................................... 6

In re OnStar Contract Litig.,
   278 F.R.D. 352 (E.D. Mich. 2011) ............................................................... 16, 17, 20

Kaplan v. Pomerantz,
   132 F.R.D. 504 (N.D. Ill. 1990)............................................................................. 14, 16

Karnuth v. Rodale, Inc.,
   2005 WL 747251 (E.D. Pa. 2005) ............................................................................. 14

Kline v. Wolf,
   702 F.2d 400 (2d Cir. 1983)....................................................................................... 14

Molina v. Roskam Baking Co.,
   2011 WL 5979087 (W.D. Mich. Nov. 29, 2011)....................................................... 13

Nelski v. Trans Union LLC,
   86 F. App'x 840 (6th Cir. 2004) ................................................................................... 7

Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.,
   537 F.3d 1184 (10th Cir. 2008) ................................................................................. 7, 8

Pendleton v. Trans Union Sys. Corp.,
   76 F.R.D. 192 (E.D. Pa. 1977)..................................................................................... 8

People v. Mgebrov,
   166 Cal. App. 4th 579 (2008) ............................................................ 4

People v. Field,
   31 Cal. App. 4th 1778 (1995) ........................................................... 4

Randleman v. Fid. Nat'l Title Ins. Co.,
   646 F.3d 347 (6th Cir. 2011) .................................................... 6, 7, 9

Romberio v. UnumProvident Corp.,
   385 F. App'x 423 (6th Cir. 2009) .................................................. 16, 20

Serrano v. Sterling Testing Sys., Inc.,
   711 F. Supp. 2d 402 (E.D. Pa. 2010) ................................................ 8

Smith v. HireRight Solutions, Inc.,
   711 F. Supp. 2d 426 (E.D. Pa. 2010) ................................................ 9

Soutter v. Equifax Servs., LLC,
   2012 WL 5992207 (4th Cir. Va. Dec. 3, 2012) ........................................ 10

Spence v. TRW, Inc.,
   92 F.3d 380 (6th Cir. 1996) ........................................................... 7

Wal-Mart Stores, Inc. v. Dukes,
   131 S. Ct. 2541 (2011) .............................................................. 6, 7

Williams v. Colonial Bank
   826 F. Supp. 415 (M.D. Ala. 1993) ................................................... 10

Williams v. LexisNexis Risk Mgmt. Inc.,
   2007 WL 2439463 (E.D. Va. Aug. 23, 2007) ............................................ 8

Young v. Nationwide Mut. Ins. Co.,
   693 F.3d 532 (6th Cir. 2012) ...................................................... 9, 20

**Statutes and Rules**

15 U.S.C. § 1681b(b)(3)(A) ............................................................. 13

15 U.S.C. § 1681e(b) ............................................................. passim

15 U.S.C. § 1681i ...................................................................... 9

15 U.S.C. § 1681k ...................................................................... 5

15 U.S.C. § 1681p ............................................................................................................ 13

15 U.S.C. § 1681s-2 ........................................................................................................... 9

15 U.S.C. § 1681s-2(b)(1)(D) ........................................................................................... 9

Cal. Penal Code § 1203.4 .................................................................................................. 4

Fed. R. Civ. P. 23 ............................................................................................................... 6

Fed. R. Civ. P. 23(a) .......................................................................................................... 6

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 13

Fed. R. Civ. P. 23(b) .......................................................................................................... 7

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 6

## INTRODUCTION

Plaintiff's motion for class certification should be denied.  No matter how many times Plaintiff changes the definition of her proposed class (the count is now at three, most recently in her motion papers), she cannot avoid these fundamental problems:

1.      **Individual issues will predominate**.  The accuracy of thousands of criminal background reports cannot be determined on a class-wide basis.  Each plaintiff's claim necessarily requires a comparison between the information contained in his or her background report and that individual's actual criminal record.  Moreover, even if an inaccuracy can be found in a particular report, the plaintiff must also show that the inaccuracy was the result of a willful flaw in Intellicorp's procedures, rather than some other cause.  Individual facts also will determine whether claims are barred by the statute of limitations, which precludes claims filed more than two years after the plaintiff had notice of the alleged FCRA violation.  Plaintiff cannot circumvent these basic requirements of proof by manipulating the definition of the class.

2.      **Plaintiff's lack of truthfulness and credibility preclude class certification**.  Plaintiff's blatant misconduct during the prosecution of this case—including admittedly providing false testimony during her deposition and in an affidavit submitted to this Court— provides an independent basis for denying her motion for class certification.

3.      **The class cannot be identified**.  Members of the proposed class cannot reasonably be identified.  The search of Intellicorp's database proposed by Plaintiff's "expert" is neither practical nor effective in identifying class members with inaccurate background reports.

Plaintiff ignores these points, and focuses almost entirely on Intellicorp's general policies and procedures.  Intellicorp vigorously disagrees with Plaintiff's assertions, which will be contested if there is a trial, but focuses herein on the matters most relevant to *class certification*,

including that any questions that may exist regarding general policies and procedures will be overwhelmed by individual questions that must be proven with respect to each class member.

## FACTUAL BACKGROUND

A.     Intellicorp's Products

Intellicorp provides a wide array of background screening products to employers conducting background checks on prospective employees.  It has provided over five million such reports over the past five years.  (Declaration of David Garrett ("Garrett Decl.") ¶ 2.)

Intellicorp's Criminal SuperSearch product draws public criminal record information from nearly 500 active sources, including federal, state and county courts, departments of correction, and sex offender registries.  (Id. ¶ 4.)  Each bulk data source determines what data it will make available to Intellicorp, how that data will be delivered, and how often that data will be updated.  (Garrett Decl. ¶¶ 5-7; Declaration of Jennifer Sebeck ("Sebeck Decl.") ¶¶ 7-8.)

The data sources that populate Intellicorp's database change over time.  (Sebeck Decl. ¶¶ 6, 9.)  Intellicorp seeks out and adds new data sources as they become available.  In addition, the courts and other public record sources will themselves make changes to the data provided to Intellicorp, such as by adding or discontinuing a particular field of information.  (Id. ¶ 7.)  As a result, the scope and contents of Intellicorp's database, and thus its Criminal SuperSearch product, will vary over time, from state to state, county to county, and report to report.  (Id. ¶ 9.)

Intellicorp also offers a number of Single County Criminal Search products that can provide customers with public record information in each of more than 3,100 U.S. counties.  (Id. ¶ 11.)  A Single County Criminal Search may be performed by an in-house Intellicorp employee, by a third-party vendor, or in some cases, by the court clerk.  (Id. ¶¶ 13-16.)  The public record data sources determine what fields of information will be made available.  (Id. ¶ 18.)  For example, federal courts refuse to provide date of birth information.  (Id. ¶ 19.)  Single County

2

Criminal data sources, like bulk data sources, also determine the manner in which this information will be made available to Intellicorp—u.g., through an online court website, at a public access terminal at a courthouse, or through an in-person request submitted to a court clerk. (Id. ¶¶ 14-16, 20-21.)

The Criminal SuperSearch and Single County Criminal Search products can, and often do, draw data from different sources.  For example, the Single County Criminal Search product generally is limited to information obtained from court records, whereas the Criminal SuperSearch product includes information from other sources such as departments of correction and sex offender registries that are beyond the scope of the Single County Criminal Search.  On the other hand, a Single County Criminal Search may cover one or more jurisdictions that are not included in Intellicorp's multi-state database, either because bulk data is not available from that jurisdiction or is not updated frequently enough for Intellicorp's standards.  (Id. ¶¶ 28-29.)

Many Intellicorp clients choose to order a package of products that includes both a Multi-State Criminal SuperSearch and at least one Single County Criminal Search.  (Garrett Decl. ¶ 10.)  The results of the searches can differ for many reasons, including differences with respect to sources, case numbers, disposition descriptions, offense level descriptions, search parameters, which courts are covered, and which jurisdictions are covered.  The results of the requested searches are made available as each search is completed, but the report to the client remains expressly "**in process**" until all requested searches have been completed.  (Sebeck Decl. ¶ 34.) The time it takes to complete the components of the reports varies, depending on a number of factors, including the products selected, the source(s) being searched, and the subject's history. (Garrett Decl. ¶ 13.)

B.    Jane Roe

Plaintiff was arrested on January 18, 2001, and charged with one count of grand theft.

3

(Declaration of David Wallace ("Wallace Decl."), Ex. A.)  She pled not guilty.  (Id., Ex. B.)  The

charge was later reduced to a misdemeanor, and Plaintiff changed her plea to nolo contendere.

(Id.)  Plaintiff was convicted and sentenced to 90 days' jail time, with credit for 20 days served,

and placed on summary probation for 24 months.  In 2003, Plaintiff filed a petition to dismiss the

conviction pursuant to California Penal Code § 1203.4, which permits such relief after

completion of probation.  The petition was granted.  (Id.)[1]

Plaintiff was arrested again in February 2005, and charged with second degree robbery

and petty theft with a prior jail term.  (Wallace Decl., Ex. C.)  She pled not guilty and initially

denied her prior conviction.  (Pl. Mot. Ex. J.)  On April 7, 2005, Plaintiff admitted to the prior

conviction and pled nolo contendere to the petty theft with a prior charge (the robbery charge

was dismissed).  (Id.)  She was sentenced to three years' probation.

On March 8, 2011, Plaintiff applied for a job as an in-home caregiver with 5Life

Ventures d.b.a. ComForcare Senior Services ("ComForcare").  ComForcare obtained Plaintiff's

background report from Intellicorp, including a Criminal SuperSearch and a Single County

Criminal Search for Los Angeles County.  The report reflected Plaintiff's 2005 conviction.

Although Plaintiff alleged in her original Complaint in this case that she was denied employment

by ComForcare, she was in fact hired by ComForcare and remained employed there until she

resigned in February 2012.  (Wallace Decl., Ex. D (Roe Tr. at 67:23-68:1).)[2]

Shortly after her interview with ComForcare, Plaintiff filed a Section 1203.4 petition for

dismissal of her 2005 conviction.  Her petition was granted on June 27, 2011.  (Sec. Am. Compl.

_____

[1] An order under Section 1203.4 does not purport to be an "expungement."  People v. Mgebrov, 166
Cal. App. 4th 579, 584 (2008).  The criminal record is not sealed, and all proceedings, including the guilty plea,
remain public.  People v. Field, 31 Cal. App. 4th 1778, 1787 (1995).

[2] Plaintiff deleted this allegation in her Amended Complaint.

4

("SAC") ¶ 21.)

In October 2011, Plaintiff applied for a job as an in-home caregiver with SmartChoice Investments Inc. d.b.a. BrightStar ("BrightStar").  BrightStar ordered a consumer background report, including a Criminal SuperSearch and a Single County Criminal Search for Los Angeles County.  During her interview, BrightStar provided Plaintiff with a printout of the "in process" search results showing her 2005 criminal charges.  When the Single County Criminal Search was complete, it reported that there were "no results found."  (Wallace Decl., Ex. I.)  BrightStar rejected Plaintiff's application for employment.  There is no evidence that she was rejected because of the background report.  (Wallace Decl., Ex. E (LaFourche Tr. at 58:3-60:2).)

C.    This Lawsuit

Plaintiff filed this suit against Intellicorp on April 17, 2012.  She alleges that Intellicorp violated 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681k.  (SAC ¶ 46.)

At first, Plaintiff sought to certify a class of "[a]ll natural persons within the United States who were the subject of a consumer report furnished to a third party by Intellicorp for employment purposes, and whose report contained any negative public record of criminal arrest, charge, or conviction, during the five years preceding the filing of this action until final resolution of this action."  (Compl. ¶ 60.)  Defendant moved to dismiss or strike this class allegation because, inter alia, it necessarily required an individual assessment as to the accuracy of each plaintiff's background report.  (ECF No. 51-1.)

In response, Plaintiff amended the class definition.  She sought to certify a revised class of "[a]ll natural persons within the United States who were the subject of a Criminal SuperSearch or other 'instant' consumer background report, furnished to a third party by Intellicorp for employment purposes, and whose report contained any negative public record of criminal arrest, charge, or conviction without also disclosing the final disposition of the charges,

5

during the five years preceding the filing of this action through the date class certification is granted."  (First Am. Compl. ("FAC") ¶ 43; SAC ¶ 43.)

In her motion for class certification, Plaintiff now seeks to certify yet a *different* class. She now describes a three-part class of individuals who were the subjects of background reports that were "inaccurate" because either: "(1) The Criminal SuperSearch report showed 'results,' but a subsequent Single County Criminal or other court record search showed 'no results;' [or] (2) [t]he Criminal SuperSearch reported one or more criminal charges without a disposition, but a subsequent Single County Criminal or other court record showed a disposition other than 'conviction' or 'guilty;' [or] (3) [t]he Criminal SuperSearch reported a higher level of offense (felony or misdemeanor) for one or more criminal charges, but a subsequent Single County Criminal or other court record search showed a lower level of offense (misdemeanor or infraction)."  (Pl. Mem. at 3.)  Plaintiff now seeks to represent the class only with respect to claims under § 1681e(b).  (Id.)

## ARGUMENT

Plaintiff bears the burden of proving that all of the requirements of Rule 23 are satisfied and must "affirmatively demonstrate . . . compliance with the Rule."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).  Conclusory allegations are insufficient.  Id.  A "rigorous analysis" is required to ensure that all Rule 23 criteria are satisfied.  Id.; Gooch v. Life Investors Ins. Co. of Am., 672 F.3d 402, 417 (6th Cir. 2012).

Plaintiff must show that her proposed class satisfies all of the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  In re Am. Med. Sys. Inc., 75 F.3d 1069, 1079-83 (6th Cir. 1996).  In addition, she must also demonstrate compliance with Rule 23(b)(3), which requires that common questions predominate and that a class action is a superior method of resolving these claims.  Randleman v. Fid. Nat'l Title Ins. Co., 646 F.3d 347,

6

352-53 (6th Cir. 2011).

Plaintiff fails to meet these requirements.  First, she fails to establish that issues subject to class-wide proof will predominate over issues subject to individualized proof.  Second, she fails to establish that she is qualified to represent the putative class.  Finally, she fails to establish that her proposed class is ascertainable.

## I.  PLAINTIFF CANNOT SATISFY THE RULE 23(b)(3) REQUIREMENT OF PREDOMINANCE

Under Rule 23(b), Plaintiff must establish through evidence that issues subject to class-wide proof will predominate over those issues subject only to individualized proof.  Randleman, 646 F.3d at 353.  It is not enough that the case may raise some common questions.  To justify class treatment, the common questions must "generate common answers" as well.  Wal-Mart, 131 S. Ct. at 2551; see also Beattie v. CenturyTel, Inc., 511 F.3d 554, 564-65 (6th Cir. 2007).  Plaintiff has offered no evidence to support a finding of predominance.

### A.  Proof of "Inaccuracy" is Not Amenable to Class-Wide Adjudication

A plaintiff asserting a claim under 15 U.S.C. § 1681e(b) must prove that his or her background report was inaccurate.  See, e.g., Spence v. TRW, Inc., 92 F.3d 380, 382 (6th Cir. 1996); Owner-Operator Indep. Drivers Ass'n v. USIS Commercial Servs., Inc., 537 F.3d 1184, 1194 (10th Cir. 2008); Harper v. TransUnion, LLC, 2006 WL 3762035, at *2 (E.D. Pa. Dec. 20, 2006).  The plaintiff must further prove that the inaccuracy *resulted from* the credit reporting agency's willful failure to maintain adequate procedures to ensure "maximal accuracy."  See, e.g., Nelski v. Trans Union LLC, 86 F. App'x 840, 844 (6th Cir. 2004) ("Although a showing of inaccuracy is an essential element of a claim under § 1681e(b), the FCRA does not impose strict liability for incorrect information appearing on an agency's credit reports."); Farmer v. The Phillips Agency, Inc., 285 F.R.D. 688, 698 n.16 (N.D. Ga. 2012).

7

Allegations regarding the accuracy or inaccuracy of particular criminal background reports under § 1681e(b) are not amenable to common, class-wide proof.  E.g., Owner-Operator, 537 F.3d at 1194 (affirming denial of certification of § 1681e(b) claims because of the "necessity of an individualized inquiry into each claim" regarding inaccuracy); Harper, 2006 WL 3762035, at *8-9 (proving "plaintiff's assertion that defendants issued inaccurate credit reports to the individual class members" would require an inquiry into "the financial history of each putative class member," thus defeating certification because "common issues do not predominate"); Pendleton v. Trans Union Sys. Corp., 76 F.R.D. 192, 197 (E.D. Pa. 1977) (common issues did not predominate in § 1681e(b) class claim because "determination of the accuracy of an individual's credit report" required individualized assessment and proof); see also Williams v. LexisNexis Risk Mgmt. Inc., 2007 WL 2439463, at *4 (E.D. Va. Aug. 23, 2007) (plaintiff conceded that § 1681e(b) class claim would be inappropriate for certification because "it would require an assessment of whether or not each class member's report was, in fact, inaccurate").

The cases cited by Plaintiff to the contrary are inapposite.  Three of those cases involved class certification for purposes of settlement.[3]  In that context, class certification is uncontested and does not involve the practical problems presented by the class-wide litigation of individualized issues.  In Harper v. Trans Union, LLC, 2006 WL 3762035, the court denied certification of a class of plaintiffs who had opted out of the settlement in the Clark case.  The court explained that the "key distinction between the Clark class certification and this action is that the certification took place in the context of settlement," and thus the "district court in Clark was not confronted with the trial manageability issues presented here."  Id. at *8.  Moreover, the

---

[3] See Serrano v. Sterling Testing Sys., Inc., 711 F. Supp. 2d 402, 410 (E.D. Pa. 2010); Acosta v. Trans Union, LLC, 243 F.R.D. 377, 392-93 (C.D. Cal. 2007); Clark v. Experian Info. Solutions, Inc., 2002 WL 2005709 (D.S.C. June 26, 2002).

court noted, "in the litigation context—as opposed to the settlement context—defendants seem intent on challenging plaintiff's assertion that defendants issued inaccurate credit reports to the individual class members, so plaintiff's inquiry would have to extend to the financial history of each putative class member." Id. at *9. Exactly the same is true here.[4]

The only decision cited by Plaintiff in which a court certified a § 1681e(b) class for litigation is easily distinguishable. In Harris v. Experian Info. Solutions, Inc., No. 6:06-CV-01808-GRA, at 15-16 (D.S.C. May 29, 2008), the court certified a § 1681e(b) class in which a finding of inaccuracy—credit reports that systematically omitted credit limit information— would be the same for every class member, regardless of the specific circumstances of the consumer's credit history. In this case, by contrast, the alleged inaccuracies as to each plaintiff will turn on a comparison of the information provided in each criminal background report against the individual criminal record (if any) of each putative class member.[5]

Plaintiff also fails to address the fact that proof of inaccuracy is not sufficient. See supra

---

[4] Plaintiff's remaining cases are irrelevant or distinguishable. Smith v. HireRight Solutions, Inc., 711 F. Supp. 2d 426 (E.D. Pa. 2010) involved a motion to dismiss, and had *nothing* to do with class certification. Chakejian v. Equifax Info. Services, 256 F.R.D. 492, 500-01 (E.D. Pa. 2009), involved a different provision of the FCRA (§1681i), where the only issue in dispute was the CRA's policies and procedures regarding its reinvestigation practices, and thus a "consumer-by-consumer" inquiry regarding inaccuracy was not necessary. Plaintiff's cases regarding statutory damages (Pl. Mem. at 18-19) are irrelevant because the individual questions regarding inaccuracy in the present case go to the core issue of *liability*, not damages. Finally, Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 541 (6th Cir. 2012), is distinguishable. It was not an FCRA case, and did not involve a situation in which inaccuracy was the core element of a statutory claim. The court found that there would be common proof as to liability and causation (i.e., a failure to determine where the defendant's own policyholders lived), leaving only questions as to injury and damages. By contrast, the question of whether the plaintiffs' background reports were accurate is the core issue in the case and it cannot be determined without individual proof. See, e.g., Randleman, 646 F.3d at 353 ("While the need to prove damages or establish class membership on an individual basis is not fatal to class certification, liability is a central issue in this matter and the Randlemans' claims can only be determined on an individual basis."). That explains why courts have repeatedly denied class certification under § 1681e(b).

[5] Plaintiff's suggestion that a report is "inaccurate" because it lacks disposition information is incorrect. In this Circuit, "information on a credit report is accurate under the FCRA if it is 'technically accurate' or 'accurate on its face' even if it might be 'misleading or incomplete in some respect.'" Garrett v. Trans Union, L.L.C., 2006 WL 2850499, at *10 (S.D. Ohio Sep. 29, 2006) (quoting Dickens v. Trans Union Corp., 18 F. App'x 315, 318 (6th Cir. 2001)); Holmes v. Telecheck Int'l, Inc., 556 F. Supp. 2d 819, 833 (M.D. Tenn. 2008). Boggio v. USAA Federal Sav. Bank, 696 F.3d 611 (6th Cir. 2012), cited by Plaintiff, involved a claim under § 1681s-2 of the FCRA which applies when "information is *incomplete* or inaccurate." § 1681s-2(b)(1)(D) (emphasis added). By contrast, § 1681e(b) references only accuracy, not incompleteness, as the court recognized in Dickens.

at 7.  Each plaintiff must show not only that his report was inaccurate, but also that the particular inaccuracy resulted from a willful flaw in Intellicorp's practices and procedures, rather than some other factor (whether innocent or even negligent).  See Soutter v. Equifax Servs., LLC, 2012 WL 5992207, *4 (4th Cir. Dec. 3, 2012) (plaintiff under § 1681e(b) must show that "unreasonable procedures *caused* the inaccuracy") (emphasis added); cf. Beaudry v. TeleCheck Servs. Inc., 579 F.3d 702, 707 (6th Cir. 2009) (to have Article III standing, an FCRA plaintiff must show a "nexus between the individual plaintiff and the legal violation.").

     B.     Plaintiff Cannot Define Around the Individual Issues of Proof

     Faced with these insurmountable obstacles to class certification, Plaintiff has abandoned her class definition and invented a new one.  She now imagines a class in which thousands of individual background reports can be deemed "inaccurate" based solely on an automated comparison of Criminal SuperSearch and Single County Criminal Search results.  This is an artifice.  A mass comparison of search results (even if it could be done, which it cannot) is not class-wide "proof" that each report was inaccurate; that each inaccurate result was caused by an FCRA violation; and that each plaintiff therefore is entitled to up to $1,000 ***without any review of the facts supporting his or her individual case***.  Plaintiff provides no support for the bizarre notion that the inaccuracy of a background report can be proven without any actual proof.

     Under § 1681e(b), accuracy is assessed by comparing the substance of the credit report to the public record.  See, e.g., Grays v. Trans Union Credit Info. Co., 759 F. Supp. 390, 393 (N.D. Ohio 1990) ("Trans Union has accurately reported what was on the public record."); Harper, 2006 WL 3762035, at *9 ("At the very least, plaintiff would have to canvass the records of each member of the putative class to determine the nature of injury, if any, sustained."); Williams v. Colonial Bank, 826 F. Supp. 415, 418 (M.D. Ala. 1993).  A rote comparison of search results would not suffice to prove the accuracy or inaccuracy of *one* report, let alone thousands of

10

reports on a class-wide basis.

The scope of criminal records available through a Single County Search varies from that available through a Criminal SuperSearch, and also varies among the 3,100 U.S. counties in which Single County Searches are available.  There is substantial variation in how the thousands of Single County sources format the information, such as case number, disposition, charge level, and charge description.  Single County sources also use search parameters (including whether they require an *exact* name match) that differ not only by jurisdiction, but also from the search logic used by Intellicorp in its SuperSearch product.  Even if one could somehow account in an automated way for all of these variations as they now exist among the thousands of sources—and one cannot—there is no way to account for how these variations have changed over time.  Beyond that, Plaintiff's proposed use of differences between SuperSearch and Single County results as a "proxy" for inaccuracy will not work because there is no way to determine on a class-wide basis that the Single County results reflected the individual's actual criminal record, either because of an error in the public record itself (see Grays, 759 F. Supp. at 392-93), or an error by the vendor that retrieved and reported the information, or some other reason.  Those variables are ignored by Plaintiff's improper evidentiary shortcut and would cause an unquantifiable number of incorrect results.  (Sebeck Decl. ¶¶ 28-33; Garrett Decl. ¶¶ 7-8, 12, 17-21.)

There are other flaws in Plaintiff's approach.  For example, a Single County result in Los Angeles County would show nothing about the accuracy of a SuperSearch result in Cuyahoga County, yet a SuperSearch report in these circumstances would be deemed "inaccurate" under Plaintiff's definition.  Similarly, a Single County report showing "no results found" would tell the fact finder nothing about whether a SuperSearch report showing Department of Corrections information (which records are not accessed in a Single County search) was accurate, yet that

difference too would trigger a conclusion of inaccuracy under Plaintiff's class definition.  As another example, a SuperSearch result in Cuyahoga County currently includes data from 13 different courts, while a Single County Search for the same county currently searches only two of the 14 courts in the county.  The SuperSearch will thus return results that are not possible for the Single County Search to return, and thus these searches cannot be compared.  (Sebeck Decl. ¶ 28.)  Still another example:  The LA eCourt Online tool currently has a "sounds like" search option that returns relevant court records even if the subject's name is misspelled, which can provide different results from Intellicorp's own "fuzzy name" search logic, and both are different from the New York Office of Court Administration's source, which does not return a result if even one letter in the subject's name is incorrect (thus returning a "no results" report even though there might in fact have been a criminal record).  (Id. ¶¶ 30-32.)

The thousands of Single County sources also do not uniformly format case numbers, dispositions, or offense levels in the same way as those are formatted by a SuperSearch result.  This information can be contained in various parts of a report, and as noted infra, Point III, cannot be compared on an automated basis.  In each example, the SuperSearch report would have to be examined and compared to the underlying facts to determine whether there was an inaccuracy and, if so, why it occurred.  Plaintiff cannot define around these variations.  (Sebeck Decl. ¶ 22; Garrett Decl. ¶¶ 17-21.)

In sum, Plaintiff cannot satisfy her burden of proving inaccuracy and causation on a class-wide basis.  For that reason, class certification should be denied.

C.     Whether Each Plaintiff's Claim Is Timely
        Is Not Amenable to Class-Wide Adjudication

The five-year length of the class period would also create predominantly individual issues as to the timeliness of many plaintiffs' claims.  Under the FCRA, a consumer must sue "not later

12

than the earlier of ***2 years after the date of discovery by the plaintiff*** of the violation that is the basis for such liability or 5 years after the date on which the violation that is the basis for such liability occurs."  15 U.S.C. § 1681p (emphasis added).  An individualized inquiry will be required to determine whether each plaintiff discovered the alleged violation more than two years before the date of the Complaint.[6]

For this reason, courts have limited putative FCRA class periods for litigation purposes (not for settlement purposes, where the statute of limitations issue is not contested) to two years. See Holman v. Experian Info. Solutions, Inc., 2012 WL 1496203, at *15 (N.D. Cal. Apr. 27, 2012) (limiting FCRA class period to two years because "individual issues" as to whether and when potential class members had learned of the violation "will predominate over the common issues"); Molina v. Roskam Baking Co., 2011 WL 5979087, at *5 (W.D. Mich. Nov. 29, 2011) (plaintiffs' proposed FCRA class period of five years failed the predominance test because "a substantial portion of the class turns on the individual question of when certain class members 'discovered' or 'should have discovered' Defendant's alleged misconduct."); cf. Butler v. Sterling, Inc., 2000 WL 353502, at *7 (6th Cir. Mar. 31, 2000) (affirming denial of class certification where individual issues predominated over common issues regarding the applicability of the statute of limitations under the Truth in Lending Act).

For the same reason, even if a class could be certified here, the class period would have to be limited to two years prior to the initiation of this action.

## II.    JANE ROE CANNOT ADEQUATELY REPRESENT THE CLASS

Plaintiff has the burden of establishing that she will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In considering the adequacy of a proposed

---

[6] Under the FCRA, employers are required to provide to consumers a copy of any report used as the basis for an adverse employment action.  15 U.S.C. § 1681b(b)(3)(A).

13

class representative under Rule 23(a)(4), courts consider . . . whether the representative has sufficient moral character to represent the class." Friedman-Katz v. Lindt & Sprungli, 270 F.R.D 150, 159-60 (S.D.N.Y. 2010) (Gwin, J.); see also Gooch, 672 F.3d at 431 (assessing adequacy may include consideration of honesty and trustworthiness of named plaintiff).  A plaintiff who has shown a "willingness . . . to give intentionally false testimony" faces disqualification as a class representative. Friedman-Katz, 270 F.R.D. at 160.  Accordingly, courts have denied certification where the putative representative has committed perjury or made other misrepresentations in connection with court filings and discovery responses.  See, e.g., Kline v. Wolf, 702 F.2d 400, 403 (2d Cir. 1983); Karnuth v. Rodale, Inc., 2005 WL 747251, at *4 (E.D. Pa. 2005); Kaplan v. Pomerantz, 132 F.R.D. 504, 510 (N.D. Ill. 1990).

In this case, Plaintiff has *admitted* to giving false testimony at her deposition, submitting inaccurate interrogatory responses, and submitting a false declaration to this Court.  Far from carrying her burden, Plaintiff instead has proven herself to be an inadequate class representative.

At her videotaped deposition, Plaintiff was asked whether a woman named Richelle "[ ]," who Plaintiff listed as a reference in a job application, was in fact her sister Richelle "[ ]lies."  She had previously testified that her sister was the instigator and co-defendant in her 2005 crime.  She was asked repeatedly whether Richelle [  ] was in fact Richelle [  ]lies. (Wallace Decl. Ex. D. (Roe Tr. at 128:12-23).) She denied it and testified that Richelle [  ] is not the same person as Richelle [  ]lies; she did not know where Richelle [  ] lives; she could not recall the last time she had any communications with Richelle [  ], though it was at least seven months before the deposition; and she could not provide Richelle [  ]'s current phone number.  (Id. at 128:9-24; 129:10-25.)

That testimony was false.  In two other job applications, Ms. Roe included Richelle [  ]

as an emergency contact and provided the same phone number that she previously attributed to Richelle [    ]lies.  (Wallace Decl. Ex. F at 1; Ex. G at 4.)  In a declaration to this Court, Ms. Roe represented that she cares for her sister's children, making clear that she is in regular contact with her.  Confronted with requests for admission that she gave false testimony at her deposition, Ms. Roe sought to "correct" her testimony through an "errata" sheet to "conform to the facts." (Wallace Decl., Ex. H.)  Having thus "conformed" her testimony, she then "denied" the request for admission based on the changed testimony.  However it is cast, Ms. Roe has acknowledged providing false testimony at her deposition.

Ms. Roe also has acknowledged providing false information to this Court.  In her Declaration in Support of Plaintiff's Motion for Leave to Appear Telephonically for the November 8, 2012 Case Management Conference ("CMC Decl.") (ECF No. 53-1), Ms. Roe represented that she earns less than $25,000 a year and that, therefore, attending the hearing would be a financial hardship (CMC Decl. ¶ 15).  She acknowledged during her deposition that this was false, and that in fact she earned $50,000/year at the time of her declaration and earned $38,000/year in her prior job.  She testified that she did not know how the "error" occurred or why she did not "catch" it.  (Wallace Decl., Ex. D (Roe Tr. at 200:20-202:10).)  Ms. Roe also told the Court that, as a result of her criminal record, she has "gotten so many rejection letters from employers that [she] has created a journal to help [her] deal with [her] frustration."  (CMC Decl. ¶ 6.)  When confronted with a discovery request for the journal, Ms. Roe claimed it was not actually a "journal," it was a folder of rejection letters; that the "so many rejection letters" she told the Court about were actually only two; and that the "journal" (i.e., folder) had been destroyed in a home plumbing accident before she submitted her declaration to the Court.

(Wallace Decl., Ex. D (Roe Tr. at 189:7-192:22).)[7]  Finally, Ms. Roe told the Court that getting her criminal record expunged was a difficult process, during which she had to "appear at a hearing."  (CMC Decl. ¶ 7.)  This was also false.  Ms. Roe admitted during her deposition that she did not, in fact, attend the hearing on her expungement.  (Wallace Decl., Ex. D (Roe Tr. at 195:2-12).)

Ms. Roe's conduct during this litigation renders her more deserving of sanctions than of appointment as a representative of the class.  In <u>Friedman-Katz</u>, the Court confronted a similar situation, and denied class certification, holding that the named plaintiff could not adequately serve as class representative because of her "willingness . . . to give intentionally false testimony," and because of the concern that her "credibility . . .will become the focus of cross-examination at trial, impeding her ability to effectively represent the class."  270 F.R.D. at 160.  The fact that the plaintiff in that case was seeking statutory damages rather than compensatory damages (<u>id.</u> at 153) did not make her credibility any less relevant to the class certification decision.  Indeed, the court in <u>Kaplan</u> made clear that the named plaintiff's lack of credibility precluded class certification even when the false deposition testimony related to matters of "marginal relevance" to the lawsuit, which is hardly the case here.  132 F.R.D. at 510.

Ms. Roe is not an adequate class representative and should be denied class certification.

## III.    THE CLASS IS NOT READILY ASCERTAINABLE

Finally, class certification must be denied because the proposed class is not readily ascertainable.  <u>Romberio v. UnumProvident Corp.</u>, 385 F. App'x 423, 431 (6th Cir. 2009); <u>In re OnStar Contract Litig.</u>, 278 F.R.D. 352, 373 (E.D. Mich. 2011).  To be ascertainable, a class definition must "be based on objective criteria so that class members may be identified without

---

[7] The "plumbing accident" and destruction of documents were not reported to Intellicorp's counsel until January 2, 2013.

individualized fact finding." <u>OnStar</u>, 278 F.R.D. at 373.  In addition, the class definition must allow "for the court to determine whether a particular individual is a member of the proposed class" in a way that is "administratively feasible."  <u>Garrish v. UAW</u>, 149 F. Supp. 2d 326, 330-31 (E.D. Mich. 2001).  Contrary to Plaintiff's assertion, the class is not "readily determinable from Intellicorp's computerized records."  (Pl. Mem. at 3-4.)  A large portion of Plaintiff's proposed class cannot be ascertained without thousands of individualized inquiries and thus cannot be certified.

As a threshold matter, in order to identify consumers that might fit within the class definition, all of the XML data stored in Intellicorp's massive transactional database would have to be migrated to a searchable relational database.  That task by itself would require the acquisition of additional server space and a dedicated project team working on nothing else for three to five weeks.  (Garrett Decl. ¶ 16.)  But the inquiry would not end there.

Subpart one of Plaintiff's proposed class includes all individuals whose SuperSearch showed results but whose Single County Search did not.  Given the variability in how data sources search for and identify the names of individuals and counties, matching the county in which a SuperSearch result was found to the county in which a Single County Search was performed for a given individual would require a custom algorithm to try to account for the different spelling conventions.  Significant testing would be necessary to provide any confidence that the algorithm captured all of the variations.  (<u>Id.</u> ¶¶ 17, 27.)

Subpart two of Plaintiff's proposed class includes all individuals whose "SuperSearch reported one or more criminal charges without a disposition, but a subsequent Single County Criminal or other court record search showed a disposition other than 'conviction' or 'guilty.'" (Pl. Mem. at 3.)  As explained in detail in the declaration of David Garrett (Intellicorp's Vice

17

President of Information Technology), it would be effectively impossible to identify the members of this subpart on an automated basis.

First, the subpart would have to be limited to SuperSearch and Single County results relating to the same case and charge.  This comparison cannot realistically be accomplished because, to yield a match, the case number contained in each search result must be *identical* and yet case number formats vary widely from source to source.  (Garrett Decl. ¶ 18; Sebeck Decl. ¶ 22.)  For example, on Jane Roe's own report, the format of the case number provided to Intellicorp by the Los Angeles Superior County Court (the bulk data source) ("YA[number]") is different from the format provided on the Los Angeles County Court's eCourt Online system ("[number]-01"), even though the records refer to the same case, and even come from the same court.  (See Wallace Decl., Exs. I, J.)  To try to address this, one would need to write a custom algorithm accounting for the unique case number format used by each bulk data or Single County source.  (Garrett Decl. ¶ 18.)  Currently, Intellicorp receives bulk data from nearly 500 different sources and there are more than 3,000 different sources that might be searched in connection with a Single County Search.  (Id.)

Even if there were an automated way to ensure that the SuperSearch and Single County results pertained to the same case and charge, the disposition information contained in the two results would still need to be compared to determine class membership.  Plaintiff's expert suggests looking to the "disposition" field.  (Valk Decl. ¶ 11.)  While data in the "Disposition Description" fields in the SuperSearch and Single County results could be compared, it would be impossible to accurately identify dispositions "other than 'conviction' or "guilty'" in an automated way.  (Garrett Decl. ¶ 20.)  Currently, there are more than 38,000 unique dispositions in Intellicorp's database, often abbreviated in ways that vary from source to source, and

18

jurisdiction to jurisdiction.  (Id. ¶ 8; Sebeck Decl. ¶ 22-23.)  And when a vendor reports
disposition information from a Single County Search, the vendor may select from a drop-down
menu of 43 different dispositions or enter the disposition in an open text field.  (Sebeck Decl.
¶ 26.)  Without knowing every iteration of how a disposition might be worded, it would not be
possible to construct a search algorithm to identify results that are the equivalent of "guilty" or
"convicted."

        Nor is it possible to identify in an automated way SuperSearch results that do not include
disposition information.  Plaintiff proposes searching for "reports [that] displayed 'NOT
PROVIDED'" in the disposition field (Valk ¶ 11(c)), but this will not work because disposition
information may be—and often is—entered in an alternative field, including "Case Notes,"
"Case Status," "Charge Sentence," and "Notes."  (Garrett Decl. ¶ 19.)  The only way to
determine whether a report contains disposition information is to manually review the full report.

        Similarly, subpart three of Plaintiff's class—which includes all subjects of a report
containing a SuperSearch result that reports a "higher level of offense (felony or misdemeanor)
for one or more criminal charges, but a subsequent Single County Criminal or other court record
search showed a lower level of offense (misdemeanor or infraction)"—is not ascertainable
without a report-by-report review.  First, there is the same problem of trying to identify the same
case and charge between the two searches.  Second, there is the same type of problem in trying to
compare in an automated way the offense levels to determine which SuperSearch results reported
a "higher" level of offense than that reported in the Single County Search.  Again, while it would
be possible to identify exact matches (i.e., where both reports read "felony"), a standard XML
search would not be able to identify matches if the source in question used an abbreviation, and a
custom algorithm could not feasibly be written to address the variations among the more than

19

3,000 sources.  Third, there is the same type of problem with offense level information residing in other fields.  Plaintiff's own report provides a perfect example.  The Single County result contains an "Offense Level" field, but the SuperSearch results do not.  (Wallace Decl., Exs. I, J.)  However, the SuperSearch result *does* provide offense level information in an alternative field—in the "Case Notes" field, Plaintiff's report provides citations to the penal code sections of the offenses with which she was charged (id.), such that an employer could determine the level of the offenses Plaintiff was charged with by referring to the California Penal Code.

Courts have denied certification where, as here, class members cannot be identified without countless individualized factual inquiries.  See, e.g., Romberio, 385 F. App'x at 431 (reversing certification because, among other reasons, Plaintiffs offered no way to identify individuals who had their long-term disability claims improperly denied without engaging in "individualized fact-finding"); OnStar, 278 F.R.D. at 373 (denying certification where defendant's collective subscriber data was not "sufficient to determine if any given individual meets all of the requirements of a given proposed class," thus ensuring that "[i]ndividualized inquires will be required"); Cerdant, Inc. v. DHL Express (USA), Inc., 2010 WL 3397501, at *5-6 (S.D. Ohio Aug. 25, 2010) (denying certification because only method available for potentially identifying class members was "an individualized assessment of" every shipping bill at issue to determine whether it satisfied class criteria).[8]

The failure to define an ascertainable class provides another basis to deny certification.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification should be denied.

---

[8] In Young, 693 F.3d 532, the court held that the district court did not abuse its discretion in finding that the class was ascertainable, but there, the class was based on simple criteria (insured's location, geographic boundaries of the local tax district, local tax, and tax charged) that could be objectively determined with the assistance of a specific geocoding software.  Here, Plaintiff's proposed class criteria are significantly more complex and would require not only a manual review of every consumer report, but also a subjective analysis of it.

20

Date:  March 11, 2013                 Respectfully submitted,


                                      */s/ David H. Wallace*
                                      David H. Wallace (0037210)
                                      dwallace@taftlaw.com
                                      Gregory J. O'Brien (0063441)
                                      gobrien@taftlaw.com
                                      Taft Stettinius & Hollister LLP
                                      200 Public Square, Suite 3500
                                      Cleveland, Ohio 44114-2302
                                      Phone: (216) 241-2838
                                      Fax: (216) 241-3707


                                      Joel M. Cohen *(admitted pro hac vice)*
                                      joel.cohen@davispolk.com
                                      Gina Caruso *(admitted pro hac vice)*
                                      gina.caruso@davispolk.com
                                      Davis Polk & Wardwell LLP
                                      450 Lexington Avenue
                                      New York, NY 10017
                                      Phone: (212) 450-4000
                                      Fax: (212) 701-5800


                                      *Counsel for Defendant Intellicorp Records, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2013, a true and correct copy of the foregoing document was filed electronically. Notification of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David H. Wallace*
David H. Wallace

*Counsel for Defendant Intellicorp Records, Inc.*

72447153