# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JANE ROE, individually and on behalf of all others similarly situated, | ) Case No.: 1:12-cv-02288-JG ) ) Judge James S. Gwin ) |
| Plaintiff, | ) Magistrate Judge Greg White ) |
| v. | ) DECLARATION OF ) DAVID GARRETT IN SUPPORT OF |
| INTELLICORP RECORDS, INC., an Ohio corporation, and DOES 1-50, inclusive, | ) INTELLICORP RECORDS, INC.'S ) OPPOSITION TO PLAINTIFF'S ) MOTION FOR CLASS ) CERTIFICATION |
| Defendants. | ) |

In accordance with 28 U.S.C. § 1746, David Garrett declares as follows:

1. I am the Vice President of Information Technology of Defendant Intellicorp Records, Inc. ("Intellicorp"). I make this Declaration in support of Intellicorp's Opposition to Plaintiff's Motion for Class Certification. I have personal knowledge of each of the facts stated herein, and if called to testify, could and would testify competently hereto.

2. As Vice President of Information Technology, I oversee the development and delivery of our internally developed software. I am familiar with the operation of Intellicorp's transactional database, also known as Hercules. I am also familiar with how Intellicorp fulfills client requests for criminal background information by querying Intellicorp's instant criminal database. Over the past five years, Intellicorp has fulfilled more than five million such requests.

## Intellicorp's Instant Search Products and Criminal Database

3. Intellicorp offers more than 650 product types that provide criminal background information to our customers. One of these products is Intellicorp's Criminal SuperSearch.

4. For its Criminal SuperSearch product, Intellicorp delivers criminal background information to clients from its proprietary criminal database. That database contains criminal data obtained from nearly 500 sources, including federal, state, county and municipal courts, departments of correction, sex offender registries, and others. Currently, the database houses more than 300 million records.

5. Intellicorp obtains this data in two primary ways. First, some sources will regularly provide Intellicorp with bulk data via disc, email, or FTP. Second, Intellicorp's data loading team designs computer programs known as "scrapers" that periodically harvest data from publicly available source websites. Once criminal data is received from a source or harvested from a website, it is loaded into Intellicorp's criminal database, and used to fulfill client queries.

6. Data loaded into Intellicorp's criminal database is organized into fields. A field of data is a category of information. For example, "First Name" is a field in Intellicorp's criminal database that is populated by the first names of the individuals whose criminal information is provided by a data source. In total, Intellicorp's instant FCRA criminal database populates more than 150 fields of data.

7. Each supplier of Intellicorp's bulk data sources, of which there are nearly 500, determines what fields of data it will make available to Intellicorp, and the fields of data provided by these criminal data sources vary widely source by source. Sources that do not provide information in certain fields will nonetheless sometimes provide the

information in a text field.  For example, some data sources do not provide Intellicorp with a disposition field, but will include information about the disposition of a given case in a field called "case notes," "case status," "charge sentence" or "notes."  In its reports, Intellicorp displays data to customers within the field provided by the source.  In this example, the disposition information provided by the source would be reflected in the report in the field called "case notes," "case status," "charge sentence" or "notes."

8. The format of the data supplied by Intellicorp's criminal data sources also varies source by source.  Intellicorp's bulk data sources use countless formatting conventions, abbreviations and styles that vary both by source and over time.  For example, in the aggregate Intellicorp's criminal database contains more than 38,000 distinct values for "disposition."

9. The most common way for an Intellicorp customer to perform a criminal SuperSearch is to first input data regarding the subject of the search into an electronic form on Intellicorp's website.  That data generally includes the subject's first name, last name, social security number, date of birth, and either a physical address or an e-mail address.

10. Many Intellicorp customers choose to order a package of products that includes both a Multi-State Criminal SuperSearch and at least one Single County Criminal Search.

11. A Single County Search is often performed in a jurisdiction where the subject resided.  It is performed by an Intellicorp internal researcher or outside vendor, and involves either physically traveling to the courthouse to request and review criminal records through a public access terminal or in-person request submitted to a court clerk, or using a publicly available court website, depending on the practices of the given court.

3

12. To perform a criminal SuperSearch, Intellicorp's computer systems will query the criminal database in order to match the information received from the customer about the subject to records in the database or determine that the criminal database contains no records about the subject. Intellicorp's SuperSearch product employs a proprietary algorithm to match subject data to records in the criminal database. This algorithm may use "fuzzy name logic" in order to make the match. Fuzzy name logic will match records within a certain degree of variation selected by the client. For example, Intellicorp's fuzzy name algorithm can match a shortened version of a name, like Jon Doe, to a record with a full name, like Jonathan Doe, where other criteria such as date of birth or social security number indicate a match. Some clients opt in their account settings to only receive records with an exact name match.

13. The time it takes to complete the components of a report varies, depending on a number of factors, including the products selected, the source(s) being searched, and the subject's history. The results of all search products ordered are displayed to the client electronically through Intellicorp's website.

14. Intellicorp does not maintain a library of reports in the form in which they were presented to clients at the time they were presented. Intellicorp does maintain records of queries received from customers and is able to regenerate, through its transactional database, the full and final reports (assuming all searches were completed at the time of regeneration) containing the results of all searches that were ordered by the customer, including (where applicable) Criminal SuperSearch and Single County Search results.

**There Is No Feasible Way to Create a List of Subjects that Corresponds with Plaintiff's Proposed Classes**

15. I have been informed by Intellicorp's counsel that Plaintiff seeks to certify classes comprised of the following three sets of individuals:

> All consumers in the U.S. with respect to whom, during the period April 16, 2007 through the date class certification is granted, Intellicorp furnished for employment purposes both a Criminal SuperSearch report and a report based on a Single County Criminal or other records-based search; whose Criminal SuperSearch report included results for criminal history; and whose Criminal SuperSearch report was inaccurate for one or more of the following reasons:
> (1) The Criminal SuperSearch report showed "results," but a subsequent Single County Criminal or other court record search showed "no results."
> (2) The Criminal SuperSearch reported one or more criminal charges without a disposition, but a subsequent Single County Criminal or other court record search showed a disposition other than "conviction" or "guilty."
> (3) The Criminal SuperSearch reported a higher level of offense (felony or misdemeanor) for one or more criminal charges, but a subsequent Single County Criminal or other court record search showed a lower level of offense (misdemeanor or infraction)

16. Creating a list of individuals who meet this class definition would present a series of technical hurdles, some insurmountable. First, in order to compile a list of individuals that could possibly be members of any of the three groups, it would be necessary to migrate all of Intellicorp's criminal data, which is currently stored in XML documents, to a searchable relational database. This migration would be very processor intensive and would necessitate the acquisition of additional server space. I estimate that it would also take a *dedicated* project team of approximately four people (that is, a team working on nothing else) 2-3 weeks to design, develop, debug and quality test the process of migrating the data, and 1-2 weeks of *dedicated* processing time to process the records.

5

17. The technical difficulties are not limited to the compilation of this threshold pool of individuals. Subpart one of Plaintiff's proposed class includes all individuals whose SuperSearch showed results but whose Single County Search did not. This comparison would require matching the county in which the SuperSearch returned a result to the county in which the Single County Search was performed. However, bulk data received by Intellicorp will include county names that have been spelled inconsistently by the data source. This means that attempting to match the data returned from the database to a particular county would require writing a custom algorithm that would account for different spelling conventions and permit the counties to be identified despite those differences, which is a task that, in my opinion, would require significant testing to provide any confidence that the algorithm captured all of the variations.

18. In order to compile a list matching the second subpart as defined by Plaintiff, i.e., comprising those individuals whose SuperSearch reported one or more criminal charges without a disposition, but a subsequent Single County Criminal search showed a disposition other than "conviction" or "guilty," Intellicorp would first need to run a search to identify those instances where these results were generated in relation to the same case and charge. To my knowledge, there is no automated way to run such a search. Sources present case and charge identifying information in a variety of different fields and a variety of different formats that vary widely from source to source. While it would be possible to run an automated search that would pair records where the case numbers matched exactly, the resulting list would exclude a significant number of records where the case number is the same, but formatted differently, for example, where the SuperSearch case number includes a hyphen and the Single County search

does not. The only way to overcome this issue would be to write a custom algorithm that would account for different formatting techniques and permit the case numbers to be matched despite those differences. This would necessitate writing custom algorithms to account for variations in the data provided by each of Intellicorp's nearly 500 instant data sources and each of the more than 3,000 sources that supply data through Single County Searches. This is not a task that can realistically be accomplished.

19. Further complicating matters, some of Intellicorp's instant data sources do not provide disposition information in the disposition field, but instead provide details as to case disposition in other fields, including "case notes," "case status," "charge sentence," or "notes." Thus, a search for all subjects of SuperSearch results where the disposition field was not provided will exclude any number of individuals as to whom disposition information actually was provided, but in a text field other than "disposition." There is no automated way to search these other fields for disposition information, as sources all provide disposition information using different terminology.

20. Still another difficulty in identifying members of the second subpart of Plaintiff's proposed class definition is the variability in how dispositions are reported in connection with Single County Searches. It is my understanding that a vendor who retrieves criminal record information in a Single County Search may report disposition. There is no automated way to search Single County Search results for dispositions other than "conviction" or "guilty," given the variability in disposition terminology used by various vendors.

21. Performing an automated search to identify those individuals that meet Plaintiff's definition of its third subpart, i.e., those individuals whose SuperSearch results reported a "higher" level of offense than that reported in the Single County

7

Search, presents similarly prohibitive challenges.  First, as discussed above, such a search would require Intellicorp to match those records that relate to the same case and charge, which we cannot do in an automated way.  Second, Intellicorp cannot accurately or reliably compare offense level values between SuperSearch data and Single County Search data.  Similarly to case number, Intellicorp's data sources provide offense level data in a variety of ways and formats.  Sometimes, Intellicorp's data sources provide the statutory provision setting forth the law that was violated (without indicating whether the charge is a felony, misdemeanor or infraction), while other times the sources will denote that the charge was a "felony" or "misdemeanor" or "infraction" while still other sources will use various types of abbreviations for these terms.  Again, in order to make possible an automated search identifying all instances where Intellicorp's SuperSearch provided an offense level that was "higher" than that provided by a Single County Search, Intellicorp would need to catalog all the different ways that its data sources display offense level information, and then write a custom algorithm for each source that would permit automated matching.  Again, this task is not reasonably feasible.

22.     I have reviewed the Declaration of Henk Valk ("Valk Decl.") and have identified a number of inaccuracies therein.  I also do not agree with several of the conclusions Mr. Valk reaches in paragraph 11 of his Declaration.  Mr. Valk also does not describe how the categories that he has identified relate to the three categories of individuals identified by Plaintiff in her motion for class certification and addressed by me in the preceding paragraphs.

23.     Mr. Valk does not describe what he means when he states that "Hercules" (the server that houses Intellicorp's transactional database) "tracks . . . copies of all consumer reports generated by Intellicorp."  (Valk Decl. ¶ 5.)  As I noted above,

8

Intellicorp does not maintain a library of reports in the form in which they were presented to clients at the time they were presented, although it does maintain records of queries received from customers and is able to regenerate, through its transactional database, the full and final reports (assuming all searches were completed at the time of regeneration) containing the results of all searches that were ordered by the customer.

24. Mr. Valk also states that Intellicorp's Criminal SuperSearch returns criminal record data stored in Intellicorp's internal databases, SQL03 or SQL04. (Valk Decl. ¶ 6.) To be clear, a Criminal SuperSearch may also return criminal record data stored in Intellicorp's internal databases SQL01 or SQL02.

25. Mr. Valk is incorrect when he states that, "On the actual report itself, the value of "NOT PROVIDED" is displayed for a field when the search returns no value for the field." (Valk Decl. ¶ 10.) This is only correct with respect to certain fields of information. As to other fields of information, when a search returns no value, that field will not be displayed on the report.

26. Mr. Valk does not describe what he means when he states that a list of each of the categories he identifies in paragraph 11 of his Declaration could be generated without "undue" time, burden, or expense, and, in any event, I disagree with Mr. Valk's conclusion that, once Intellicorp's data is loaded into a relational database, these categories can be identified "easily" and "with great accuracy." (Valk Decl. ¶ 12.) Mr. Valk does not appear to recognize the difficulty in matching records that refer to the same case or charge (or even the same county), or the wide variety of ways in which sources express offense levels and disposition information.

27. Thus, Mr. Valk states it would be easy to accurately identify "individuals who were subjects of Criminal SuperSearch reports that contained a result from one or

9

more counties in a specified list of counties." (Valk Decl. ¶ 11.b.) However, as I noted above in paragraph 17, bulk data received by Intellicorp will include county names that have been spelled inconsistently by the data source, such that trying to match the data returned from the database to a particular county would require writing a custom algorithm and require significant testing.

28. Mr. Valk also states it would be easy to accurately identify "individuals . . . whose [Criminal SuperSearch] reports displayed one or more cases that were not displayed on the [Single County Criminal search] or [Criminal Case Update] reports." (Valk Decl. ¶ 11.d.i.) But to make this comparison, the case number format would need to be identical between the data returned by our criminal database in the Criminal SuperSearch and the data returned in the Single County Search. As I noted above in paragraph 18, this is not always the case. Courts may change a case number each time it is updated, or they may format the number differently when providing it to us as bulk data versus when they provide it as an individual record in a Single County Search. As a result, the only way to overcome this challenge would be to write a custom algorithm that would account for different formatting techniques and permit the case numbers to be matched despite those differences, which is a task that, in my opinion, cannot realistically be accomplished.

29. I have also noted above in paragraphs 18-21 the challenges with trying to identify the individuals comprising the categories identified by Mr. Valk in paragraphs 11.d.ii and 11.d.iii of his Declaration. Because of these challenges, I disagree with Mr. Valk's opinion that these individuals can be identified easily and accurately.

30. Finally, in addition to disagreeing with the feasibility of Mr. Valk's proposed queries, I also disagree with his estimate in paragraph 13 of his Declaration of

the time needed to implement those queries and refer to paragraph 16 above for my estimate. In particular, in my opinion, Mr. Valk has significantly underestimated the time necessary to process the records, which, in his opinion, would take no more than 14 hours assuming 1.5 million records. (Valk Decl. ¶ 13.) In my experience, our data integration team, using ETL tools, can import approximately 1.5 million rows of data from a "flat file" in approximately 24-48 hours. XML parsing of the sort proposed by Mr. Valk would add additional overhead to that process. Additionally, each consumer report may contain multiple records. Therefore, as noted above, I would estimate it would take between 1 and 2 weeks of dedicated processing time to process the records, even if the proposed queries were feasible and meaningful.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on March 11, 2013.

_____
David Garrett