UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JANE ROE, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>INTELLICORP RECORDS, INC., an Ohio corporation, and DOES 1-50, inclusive,<br><br>　　　　　Defendant. | CASE NO.: 1:12-CV-02288-JG<br><br>**DECLARATION OF JOSHUA E. KIM IN SUPPORT OF REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

## DECLARATION OF JOSHUA E. KIM

I, JOSHUA E. KIM, declare:

1. I am an individual over the age of eighteen residing in the County of Los Angeles, California. I am a co-counsel for the Plaintiff in this action. I have personal, firsthand knowledge of the facts set forth herein, and if called upon to do so I could testify competently to them.

2. I am submitting this declaration in support of Plaintiff's Reply on her Motion for Class Certification, and specifically to explain the background of Plaintiff's Declaration filed October 18, 2012 in support of her motion to appear telephonically for the November 2012 status conference. Defendant has characterized the Declaration as containing deliberate inaccuracies as evidence of Ms. Roe's intent to mislead the Court. In fact, the inaccuracy challenged was the result of an unintended error I made in the drafting Ms. Roe's declaration and explaining it to her.

3. I am a staff attorney at A New Way of Life Reentry Project ("ANWOL"). ANWOL is a non-profit agency in South Central Los Angeles dedicated to the core mission of helping women break the cycle of entrapment in the criminal justice system and lead healthy and satisfying lives. As a community advocate, ANWOL provides transitional housing and reentry support for women and their children and also advocates for the human and civil rights of people with criminal records.

4. At ANWOL, I help supervise its free monthly clinic. Each year, the clinic serves on average 350 clients and processes 1,000 expungement petitions. I was the only staff attorney at ANWOL until late 2011 when a new attorney came on board to help offload my clinic work. ANWOL staff attorneys represent clinic clients both in court proceedings related to their expungement petitions and if/when related issues arise.

5. Ms. Roe initially received my assistance with California expungement and associated services starting in late 2010.  When she first came to the clinic in November, she did not have the complete case docket, so I asked her to return the next month.  Next week, she brought the requested document in person to my office, and her petitions were to be processed with the ones from the clinic in December 2010.  Because of the particularly heavy workload at the end of that year, however, I delayed the filing of petitions from the December clinic until March 2011, and Ms. Roe returned to update her declaration before I filed it at the end of March.  Her petition was granted in June.

6. Sometime in late 2011, I interviewed Ms. Roe regarding Brightstar's denial of her employment and Intellicorp's consumer report disclosing her expunged conviction.  I learned at the time that she would be applying for employment with another agency, which I later learned is Volunteers of America, and that her take-home pay would be about $2,000 a month.

7. After the filing of this case, and in September 2012, I was asked to assist co-counsel in drafting a declaration for Ms. Roe in support of her request to appear at a status conference by telephone.  I did not interview Ms. Roe again in connection with the draft, but, based on my prior discussions with her, my notes, and my recollection, I informed my co-counsel, *inter alia*, that Ms. Roe had to appear at a hearing for her expungement petition and that her pay was about $2,000 a month.  I realize now that my recollection of these facts was in error.  I might have mistaken another individual's file with Ms. Roe's in concluding that she had to appear at an expungement hearing.  And I did not know at the time that Ms. Roe had received a pay raise at Volunteers of America earlier in the year or that she would obtain employment at Partners in Care with a higher salary.  I did not intend to present to Ms. Roe, or to have her present to the Court, a misstatement of her experience.  Nor do I believe that it would have altered our analysis of the more fundamental point

that Ms. Roe worked hard at having her record expunged, and it would be a hardship for her to attend a status hearing in Ohio.

8.      I met with Ms. Roe to have her review and sign the Declaration.  She read through the document, but I did not call her attention to the salary information or provide her a copy of her criminal docket to review.

9.      After the declaration had been submitted, I communicated with Ms. Roe several times in relation to Defendant's discovery requests.  On November 7, 2012, for example, I met her in person to go over her responses and learned for the first time that she had recently obtained employment at Partners in Care.  However, it did not occur to me that this fact varied from the testimony contained in the declaration she signed in support of her motion to appear telephonically.  Although I do not believe that the pay difference altered the substance of the Declaration, I certainly would have raised the issue immediately with my co-counsel and with the Court if I realized the mistake at the time.

10.     I have personally spoken or met with Ms. Roe *at length* on at least 12 occasions, not counting the times prior to this particular litigation.  It is obvious to me that this effort and litigation has been a new experience for her.  She has trusted and relied upon her counsel in much of this effort.  However, she has remained committed to the case and was active in her role in the case, going so far as to proactively request that she be updated on new developments in the case on a weekly basis—with a brief hiatus around her recent wedding in mid-February.  She is intelligent and independent, and has always been candid and open with me in our discussions.  I have since spoken with Ms. Roe regarding the issue raised regarding her Declaration.  She has indicated to me her confirmation that she had not intended to permit a materially false statement in her Declaration.

DECLARATION OF JOSHUA E. KIM IN SUPPORT OF REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

11. I have never been the subject of any sanction or discipline by a Court. Nor have I been accused of dishonesty by an opposing counsel. I do not believe that the Defendant in this case is making such accusation. The pay inaccuracy in the Declaration was an unintended mistake by me.

12. While I do not believe any of these facts would have altered our conclusions of Ms. Roe's financial ability to attend the initial case management conference, I should have found the error and taken steps to correct it. I want to take this opportunity to apologize to the Court for the confusion this has caused.

I declare under the penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed March 15, 2013 at Los Angeles, California.

_____
Joshua E. Kim