# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JANE ROE, individually and on behalf of all others similarly situated, | Case No.: 1:12-CV-02288-JG |
| Plaintiff, | Judge: James S. Gwin |
| vs. | **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| INTELLICORP RECORDS, INC., an Ohio corporation, and DOES 1-50, inclusive, | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.    **INTRODUCTION** ..............................................................................................1

II.   **ARGUMENT** ....................................................................................................1

        A.   Whether Database-Generated Consumer Reports That Omit Conflicting, Publicly Available Criminal History Information Are Inaccurate Is A Common Question That Can Be Determined On A Class-wide Basis........................1

        B.   Mr. Garrett Grossly Exaggerates The Magnitude Of The Task Of Searching Intellicorp's Database To Identify The Class Members.  The Process Is Readily Manageable, And Does Not Impede A "Superiority" Finding.......................3

        C.   Intellicorp's Hypothetical Statute Of Limitations Defense Does Not Defeat Predominance, And The Five-Year Period Should Apply ...........................................5

        D.   Intellicorp's Attack on Plaintiff's Veracity Is Based Entirely On Collateral Matters That Do Not Defeat Plaintiff's Adequacy To Represent The Class...............7

            1.   The alleged false statements are immaterial and collateral .................................8

            2.   The alleged false statements were not intended to gain any litigation advantage, and do not constitute the type of perjury that justifies disqualification of an otherwise adequate class representative...........................9

            3.   In the alternative, the Court should allow class counsel to undertake discovery to identify a substitute class representative ......................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acosta v. Trans Union, LLC*
  243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................... 2

*Andrews v. Equifax Info. Serv., LLC*
  700 F.Supp.2d 1276 (W.D.Wash. 2010) ................................................................ 6

*Beaudry v. TeleCheck Serv., Inc.*
  579 F.3d 702 (6th Cir. 2009) ................................................................................. 3

*Boggio v. USAA Fed. Sav. Bank*
  696 F.3d 611 (6th Cir. 2012) ................................................................................. 2

*Broccuto v. Experian Info. Solutions, Inc.*
  2008 WL 1969222 at *3 (E.D. Va. May 6, 2008) ................................................. 6

*Campbell v. Hope Community Credit Union*
  2012 WL 2395180 (W.D. Tn. June 25, 2012) ....................................................... 5

*Clark v. Experian Info. Solutions, Inc.*
  2002 WL 2005709 (D.S.C. June 26, 2002) ............................................................ 2

*Coyle v. Hornell Brewing Co.*
  2011 WL 2147218 (D.N.J. May 26, 2011) ............................................................ 9

*Darvin v. Int'l Harvester Co.*
  610 F.Supp.225 (S.D.N.Y. 1985) ........................................................................ 10

*Drew v. Equifax Info. Services, LLC*
  690 F.3d 1100 (9th Cir. 2012) ........................................................................... 6, 7

*Friedman-Katz v. Lindt & Sprungli (USA) Inc.*
  270 F.R.D. 150 (S.D.N.Y. 2010) ...................................................................... 9, 10

*Gillespie v. Equifax Info. Serv. LL*
  2008 WL 4614327 (N.D.Ill. Oct. 15, 2008) .......................................................... 3

*Godec v. Bayer Corp.*
  2011 WL 5513202 (N.D. Ohio Nov. 11, 2011) ..................................................... 7

*Guimond v. Transunion Credit Info. Co.*
  45 F.3d 1329 (9th Cir. 1995) ................................................................................. 6

*Hall v. Vitran Express, Inc.*
  Civ. No. 1:09CV00800 (N.D. Ohio Oct. 29, 2010) .............................................. 7

*Harper v. Trans Union, LLC*
  2006 WL 3762035 (E.D. Pa. Dec. 20, 2006) ........................................................ 2

*Hawaii Ironworkers Annuity Trust Fund v. Cole*
2011 WL 1257756 (N.D. Ohio Mar. 31, 2011) ........................................................ 7

*Herrera v. LCS Fin. Svcs Corp.*
274 F.R.D. 666 (N.D. Cal. 2011) .............................................................................. 4

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*
2008 WL 413749 (N.D.Cal. Feb. 13, 2008) ............................................................. 4

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*
2010 WL 2756947 at *4 n.4 (N.D. Ohio July 12, 2010)
*aff'd,* 678 F.3d 409 (6th Cir. 2012) .....................................................................5, 6

*Int'l Union v. General Motors Corp.*
497 F.3d 615 (6th Cir. 2007) .................................................................................... 9

*Jane B. by Martin v. New York City Dep't of Social Serv.*
117 F.R.D. 64 (S.D.N.Y. 1987) ................................................................................ 9

*Johnson v. Midland Credit Mgmt Inc.*
2012 WL 5996391 (N.D. Ohio Nov. 29, 2012) ........................................................ 3

*Kennedy v. United Healthcare of Ohio, Inc.*
206 F.R.D. 191 (S.D.Ohio 2002) ............................................................................ 10

*McCoy v. Salem Mortgage Co.*
74 F.R.D. 8 (E.D. Mich. 1976).) ............................................................................... 5

*Murray v. New Cingular Wireless Serv. Inc.*
232 F.R.D. 295 (N.D.Ill. 2005.) ............................................................................... 1

*Owner-Operator Indep. Drivers Ass'n v. USIS Comm'l Serv. Inc.*
537 F.3d 1184 (10th Cir. 2008) ................................................................................ 1

*Pella Corp. v. Saltzman*
606 F.3d 391 (7th Cir. 2010) .................................................................................... 5

*Pendleton v. TransUnion Sys. Corp.*
76 F.R.D.192 (E.D. Pa. 1977) ................................................................................... 1

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*
501 F.3d 592 (6th Cir. 2007) .................................................................................... 7

*Serrano v. Sterling Testing Sys., Inc.*
711 F. Supp. 2d 402 (E.D. Pa. 2010) ....................................................................... 2

*Siding and Insul. Co. v. Beachwood Hair Clinic, Inc.*
279 F.R.D. 442 (N.D. Ohio 2012) ............................................................................ 7

*Smith v. HireRight Solutions, Inc.*
711 F.Supp.2d 426 (E.D. Pa. 2010) ......................................................................... 2

*Soutter v. Equifax Info. Services, LLC*
2011 WL 1226025 (E.D. Va. Mar. 30, 2011) *rev'd and remanded on other grounds,*

11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012)................................................................ 2

*Williams v. LexisNexis Risk Mgmt. Inc.*
   2007 WL 2439463  (E.D. VA. Aug. 23, 2007)...................................................................... 1

*Young v. Nationwide Mut. Ins. Co.*
   693 F.3d 532 (6th Cir. 2012) ............................................................................................ 3

## STATUTES

15 U.S.C. §1681e(b) ............................................................................................. *passim*

## OTHER AUTHORITIES

McGlaughlin on Class Actions § 4:40 .............................................................................. 10

## I.     INTRODUCTION

Intellicorp's opposition brief is most noteworthy for what it does *not* dispute, including that this suit raises significant questions of law and fact that affect thousands of consumers and that Plaintiff's claims are typical of those of the class.  Instead, the opposition is based on (1) a factually and legally flawed argument concerning what Plaintiff needs to prove in order to certify her §1681e(b) inaccuracy claim; (2) the exaggerated, disproven, and improper opinion of lay witness David Garrett, that Intellicorp's database is unequal to the task of identifying the class members; (3) a purely hypothetical statute of limitations defense; and (4) an unjustified attack on Plaintiff's moral character.  None of these arguments justifies denial of Plaintiff's motion.

## II.    ARGUMENT

### A.     Whether Database-Generated Consumer Reports That Omit Conflicting, Publicly Available Criminal History Information Are Inaccurate Is A Common Question That Can Be Determined On A Class-wide Basis

Intellicorp contends that proof of "inaccuracy" under 15 U.S.C. §1681e(b) "is not amenable to class treatment," citing a handful of inapposite cases seeking actual damages[1] or involving "subjective accuracy," *i.e.,* where the question of accuracy could not be answered by a simple "yes" or "no."  (*E.g., Owner-Operator Indep. Drivers Ass'n v. USIS Comm'l Serv. Inc.*, 537 F.3d 1184, 1187 (10th Cir. 2008) [Class certification denied where court had to evaluate the accuracy of employment history reports that used "twenty-eight [work record] descriptors, including 'superior,' 'outstanding,' 'excessive complaints,' … [etc.]"]; *Pendleton v. TransUnion Sys. Corp.*, 76 F.R.D.192, 194 (E.D. Pa. 1977)  [inaccuracy claims based on wide variety of unrelated complaints about reporting by various creditors]; *Williams v. LexisNexis Risk Mgmt. Inc.,* 2007 WL 2439463 *6 (E.D. VA. Aug. 23, 2007) [Individual consumers, most of whom had "mixed file" inaccuracy claims, did not seek class treatment.])  Here, in contrast, the test for accuracy is objective:  a criminal record either was expunged or it was not; a conviction was a

---

[1] The individual causation issues that often defeat certification of actual damages cases are "not a barrier to class certification" of a FCRA statutory damages case. (*Murray v. New Cingular Wireless Serv. Inc.*, 232 F.R.D. 295, 303 (N.D.Ill. 2005.)

misdemeanor or it was a felony.[2]  Courts have in almost every posture rejected CRA arguments that determining the accuracy of *public records* reporting is individualized and precludes class treatment.  (*Ibid*. [contested certification regarding bankruptcy reporting]; *Souter v. Equifax Info. Services, LLC*, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) *rev'd and remanded on other grounds,* 11-1564, 2012 WL 5992207 (4th Cir. Dec. 3, 2012) [contested certification regarding judgment satisfactions]; *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 393 (C.D. Cal. 2007) [rejecting class settlement because of the strength of the claims regarding bankruptcy reporting]; *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 412 (E.D. Pa. 2010) [finding predominance in settlement of criminal records case].)  Here, Plaintiff seeks relief only for those consumers for whom there is demonstrable evidence – a more favorable Single County Criminal report – that the inaccuracies in their "instant" report made their criminal history look worse than it is.  Such reports can clearly "be expected to adversely affect [employment] decisions" and are "inaccurate" under the FCRA.  (*Smith v. HireRight Solutions, Inc.*, 711 F.Supp.2d 426, 433 (E.D. Pa. 2010)).[3]

  Nor is there any question that the inaccuracies at issue are systemic and result from Intellicorp's common practices and procedures.  Intellicorp admits that it furnishes consumer reports in the form of Criminal SuperSearch ("CSS") results to employers that omit favorable "core" information about the consumer's criminal history; has elaborate procedures to identify and track the jurisdictions and data sources that do not provide it with all of the core criteria; and

---

[2]  *Harper v. Trans Union, LLC*, 2006 WL 3762035 (E.D. Pa. Dec. 20, 2006), a suit for *actual* damages, is also unhelpful. *Harper* rejected certification of a putative class of opt-outs from the class certified in *Clark v. Experian Info. Solutions, Inc.*, wherein the court rejected the CRA's arguments that determining the accuracy of bankruptcy reports would present individualized issues and certified a statutory damages class on behalf of millions of consumers. (2002 WL 2005709 (D.S.C. June 26, 2002).) (Defendant is mistaken that the *Clark* class certification decision was at a settlement posture.)
[3]  Intellicorp argues that "technical inaccuracy" alone is insufficient to prove a §1681e(b) violation in the 6th Circuit. (Opp. p.9 fn.5.) That issue was resolved to the contrary in *Boggio v. USAA Fed. Sav. Bank,* 696 F.3d 611 (6th Cir. 2012), which holds that a consumer report is "inaccurate" under the FCRA if it "provides information in such a manner as to create a materially misleading impression." (*Id*. at 617-18.) Defendant's attempt to distinguish *Boggio* as applying solely to claims under §1681s-2(b) is answered by the Circuit Court's incorporation of citations to §1681e(b) decisions as well as those under the similar furnisher provision.  (*Ibid.*)

programs its IntelliSearch platform to recommend that additional reports be purchased when its database returns results from those jurisdictions.  Intellicorp has access to all public records necessary to issue accurate reports, but has made a business decision to furnish "instant" CSS reports that it knows omit exonerating information.

Given Intellicorp's demonstrated knowledge of the requirements of the FCRA and intentional choice of these procedures, whether its violations are sufficiently "willful" to warrant statutory penalties is also a common question.  (*See, e.g., Gillespie v. Equifax Info. Serv. LLC*, 2008 WL 4614327 at *7 (N.D.Ill. Oct. 15, 2008), *cited in Beaudry v. TeleCheck Serv., Inc.*, 579 F.3d 702, 706 (6th Cir. 2009) ["whether Equifax knowingly or recklessly disregarded its statutory obligations under FCRA … is plainly a common issue … as it concerns a standardized practice that Equifax used.  In short, willfulness is perfectly suitable for class-wide proof…."].

### B.    Mr. Garrett Grossly Exaggerates The Magnitude Of The Task Of Searching Intellicorp's Database To Identify The Class Members.  The Process Is Readily Manageable, And Does Not Impede A "Superiority" Finding

Intellicorp's argument that "the class is not readily ascertainable" overstates both  the requirements for class certification, and the task at hand.  The court need only find that the class definition is "'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the class.' [Citation.]"  (*Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 537-538 (6th Cir. 2012).  The definition need only be "reasonably," not 100%, accurate.  (*Id.* at 539 [agreeing that subclasses could be "'discerned with reasonable accuracy' using defendants' electronic records and available geocoding software, though the process may require additional, even substantial, review of files"]; *see Johnson v. Midland Credit Mgmt Inc.*, 2012 WL 5996391 at *10 (N.D. Ohio Nov. 29, 2012) ["the class *does not have to be so ascertainable that every potential member can be identified at the commencement of the action* …."].)

Further, corporate defendants cannot shirk their liability to injured consumers by hiding behind the alleged complexities of their information systems.  Use of digital search tools, accompanied by manual review, is a routine method of class identification (*Young, supra*; *see*

*also In re Wal-Mart Stores, Inc. Wage and Hour Litig.* 2008 WL 413749 at *6, 7 (N.D.Cal. Feb. 13, 2008) , and it is particularly well-suited to a database business like Intellicorp's, whose very essence is to gather, distill, and report information from a wide variety of sources.  When a defendant treats records as accurate for its own business purposes, courts do not look favorably on arguments they are not accurate enough to define a class.  (*See Herrera v. LCS Fin. Svcs Corp.*, 274 F.R.D. 666, 274 (N.D. Cal. 2011).)  Here, Intellicorp represents that for the purpose complying with the FCRA, it accurately parses and compiles public record information from a large number of sources despite wide inconsistencies in their data, but argues that for the purpose of identifying class members, these inconsistencies present an "insurmountable" problem.  To the extent Intellicorp accurately parsed and compiled source data in the first place, the resulting data should also be accurate for class identification.  Intellicorp cannot reasonably claim that what is sufficiently accurate for FCRA-compliant reports is inaccurate for purposes of litigation.

The purported data processing obstacles that Mr. Garrett describes are strongly refuted in the Reply Declaration of Plaintiff's expert Mr. Valk ("Valk Reply").[4]  First, Mr. Garrett's estimate of the volume of records that would have to be reviewed is overstated by a factor of 20.  (*Id.* ¶ 5.)  To create the relational database the parties agree would be required, he suggests that Intellicorp would have to migrate "all" of its criminal data, which he describes as "more than five million" requests for criminal background information (Garrett Decl. ¶¶ 1, 16), and estimates this process would take more than 3 weeks.  In fact, only ***252,281 records*** – the number of consumers with respect to whom Intellicorp ran a CSS with adverse results history, and subsequently ran a Single County Criminal search,[5] would have to be migrated. (Valk Reply ¶¶ 5, 8, 21-25.)

Mr. Garrett also repeatedly references the fact that Intellicorp's database includes data from "500 sources," and states that separate algorithms are required for each of these sources. (Garrett Decl. ¶¶ 17, 21.).  However, the starting point for the analysis is not the sources of the

---

[4] Mr. Garrett was ***not designated as an expert***, and his opinion testimony is not, therefore, admissible.  (*See* Plaintiff's Objections to Evidence filed herewith.)
[5] This number is based on the period April 16, 2007-October 18, 2012 used by Intellicorp for its interrogatory responses. Plaintiff treats this as the class period for these illustrative purposes.

data, but the database itself.  (Valk Reply ¶ 8.)  Once the relevant records are identified and copied, only a section of each record needs to be shredded into individual tables for further analysis, and only up to eight of those tables will contain text fields that require parsing – significantly fewer than the 150 fields claimed by Mr. Garrett.  (Valk Reply ¶ 10.)  As explained in more detail in Mr. Valk's declaration, there are a variety of parsing and matching techniques to sort through those records and fields to identify class members, notwithstanding the formatting inconsistencies in the data.  In the end, it should take no more than a few days to parse the majority of the relevant records, and there should be no more than an estimated 250 files (0.1% of the data set) that require a subsequent manual review.  (Valk Reply ¶¶ 12-25.)

   Finally, any predominance concerns can be addressed by at least two less drastic alternatives, either of which would better protect the interests of the class members than denial of class certification.  First, the Court "has continuing discretion to modify a certification order 'in the light of subsequent developments in the litigation,' [footnotes omitted]," and can adjust the class definition.  (*Campbell v. Hope Community Credit Union,* 2012 WL 2395180 *at 9 (W.D. Tn. June 25, 2012).  Second, the Court can certify a liability-only class, providing a vehicle for class members to come forward and obtain relief on an individual basis.  (*See Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010), *cert.den.* 131 S.Ct. 998 (2011); *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 421 (6th Cir. 2012); *McCoy v. Salem Mortgage Co.,* 74 F.R.D. 8 at *13-14 (E.D. Mich. 1976).)  Intellicorp offers no opposition to a liability-only class, as suggested in Plaintiff's opening brief. (Pltf. MPA at p. 18 n.10.)

###   C.  Intellicorp's Hypothetical Statute Of Limitations Defense Does Not Defeat Predominance, And The Five-Year Period Should Apply

   Plaintiff has properly sought certification of a class beginning five years prior to the filing of the Complaint, pursuant to 15 U.S.C. §1681p. Intellicorp argues that litigation of its affirmative statute of limitations defense as to violations older than two years would predominate over the many other common issues in the case.  Other than its bare recitation of cases reaching its preferred result, Intellicorp does not explain why this is so.  As this Court held in *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 2010 WL 2756947 at *4 n.4 (N.D.

Ohio July 12, 2010) *aff'd,* 678 F.3d 409 (6th Cir. 2012), "[t]he weight of authority is against [the] argument that because [defendant's statute of limitations and other affirmative defenses] will vary [among consumers], common questions do not predominate."

The parties agree a CRA is not liable under §1681e(b) of the FCRA unless the consumer can prove it failed to use reasonable procedures to ensure the maximum possible accuracy of the information reported.  (Opp. At 7; *see Guimond v. Transunion Credit Info. Co.*, 45 F.3d 1329, 133 (9th Cir. 1995).)  Thus, the statute of limitations does not begin to run until the consumer "could concern whether the company's procedures in ensuring accuracy … were reasonable…." (*Andrews v. Equifax Info. Serv., LLC,* 700 F.Supp.2d 1276, 1279 (W.D.Wash. 2010); (*Drew v. Equifax Info. Services, LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012); *Broccuto v. Experian Info. Solutions, Inc.*, 2008 WL 1969222 at *3, n. 1 (E.D. Va. May 6, 2008) [FCRA statute of limitations does not run begin "until a consumer learns information which appears to be normally within the province of the bank or credit reporting agency and not easily discovered by the consumer."].)

Here, while some class members may have discovered that their consumer reports were inaccurate, none of them learned or could have learned sufficient details about how Intellicorp internally created and furnished its reports to determine whether or not such procedures were unreasonable.  Defendant zealously protects its internal policies and procedures from public disclosure, and (unsuccessfully) moved for a protective order in this action for the very purpose of "protecting from public disclosure" key information about the nature and capabilities of its database, sources, search results, and vendor network.  (ECF Doc. 70, 71.)

Further, the class members here, on whom Intellicorp ran a Single County Criminal Search that accurately reported their criminal history, would have no reason to know that Intellicorp had previously furnished another, inaccurate CSS report about them that violated the FCRA.[6]  As this

---

[6] Intellicorp admits that every report it furnishes, including instant CSS reports, is a "consumer report" that must comply with the FCRA. (Interrog. 8[Pltf. Exh. A].)  Intellicorp's current effort to characterize its multiple search products as a single "report" provided *seriatum* is simply wrong.

District held in *Hall v. Vitran Express, Inc.* Civ. No. 1:09CV00800 (N.D. Ohio Oct. 29, 2010) (Polster, J.) [Reply Exh. X], "simply because these applicants were provided certain information by [the CRA] about their consumer report, does not mean that they had notice of [defendant's] violations of the FCRA."

The courts will not presume a violation was discovered absent a showing **by the defendant** about "*how* a reasonably diligent plaintiff would have discovered the violations." (*Drew v. Equifax Info. Services, LLC*, *supra*, 690 F.3d at 1110 (9th Cir. 2012); *see also Powers v. Hamilton Cnty. Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007) [class certification affirmed where defendant offered no evidence of the purported "variations" in class members' experiences that might defeat predominance].)  In the absence of *any* evidence that even a *single* class member had actual notice of the violations at issue herein, the Court must reject Intellicorp's argument that class members' claims will be barred by the discovery rule.  (*See Siding and Insul. Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) [defendant's failure to produce evidence of the existence of possible exceptions to liability under the Telephone Consumer Protection Act was insufficient to defeat predominance under 23(b)(3); even if defendant "can ultimately prove a few [exceptions], a common question is still at the heart of the litigation"]; *accord*, *Hawaii Ironworkers Annuity Trust Fund v. Cole*, 2011 WL 1257756 at *15 (N.D. Ohio Mar. 31, 2011).)

Finally, Plaintiff and Intellicorp agree that no potential predominance issues arise if the class period is defined to begin two years prior to the filing of the complaint.  Thus, if the Court credits Intellicorp's argument, it should exercise its discretion to so modify the proposed class. (*See Godec v. Bayer Corp.*, 2011 WL 5513202 at *6 (N.D. Ohio Nov. 11, 2011)(Gwin, J.).

      **D.**     **Intellicorp's Attack On Plaintiff's Veracity Is Based Entirely On Collateral Matters That Do Not Defeat Plaintiff's Adequacy To Represent The Class**

Intellicorp's adequacy challenge consists solely of an *ad hominem* attack on Plaintiff's credibility, seeking to paint her as untruthful.  That attack is unavailing.  The erroneous testimony of which Plaintiff stands accused concerns collateral matters that are entirely unrelated to any of the claims in this litigation.  The alleged "false statements" in Plaintiff's prior

Declaration were, to a large degree, due to oversights of counsel (*see* Kim Reply Decl., discussed below), and all of the errors have been corrected on the record.  There is no evidence Plaintiff has ever acted untruthfully in order to gain some tactical litigation advantage, or any other circumstance which would warrant denial of class certification on this basis.

### 1.    The alleged false statements are immaterial and collateral

Plaintiff's October 2012 Declaration.  Last October Plaintiff submitted a declaration in support of her request to participate by telephone at the initial status conference.  Due to her counsel's oversight and Plaintiff's failure to notice the error when she reviewed the document, the declaration stated that Plaintiff was earning "less than $25,000" – the amount her attorney at the New Way of Life Reentry Project estimated based on their prior meetings – rather than her actual salary at the time.  (Kim Reply Decl. ¶¶ 5-9; Roe Decl. filed March 14, 2013 [ECF Doc. 84-1] ¶ 5.)  The salient point – that it would have been a significant personal and financial hardship for Plaintiff to travel from Los Angeles to Ohio for the status conference – was true, and Intellicorp does not suggest otherwise.  (*Ibid.*)  Indeed, Plaintiff submitted a very similar declaration – based on her new salary – in support of her request to appear by phone at the March 20, 2013 conference, which the Court granted.

In ¶ 7 of the October declaration, explaining why she has sued under a pseudonym, Plaintiff stated that the process for applying for her records to be expunged "was not easy.  I had to make several trips to different court-houses to obtain copies of all the relevant records, meet several times with my attorneys, submit declarations and forms, and appear at a hearing."  At deposition, and after reviewing her criminal docket sheet, Plaintiff recollected and acknowledged that although she had made trips to the court in connection with the expungement, she had not had to attend a hearing.  That small error, which also originated with a drafting error by counsel (Kim Reply Decl. ¶¶ 5, 7-9), was immaterial to the declaration or to the claims in this case.

Intellicorp next suggests that Plaintiff lied when she stated:  "I have gotten so many rejection letters from employers that I have created a journal to help me deal with my frustration."  (October Decl. ¶ 7.)  At deposition, Plaintiff explained that what she referred to as a

"journal" was a collection of documents she kept as "part of my triumph, you know, because I knew that eventually I would get an acceptance letter, and that would be – just to show myself that I didn't give up."  (Roe Dep. [Exh. W]190:24-191:17.) Intellicorp's quibbling about whether this could accurately be described as a "journal" hardly establishes that Plaintiff is a perjurer.

Plaintiff's Deposition Testimony.  Plaintiff stated several times during her deposition that she was quite nervous.  (Roe Dep. [Exh. W], 17:22, 35:10-11.)  When questioned about the (entirely irrelevant) events that led to her arrests and convictions and about criminal charges against her sister, Plaintiff became flustered and gave testimony which, upon review of her transcript, she corrected.  (Errata sheet, Deft. Exh. H.)

> **2.  The alleged false statements were not intended to gain any litigation advantage, and do not constitute the type of perjury that justifies disqualification of an otherwise adequate class representative**

The established test for adequacy of a class representative is whether "they possess the same interest and suffer the same injury as class members" and can "vigorously prosecute the interests of the class through qualified counsel." (*Int'l Union v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007).)  Considerations of the "representative's personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." (*Jane B. by Martin v. New York City Dep't of Social Serv.,* 117 F.R.D. 64, 74 (S.D.N.Y. 1987), quoted in *Friedman-Katz v. Lindt & Sprungli (USA) Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010). Accordingly, those rare cases in which a class representative has been disqualified were situations where the plaintiff – often joined by his or her counsel – was shown to have lied about a material fact at issue in the case, in order to gain a litigation advantage. (*See, e.g., Friedman-Katz* at 159 [plaintiff, with her counsel's full knowledge, "purposely gave false testimony" hiding the numerous other lawsuits she and class counsel had brought]; *Coyle v. Hornell Brewing Co.*, 2011 WL 2147218 at *4 (D.N.J. May 26, 2011) [denying certification where plaintiff lied about the date she had purchased the product at issue and the fact it was purchased

only after she and her attorneys had initiated the suit].)  In marked contrast, that is not what happened here.

Another justification for finding a representative inadequate is when his or her alleged dishonesty has the potential to become the time-consuming focus of cross-examination at trial and of prejudicing the jury against otherwise-meritorious claims.  (*See, e.g., Darvin v. Int'l Harvester Co.,* 610 F.Supp.225, 257 (S.D.N.Y. 1985); *Friedman-Katz* at 160.)   Here, the issues to which Plaintiff's corrected testimony relate – the circumstances of her crimes and the involvement of her sister – have nothing to do with the claims to be tried, and she anticipates filing an *in limine* motion to exclude any documents or testimony relating to them, precluding the risk of extensive cross-examination about which the courts are concerned. [7]

Plaintiff's acknowledgement her testimony was erroneous and decision to continue on as the class representative despite Intellicorp's campaign of character assassination, despite the fact that she stands to gain very little monetarily, and despite legitimate concerns about the effect of any publicity about her participation in the case on her reputation and job prospects, is strong evidence that she is highly committed to this difficult litigation, and can be trusted to fulfill her obligations to the class (*see* Kim Decl. ¶ 10).  She is a more than adequate class representative.

> **3.      In the alternative, the Court should allow class counsel to undertake discovery to identify a substitute class representative**

In the event the Court believes the class would be better served by a different representative, Plaintiff requests the calendar be modified and she be granted permission to conduct discovery to identify a suitable replacement.  (*See Kennedy v. United Healthcare of Ohio, Inc.,* 206 F.R.D. 191, 197 (S.D.Ohio 2002) [discussing advertising for class representatives]; 1 McGlaughlin on Class Actions § 4:40 [when a replacement class representative is required, it is appropriate, and perhaps even necessary to protect the interests of the whole class, for putative class counsel to make reasonable efforts to recruit one.].)  To date, Intellicorp has objected to Plaintiff's request for a class list (Deft. Response to RFP 33).

---

[7] Mr. Kim objected to Intellicorp's introduction of the documents to which the deposition testimony related.  (Roe Dep. [Exh. W], 85:22-86:11, 79:23-24, 80:21.)

DATED: March 18, 2013   CHAVEZ & GERTLER LLP
          THE LAW OFFICES OF DEVIN H. FOK
          A NEW WAY OF LIFE REENTRY PROJECT

       By:   _____*/s/ Nance F. Becker*_____
          Nance F. Becker (Cal. Bar # 99292)
           (admitted *pro hac vice*)
          CHAVEZ & GERTLER LLP
          42 Miller Ave.
          Mill Valley, CA 94941
          Phone: (415) 381-5599
          Fax: (415) 381-5572
          nance@chavezgertler.com
          Attorneys for Plaintiff and the Proposed Class

***Additional Attorneys for Plaintiff JANE ROE and the Proposed Class:***

THE LAW OFFICES OF DEVIN H. FOK
Devin H. Fok (Cal. Bar #256599) (admitted
*pro hac vice*)
P.O. Box 7165
Alhambra, CA 91802-7165
Phone: (310) 430-9933
Fax: (323) 563-3445
devin@devinfoklaw.com

A NEW WAY OF LIFE REENTRY
PROJECT
Joshua E. Kim (Cal Bar #257260) (admitted
*pro hac vice*)
958 E. 108th St.
Los Angeles, CA 90059
Phone: (323) 563-3575
Fax: (323) 563-3445
joshua@anewwayoflife.org

COHEN ROSENTHAL & KRAMER LLP
Jason R. Bristol (Ohio Bar #0072989)
Joshua R. Cohen (Ohio Bar #0032368)
The Hoyt Block Building – Suite 400
700 West St. Clair Avenue
Cleveland, Ohio 44113
Phone:  (216) 781-7956
Fax:  (216) 781-8061
jbristol@crklaw.com; jcohen@crklaw.com

LEONARD A. BENNETT
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
Phone:  (757) 930-3660
Fax:  (757) 930-3662
lenbennett@clalegal.com

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.1**

I hereby certify that this case has been assigned to the standard track and that

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

OF MOTION FOR CLASS CERTIFICATION complies with the page limitation (10) provided

in L.R.7.1 for a dispositive motion being filed in a case assigned to this track.


DATED:  March 18, 2013            By: _____*/s/ Nance F. Becker*_____
                                       Nance F. Becker
                                       CHAVEZ & GERTLER LLP


**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2013 a copy of foregoing PLAINTIFF'S REPLY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR

CLASS CERTIFICATION was filed electronically, along with the following supporting

declarations and exhibits:

- DECLARATION OF NANCE F. BECKER IN SUPPORT OF PLAINTIFF'S REPLY MOTION FOR CLASS CERTIFICATION; and Exhibits U-Y

- DECLARATION OF JOSHUA EUNSUK KIM IN SUPPORT OF PLAINTIFF'S REPLY MOTION FOR CLASS CERTIFICATION

- DECLARATION OF HENK VALK IN SUPPORT OF PLAINTIFF'S REPLY MOTION FOR CLASS CERTIFICATION

- PLAINTIFF'S OBJECTIONS TO EVIDENCE IN DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Notice of this filing will be sent by operation of the Court's electronic filing system to all

parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S.

mail.  Parties may access this filing through the Court's system.


DATED:  March 18, 2013            By: _____*/s/ Nance F. Becker*_____
                                       Nance F. Becker
                                       CHAVEZ & GERTLER LLP