## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## FOR THE EASTERN DIVISION

| | |
|---|---|
| **JANE ROE, individually and on behalf of all others similarly situated,** | **CASE NO. 1:12CV2288** |
| | **JUDGE JAMES S. GWIN** |
| **Plaintiff,** | |
| v. | **DEFENDANT INTELLICORP RECORDS, INC.'S RESPONSE TO PLAINTIFF'S OBJECTION TO THE DECLARATION OF DAVID GARRETT** |
| **INTELLICORP RECORDS, INC.,** *et al.*, | |
| **Defendants.** | |

## INTRODUCTION

In the briefing on Plaintiff Jane Roe's motion for class certification, the parties dispute whether it is feasible to use Defendant Intellicorp Records, Inc.'s database to identify the members of Plaintiff's proposed class.  Because this dispute involves the functionality of Intellicorp's database, it is logical and reasonable that someone who is familiar with Intellicorp's operation of the database would testify regarding whether the series of steps Plaintiff proposes to identify potential class members is feasible.  In that regard, Intellicorp presented testimony from David Garrett, its Vice President of Information Technology, showing that it would not be feasible to identify the potential class members as Plaintiff proposes.  (*See* Declaration of David Garrett in Support of Intellicorp Records, Inc.'s Opposition to Plaintiff's Motion for Class Certification ¶¶ 15-31.)

Plaintiff, however, objects to Garrett's testimony and asks this Court not to consider Paragraphs 15-30 of his declaration, claiming that "the objectionable evidence consists of expert opinion that Mr. Garrett is not entitled to offer because he has not

been designated as an expert witness in this case." (ECF No. 88, p. 1.)[1] This objection should be overruled for three reasons. First, the testimony that Plaintiff finds objectionable is *fact* testimony regarding the steps that would be necessary to try to identify individuals matching Plaintiff's proposed class definition and regarding characteristics of Intellicorp's database. Second, Garrett's testimony is, at most, lay opinion testimony permitted by Federal Evidence Rule 701, and as such, it was not necessary for Intellicorp to designate Garrett as an expert witness. Third, even if portions of Garrett's testimony were construed to be expert testimony, the submission of his declaration in opposition to Plaintiff's motion for class certification is appropriate and justified by the need to respond to Plaintiff's shifting definition of the class and her purported expert testimony with respect to that re-defined class. Intellicorp specifically reserved its right to call additional expert witnesses for rebuttal or to address future developments.[2]

For these reasons and those set forth more fully below, this Court should overrule Plaintiff's objection to Paragraphs 15-30 of Garrett's declaration.

## LAW AND ARGUMENT

### I. Because the objected-to testimony is fact testimony, Plaintiff's objection should be overruled.

Contrary to Plaintiff's assertions, the testimony in Paragraphs 15-30 of Garrett's declaration is fact testimony, not expert testimony.

---

[1] Plaintiff's objection refers to Paragraphs 15- 31 of Garrett's declaration, but the declaration has only 30 paragraphs.

[2] *See* Intellicorp's Designation of Experts, attached as Ex. A to the Declaration of Michael J. Zbiegien, Jr., at 2.

Paragraphs 15-21 describe the steps that would be necessary to try to query Intellicorp's database in an attempt to identify individuals matching Plaintiff's proposed class and related aspects of the database.  Paragraph 15 confirms that Garrett was informed of Plaintiff's newly proposed class definition, which contains three subparts.  Paragraphs 16-18 describe the steps that would be necessary to try to identify individuals within Plaintiff's proposed class definition.  *See* Garrett Decl. ¶ 16 ("[I]n order to compile a list of individuals that could possibly be members of any of the three groups, it would be necessary to migrate all of Intellicorp's criminal data, which is currently stored in XML documents, to a searchable relational database."); ¶ 17 ("This comparison would require matching the county in which the SuperSearch returned a result to the county in which the Single County Search was performed.  However, bulk data received by Intellicorp will include county names that have been spelled inconsistently by the data source.  This means that attempting to match the data returned from the database to a particular county would require writing a custom algorithm that would account for different spelling conventions and permit the counties to be identified despite those differences, which is a task that, in my opinion, would require significant testing to provide any confidence that the algorithm captured all of the variations."); ¶ 18 ("In order to compile a list matching the second subpart as defined by Plaintiff . . . Intellicorp would first need to run a search to identify those instances where these results were generated in relation to the same case and charge. . . . This would necessitate writing custom algorithms to account for variations in the data provided by each of Intellicorp's nearly 500 instant data sources and each of the more than 3,000 sources that supply data through Single County Searches.  This is not a task that can realistically be accomplished.").

Paragraphs 19-21 then describe characteristics of Intellicorp's data sources that preclude an automated search of Intellicorp's database to try to identify Plaintiff's proposed class members.  *See* Garrett Decl. ¶ 19 ("[S]ome of Intellicorp's  instant data sources do not provide disposition information in the disposition field, but instead provide details as to case disposition in other fields, including "case notes," "case status," "charge sentence," or "notes." . . . There is no automated way to search these other fields for disposition information, as sources all provide disposition information using different terminology."); ¶ 20 ("Still another difficulty in identifying members of the second subpart of Plaintiff's proposed class definition is the variability in how dispositions are reported in connection with Single County Searches.  It is my understanding that a vendor who retrieves criminal record information in a Single County Search may report disposition.  There is no automated way to search Single County Search results for dispositions other than "conviction" or "guilty," given the variability in disposition terminology used by various vendors."); ¶ 21 ("Intellicorp cannot accurately or reliably compare offense level values between SuperSearch data and Single County Search data.  Similarly to case number, Intellicorp's data sources provide offense level data in a variety of ways and formats.  Sometimes, Intellicorp's data sources provide the statutory provision setting forth the law that was violated (without indicating whether the charge is a felony, misdemeanor or infraction), while other times the sources will denote that the charge was a "felony" or "misdemeanor" or "infraction" while still other sources will use various types of abbreviations for these terms.").

Paragraphs 22-30 contain Garrett's response to certain factual inaccuracies and other conclusions in the declaration of Plaintiff's expert witness Henk Valk.  For

example, Paragraphs 23-25 clarify inaccuracies and correct other misstatements in Valk's declaration. *See id.* ¶¶ 23-25. Paragraphs 26-30 then note the ways in which Valk's conclusions do not account for the characteristics of Intellicorp's data sources that Garrett described earlier in his declaration. *See id.* ¶ 26 ("Mr. Valk does not appear to recognize the difficulty in matching records that refer to the same case or charge (or even the same county), or the wide variety of ways in which sources express offense levels and disposition information."); ¶ 27 ("[B]ulk data received by Intellicorp will include county names that have been spelled inconsistently by the data source, such that trying to match the data returned from the database to a particular county would require writing a custom algorithm and require significant testing."); ¶ 28 ("[T]o make [Mr. Valk's proposed] comparison, the case number format would need to be identical between the data returned by our criminal database in the Criminal SuperSearch and the data returned in the Single County Search. As I noted above in paragraph 18, this is not always the case."); ¶ 29 ("I have also noted . . . the challenges with trying to identify the individuals comprising the categories identified by Mr. Valk in paragraphs 11.d.ii and 11.d.iii of his Declaration. Because of these challenges, I disagree with Mr. Valk's opinion that these individuals can be identified easily and accurately."); ¶ 30 ("In my opinion, Mr. Valk has significantly underestimated the time necessary to process the records . . . . In my experience, our data integration team, using ETL tools, can import approximately 1.5 million rows of data from a "flat file" in approximately 24-48 hours. XML parsing of the sort proposed by Mr. Valk would add additional overhead to that process. Additionally, each consumer report may contain multiple records. Therefore, as noted above, I would estimate it would take between 1 and 2 weeks of dedicated

processing time to process the records, even if the proposed queries were feasible and meaningful.").

Garrett's testimony is based on his personal knowledge of Intellicorp's information technology resources and what they can and cannot accomplish. It is fact testimony, not expert testimony. As such, Intellicorp was not required to identify Garrett on its expert witness designations, and Plaintiff's objection should be overruled.

## II. Because the objected-to testimony is, at most, lay opinion testimony permitted by Rule 701, Plaintiff's objection should be overruled.

Plaintiff's objection should also be overruled because Garrett's testimony is, at most, lay opinion testimony permitted under Rule 701 of the Federal Rules of Evidence.[3] Rule 701 permits a non-expert to testify regarding opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Applying this rule, courts permit witnesses to provide lay opinion testimony based upon "particularized knowledge that the witness has by virtue of his or her position in the business." Fed. R. Evid. 701 Advisory Committee's Note, *quoted in United States v. Whaley*, 860 F. Supp.2d 584, 588-89 (E.D. Tenn. 2012). *See also United States v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010) (witness's "opinions were admissible as testimony based upon personal knowledge and experience gained while employed by Dynegy").

Under Rule 701, a witness may provide lay opinion testimony even regarding specialized or technical matters so long as the testimony is based on the witness's

---

[3] Lay opinion testimony, in contrast to expert opinion testimony, is not subject to the disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(2)(a) (requiring disclosure of witnesses who will give testimony under Rule 702, 703 or 705 of the Federal Rules of Evidence).

- 6 -

personal knowledge. *United States v. Thompson*, 393 Fed. Appx. 852, 858-59 (3d Cir. 2010). For example, in *Thompson*, the court affirmed the trial court's decision to permit lay opinion testimony regarding the use of a GPS tracking system and the data generated by the device. *Id*. Although the witness, Edward Uehlinger, had no scientific background concerning the functionality of the device, he was trained in and had experience in GPS tracking devices in connection with his position as an account executive at a security company that sold the GPS device at issue. *Id*. at 858. The court concluded that Uehlinger's testimony was permitted lay opinion even though the subject matter was specialized or technical because it was based upon his personal knowledge and experience:

> Uehlinger's testimony pertaining to the GPS data involved lay witness testimony based on particularized knowledge by virtue of his experience, and as such it was admissible—even if the subject matter was specialized or technical—because the testimony was based upon Uehlinger's personal knowledge rather than on specialized knowledge within the scope of Rule 702."

[*Id.* (internal quotations and brackets omitted).]

Because Uehlinger performed demonstrations regarding the reliability of the GPS devices, the court found that he had a basis for testifying regarding reliability of the GPS device at issue in *Thompson*. *Id.* As such, the trial court properly permitted Uehlinger to provide lay opinion testimony regarding the operation of the GPS device. *Id*. at 859.

Here, Garrett's testimony is similarly permissible lay opinion testimony. As Intellicorp's Vice President of Information Technology, Garrett oversees the development of Intellicorp's internally developed software and is intimately familiar with the operation of Intellicorp's database. Thus, like Uehlinger in *Thompson*,

Garrett's testimony regarding the functionality and capabilities of Intellicorp's database is based upon his personal knowledge and experience.  Therefore, even if the subject matter is specialized or technical, Garrett's testimony still involves permitted lay witness testimony, and Plaintiff's objection should be overruled.

Plaintiff argues that Garrett's "opinions . . . are beyond his job functions" because Garrett is not responsible for collecting and parsing the raw public record data.  (ECF 88, pp. 4-5.)  This argument is a red herring.  Garrett's testimony relates to Plaintiff's proposed class definition, which is not based on the raw public record data.  Plaintiff's proposed class definition is based on a comparison of certain fields in the results returned by Intellicorp's Criminal SuperSearch and Single County Criminal Search and other records searches.  The data for the results of the Criminal SuperSearch and Single County Criminal Search and other searches are maintained in Intellicorp's transactional results database.  Garrett is familiar with that database (Garrett Decl. ¶ 2), and Plaintiff does not argue otherwise.  Garrett's testimony describes characteristics of the public record data that populates the fields in the Criminal SuperSearch and Single County Criminal Search and other searches in the transactional results database.  The methods of collecting and parsing the raw data are immaterial to this testimony; what matters is how and where the data appears in the search results—again, a topic very much within Garrett's responsibilities.  Thus, contrary to Plaintiff's argument, Garrett's opinions are within his job function, and as such, they are proper lay opinion testimony under Rule 701.

**III.   Because any "expert" testimony by Mr. Garrett was in response to a declaration submitted by Plaintiff, and because Plaintiff has deposed Garrett in detail about the topics discussed, Intellicorp was permitted to submit his declaration and Plaintiff's objection should be overruled.**

Even if the Court were to construe Garrett's declaration as providing expert testimony, Plaintiff's objection should still be overruled. A witness's testimony should not be excluded under Federal Civil Rule 37(c)(1) for a failure to identify the witness "if the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, any failure to designate Garrett as an expert satisfies both prongs of Rule 37(c)(1). Plaintiff was fully aware of Garrett and his role with Intellicorp's databases. *See Scipio v. City of Steubenville*, No. 2:05 CV 759, 2007 WL 1406961, at *2 (S.D. Ohio May 8, 2007) (harm contemplates lack of knowledge by other party). Not only was Garrett identified in Intellicorp's initial disclosures as having knowledge related to its databases, but Plaintiff deposed Garrett for a full day in December 2012 as the "person most knowledgeable" with respect to those databases and their functionality. In contrast, Intellicorp has not yet had an opportunity to depose Plaintiff's database expert Henk Valk. Plaintiff's argument that Garrett's testimony should be excluded because he has not been qualified as an expert is misguided. To date, there have been no expert disclosures and the deadline for *Daubert* motions is still six weeks away. Under Plaintiff's reasoning, the Court should exclude the testimony of her expert, Henk Valk, because he has not been qualified as an expert either.

The submission of Garrett's declaration was substantially justified by Plaintiff's multiple revisions to her proposed class definition (six weeks after her identification of experts) and submission of Mr. Valk's declaration regarding the newly revised definition. Garrett's testimony to which Plaintiff objects relates to the infeasibility of

- 9 -

using Intellicorp's database to identify in an automated way the members of Plaintiff's newly proposed class. It was not until her motion for class certification—filed three weeks after Intellicorp's expert designations were due—that Plaintiff finally settled on her complex three-part class definition:

> All consumers in the U.S. with respect to whom, during the period April 16, 2007 through the date class certification is granted, Intellicorp furnished for employment purposes both a Criminal SuperSearch report and a report based on a Single County Criminal or other records-based search; whose Criminal SuperSearch report included results for criminal history; and whose Criminal SuperSearch was inaccurate for one or more of the following reasons:
>
> (1) The Criminal SuperSearch report showed "results," but a subsequent Single County Criminal or other court record search showed "no results."
>
> (2) The Criminal SuperSearch reported one or more criminal charges without a disposition, but a subsequent Single County Criminal or other court record showed a disposition other than "conviction" or "guilty."
>
> (3) The Criminal SuperSearch reported a higher level of offense (felony or misdemeanor) for one or more criminal charges, but a subsequent Single County Criminal or other court record search showed a lower level of offense (misdemeanor or infraction).

[ECF No. 79-1, p. 3.]

Plaintiff's two previous proposed classes involved all persons who had a report that contained negative criminal information either through any report (Plaintiff's first proposed class) or through an "instant" search (Plaintiff's second proposed class). Although neither of these first two proposed classes could have met the requirements for class certification, they did not require the complex comparing of data fields necessary to discern Plaintiff's third proposed class, which again Plaintiff first identified in her motion for class certification. Intellicorp therefore had no reason to know before Plaintiff's motion for class certification that an analysis of the infeasibility of comparing fields in its database would be required. Indeed, Intellicorp sought discovery relating to

Plaintiff's intention to submit expert evidence in connection with her motion for class certification and was rebuffed.  (*See* Plaintiff's Response to Intellicorp's Second Request for Production of Documents, attached as Ex. B to the Declaration of Michael J. Zbiegien, Jr., at 3).  Only when Intellicorp received Plaintiff's brief and learned of Plaintiff's revised class definition did it become apparent that Garrett would be the person best positioned to explain the facts necessary to Intellicorp's response.  Plaintiff's objection should be overruled.

Furthermore, this Court has held that any purported "delay" in disclosing an expert is harmless when there is still sufficient time remaining before trial to investigate any issues raised in the expert's report.  *Younglove Construction, LLC v. PSD Development, LLC*, No. 3:08CV1447, 2010 WL 3515600, *3 (N.D. Ohio Sept. 3, 2010).  Here, Plaintiff received Garrett's declaration on March 11, 2013, more than four months before the trial date.  In addition, the deadline for the parties to submit initial expert reports is still more than two weeks away on April 16, 2013,[4] and Plaintiff has not yet provided Intellicorp with Valk's expert report.  Thus, as in *Younglove*, any delay in identifying Garrett as an expert is harmless because Plaintiff has sufficient time remaining before trial to investigate any issues raised in Garrett's declaration.

---

[4] Under Federal Civil Rule 26, the deadline to submit initial expert reports is 90 days before the July 15, 2013 trial date.

- 11 -

## CONCLUSION

For the foregoing reasons, this Court should overrule Plaintiff's Objections to Evidence in Defendant's Opposition to Motion for Class Certification (ECF No. 88) and should consider the entirety of the Declaration of David Garrett.

Date: April 1, 2013                          Respectfully submitted,

                                                  /s/ *David H. Wallace*
                                       David H. Wallace (0037210)
                                       dwallace@taftlaw.com
                                       Gregory J. O'Brien (0063441)
                                       gobrien@taftlaw.com
                                       Taft Stettinius & Hollister LLP
                                       200 Public Square, Suite 3500
                                       Cleveland, OH 44114-2302
                                       Telephone: 216.241.2838
                                       Fax: 216.241.3707

                                       Joel M. Cohen (pro hac vice)
                                       joel.cohen@davispolk.com
                                       Gina Caruso (pro hac vice)
                                       gina.caruso@davispolk.com
                                       Davis Polk & Wardwell LLP
                                       450 Lexington Avenue
                                       New York, NY 10017
                                       Telephone: 212.450.4000
                                       Facsimile: 212. 701.5800

                                       Attorneys for Defendant
                                       Intellicorp Records, Inc.

## CERTIFICATE OF SERVICE

  I hereby certify that on April 1, 2013, a true and correct copy of the foregoing document was filed electronically. Notification of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                Respectfully submitted,

                /s/ *David H. Wallace*
                One of the Attorneys for Defendant

72461487