**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JANE ROE, individually and on behalf of all others similarly situated,** | CASE NO. 1:12-cv-02288 |
| Plaintiff, | |
| **vs.** | UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| **INTELLICORP RECORDS, INC.** | |
| Defendant. | |
| AND | |
| **MICHAEL R. THOMAS and MARK A. JOHNSON, individually and on behalf of all others similarly situated** | CASE NO. 1:12-cv-02443 |
| Plaintiffs, | |
| **vs.** | UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| **INTELLICORP RECORDS, INC.** | |
| Defendant. | |
| AND | |
| **MARK A. JOHNSON, individually and on behalf of all others similarly situated,** | CASE NO. 1:13-cv-00616 |
| Plaintiff, | |
| **vs.** | UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| **INSURANCE INFORMATION EXCHANGE, LLC,** | |
| Defendant. | |

**STIPULATION OF SETTLEMENT**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("**Settlement Agreement**" or "**Agreement**") is made and entered into by and between (1) plaintiffs Jane Roe, Mark A. Johnson, and Michael R. Thomas ("**Plaintiffs**"), on behalf of themselves individually and as representatives of the Settlement Class (defined below); (2) Intellicorp Records, Inc. ("**Intellicorp**"); and (3) Insurance Information Exchange (a division of ISO Claims Services, Inc.) ("**IIX**"). Intellicorp and IIX are collectively referred to as the "**Defendants**." Plaintiffs and Defendants are collectively referred to as the "**Parties**." This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all released rights and claims to the extent set forth below, subject to the terms and conditions set forth herein.

## RECITALS

WHEREAS, Intellicorp and IIX provide employment background screening reports throughout the United States, including the State of Ohio, and are Consumer Reporting Agencies as that term is defined in the Fair Credit Reporting Act (defined below); and

WHEREAS, on April 16, 2012, Plaintiff Jane Roe commenced the lawsuit styled *Roe v. Intellicorp Records, Inc.*, individually and on behalf of a class of similarly situated individuals, in the Superior Court of the State of California, County of Alameda, Case No. RG12625923, alleging that Intellicorp's procedures were not in compliance with 15 U.S.C. § 1681e(b), which requires reasonable procedures to ensure accuracy of consumer reports, and 15 U.S.C. § 1681k, which prescribes the notice procedure under the FCRA; and

WHEREAS, on September 28, 2012, Plaintiff Michael R. Thomas commenced the lawsuit styled *Thomas v. Intellicorp Records, Inc.*, individually and on behalf of a class of similarly situated individuals, in the United States District Court for the Northern District of

Ohio, Case No. 1:12-cv-02443-DAP, alleging that Intellicorp failed to comply with the notification procedures required by 15 U.S.C. § 1681k, as well as 15 U.S.C. § 1681e(b); and

WHEREAS, on December 5, 2012, Plaintiff Mark A. Johnson commenced the lawsuit styled *Johnson v. Insurance Information Exchange, LLC*, individually and on behalf of a class of similarly situated individuals, in the United States District Court for the Southern District of Ohio, Case No. 2:12-CV-1118, alleging that IIX failed to comply with the notification procedures required by 15 U.S.C. § 1681k; and

WHEREAS, on May 18, 2012, *Roe v. Intellicorp Records, Inc.* was removed to the United States District Court for the Northern District of California, and assigned Case No. 3:12-cv-02567-NC; and

WHEREAS, on July 2, 2012, Defendant Intellicorp moved to dismiss *Roe v. Intellicorp Records, Inc.*, and separately moved to transfer that action to the United States District Court for the Northern District of Ohio; and

WHEREAS, on August 27, 2012, *Roe v. Intellicorp Records, Inc.* was transferred to the United States District Court for the Northern District of Ohio, and on which date Intellicorp's pending motion to dismiss was denied as moot; and

WHEREAS, on October 24, 2012, Plaintiff Jane Roe filed a "First Amended Class Action Complaint" in the United States District Court for the Northern District of Ohio, Case No. 1:12-CV-02288-JG; and

WHEREAS, on January 7, 2013, Plaintiffs Michael R. Thomas and Mark A. Johnson filed a "First Amended Class Action Complaint" in Case No. 1:12-02243-DAP; and

WHEREAS, on March 4, 2013, Plaintiff Mark A. Johnson and Defendant IIX filed a stipulated motion to transfer *Johnson v. Insurance Information Exchange, LLC* from the United

2

States District Court for the Southern District of Ohio to the United States District Court for the

Northern District of Ohio, which action was subsequently transferred to the United States

District Court for the Northern District of Ohio and assigned Case No. 1:13-CV-00616-JG; and

WHEREAS, on November 13, 2012, and January 18, 2013, Defendant Intellicorp

answered the complaints in the *Roe* and *Thomas* cases, respectively, denying the allegations

therein and asserting affirmative defenses that Intellicorp contends are meritorious

notwithstanding its willingness to enter into this Settlement Agreement; and

WHEREAS, on February 18, 2013, Defendant IIX answered the complaint in the

*Johnson* action, denying the allegations therein and asserting affirmative defenses that IIX

contends are meritorious notwithstanding its willingness to enter into this Settlement Agreement;

and

WHEREAS, on February 18, 2013, Plaintiff Jane Roe filed a Motion for Class

Certification in the *Roe* action, which Defendant Intellicorp opposed on March 11, 2013, and to

which opposition Plaintiff Jane Roe filed a reply in further support of her Motion for Class

Certification on March 19, 2013; and

WHEREAS, a hearing on Plaintiff Jane Roe's Motion for Class Certification was held

before the Court on June 27, 2013; and

WHEREAS, on September 9, 2013, the parties informed the Court they had entered into

a Memorandum of Understanding to settle these matters and, on that basis, the Court on

September 19, 2013 issued an Order finding Plaintiff Jane Roe's Motion for Class Certification

moot; and

WHEREAS, Plaintiffs have undertaken substantial investigation and discovery in the

Litigation (defined below), including review of tens of thousands of pages of documents

produced by Defendants, retention of and consultation with a number of experts in the fields of consumer employment reporting, interviews with numerous consumers, review of large numbers of consumer employment reports, creation and review of analyses of documents produced by Defendants, and taking the deposition of four senior representatives of Defendant Intellicorp pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; and

WHEREAS on April 30, May 1, and May 21, 2013, the Parties engaged in mediation before Niki Z. Schwartz, Esq.; and

WHEREAS, since April 30, 2013, the Parties have conducted arm's-length, contentious, lengthy, and complicated negotiations (with the participation of Defendants' insurance carriers) that have included at least three in-person mediation sessions with Mr. Schwartz and several additional sessions involving counsel for the Parties; and

WHEREAS, the Parties are willing to enter into this Settlement Agreement to settle the claims of the Settlement Class because of, among other reasons, the attendant expense, risks, difficulties, delays, and uncertainties of continued litigation; and

WHEREAS, Plaintiffs and Settlement Class Counsel have concluded, based on their investigation, that this Settlement Agreement provides fair, reasonable, and adequate relief to the Settlement Class, and is in the best interest of the Settlement Class, after having considered (a) the benefits that the Settlement Class will receive from the settlement of the Litigation, (b) the attendant risks of continuing the Litigation, and (c) the desirability of permitting the Settlement to be consummated on the terms set forth below, subject to approval of the Court; and

WHEREAS, Defendants deny all claims asserted against them in the Litigation, deny that class certification would be appropriate if the cases were litigated rather than settled, deny all allegations of wrongdoing and liability, and deny that anyone was harmed by the conduct

alleged, but nevertheless desire to settle the Released Claims on the terms and conditions set forth in this Settlement Agreement solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing the proceedings in the Litigation, without in any way acknowledging any wrongdoing, fault, liability, or damages to Plaintiffs or the Settlement Class;

NOW THEREFORE, IT IS AGREED, by and among the Parties, that all Released Claims shall be fully, finally, and forever compromised, settled, and released as to all the Released Persons and the Litigation shall be dismissed with prejudice on the merits, on the terms set forth below, subject to the approval of the Court.

The recitals stated above are true and accurate and are hereby made a part of the Settlement Agreement.

## I.       DEFINITIONS

As used in this Settlement Agreement, the terms defined below shall have the meanings assigned to them when capitalized in the same fashion as in this Section I.

1.1.  "**Attorneys' Fees**" means the attorneys' fees and expenses applied for by Settlement Class Counsel under this Settlement Agreement and approved by the Court.

1.2.  "**Automatic Payment Fund Class Member**" means any member of the Settlement Class who was the subject of a Criminal SuperSearch that contained a record of criminal or traffic arrest or conviction or other criminal history and who was not mailed a copy of a notice pursuant to 15 U.S.C. § 1681k(a)(1).

1.3.  "**Automatic Payment Fund**" means a portion of the Gross Settlement Amount, sufficient to pay $50 to each Automatic Payment Fund Class Member.

1.4.  "**Automatic Payment Fund Long Form Notice**" means the notice posted on the Settlement Website maintained by the Settlement Administrator (in form substantially similar to

that attached hereto as Exhibit A1 and approved by the Court) that will be available to Automatic Payment Fund Class Members.

1.5. "**Automatic Payment Fund Mail Notice**" means the notice (in form substantially similar to that attached hereto as Exhibit B1 and approved by the Court) that will be mailed to Automatic Payment Fund Class Members pursuant to the Notice Plan.

1.6. "**Court**" means the United States District Court for the Northern District of Ohio.

1.7. "**Criminal SuperSearch**" means the criminal record search product Intellicorp advertises as Criminal SuperSearch and which Intellicorp describes as a search that "produces a multi-state report of criminal records, which includes the District of Columbia."

1.8. "**Current Report**" means a report containing the information required by 15 U.S.C. § 1681g(a) relating to a Settlement Class Member as of the time the report is generated, and identifying each employer who received a consumer report since April 16, 2010 containing an adverse public record and the date on which such report was furnished.

1.9. "**Defendants**" means Intellicorp and IIX.

1.10. "**Defendants' Counsel**" means Davis Polk & Wardwell LLP and Taft Settinius & Hollister LLP.

1.11. "**Effective Date**" is the date on which the Final Approval Order and this Court's order regarding Attorneys' Fees have all become final because (a) no appeal of either the Final Approval Order or the Court's order regarding Attorneys' Fees has been filed and the time provided in the applicable rules of procedure within which an appeal may be filed has lapsed, or (b) if one or more timely appeals have been filed, all such appeals are finally resolved, with no possibility of further appellate review, resulting in final judicial approval of this Settlement.  For purposes of this definition, the term "appeal" includes proceedings for a writ of certiorari.

1.12. "**Electronic Mail Notice**" means an electronic version of the notices that will be sent by electronic mail to Settlement Class Members pursuant to the Notice Plan.

1.13. "**FCRA**" means the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and any subsequent amendments thereto.

1.14. "**FCRA State Equivalent**" means any statute or regulation of any state, U.S. territory, the District of Columbia, or Puerto Rico that has the purpose or effect of regulating the collection or reporting of consumer information and related actions.

1.15. "**Financial Institution**" means a federally-insured financial institution selected by Settlement Class Counsel, subject to Court approval.

1.16. "**Final Approval**" means the approval of the Settlement Agreement by the Court at or after the Final Approval Hearing, and entry on the Court's docket of the Final Approval Order.

1.17. "**Final Approval Hearing**" or "**Final Fairness Hearing**" means the hearing at which the Court will consider and finally decide whether to approve this Settlement, enter final judgment, and make such other rulings as are contemplated by this Settlement Agreement. The Final Approval Hearing shall not be scheduled for a date less than 90 days following the mailing of the CAFA Notice as set forth in Section 4.4.

1.18. "**Final Approval Order**" means an order and judgment substantially in the form attached hereto as Exhibit G, entered by the Court, giving Final Approval of the Settlement, dismissing the Litigation with prejudice, and entering a judgment in accordance with the terms set forth in this Settlement Agreement.

1.19. "**Gross Settlement Amount**" means the amount of $18,600,000.00, which Defendants shall cause to be paid in consideration for the releases granted herein.

1.20.  "**Historical Report**" means a report reflecting the criminal history information that was included in the actual report or reports provided to a Settlement Class Member's employer or employers, or potential employer or employers, during the Class Period.

1.21.  "**Inaccuracy Fund Claimant**" means a member of the Settlement Class who files a claim against the Inaccuracy Fund in accordance with Section 8.1.

1.22.  "**Inaccuracy Fund**" means that portion of the Settlement Fund, described in Section VIII, from which claims of Inaccuracy Fund Claimants will be paid.

1.23.  "**Inaccuracy Fund Claim Form**" means the form, described in Section 8.1.3, attached to the Mail Notice and available electronically, which Settlement Class Members may use to file a claim against the Inaccuracy Fund.

1.24.  "**Inaccuracy Fund Exclusion Form**" means the form, described in Section 8.3.2, attached to the Mail Notice and available electronically, which Settlement Class Members may use to preserve a Reserved Actual Damages Claim in lieu of filing a claim against the Inaccuracy Fund.

1.25.  "**Inaccuracy Fund Long Form Notice**" means the notice (in form substantially similar to that attached hereto as Exhibit A2 and approved by the Court) posted on the Settlement Website maintained by the Settlement Administrator that will be available to Settlement Class Members who are not Automatic Payment Fund Class Members, pursuant to the Notice Plan.

1.26.  "**Inaccuracy Fund Mail Notice**" means the notice (in form substantially similar to that attached hereto as Exhibit B2 and approved by the Court) that will be mailed to Settlement Class Members who are not Automatic Payment Fund Class Members, pursuant to the Notice Plan.

1.27.  "**IIX**" means Insurance Information Exchange, a division of ISO Claims Services, Inc.

1.28.  "**Initial Report Availability Period**" means the period beginning on the Notice Date and ending on the Reservation Date.

8

1.29.  "**Intellicorp**" means Intellicorp Records, Inc.

1.30.  "**Litigation**" means *Roe v. Intellicorp Records, Inc.*, Case No.: 1:12-CV-02288-JG (N.D. Ohio); and *Thomas, et al. v. Intellicorp Records, Inc. et al*, Case No. 1:12-CV-02443-JG (N.D. Ohio), and *Johnson v. Insurance Information Exchange, LLC*, Case No 1:13-CV-00616-JG (N.D. Ohio).

1.31.  "**Notice Date**" means the date on which the Settlement Administrator first mails the Mail Notice, as provided by Section 4.2.2, which date will be no later than sixty (60) days following Preliminary Approval.

1.32.  "**Notice Plan**" means the plan for disseminating notice to Settlement Class Members, as described in Sections 4.1 and 4.2.

1.33.  "**Opt-Out Deadline**" means the date 60 days after the Notice Date.

1.34.  "**Parties**" means Plaintiffs, Intellicorp, and IIX.

1.35.  "**Preliminary Approval**" means the preliminary approval of the Settlement Agreement by the Court, conditional certification of the Settlement Class, and approval of the method and content of notice to the Settlement Class.

1.36.  "**Released Claims**" means those Claims released as set forth in Section XIV below.

1.37.  "**Released Parties**" means and refers to: (a) Intellicorp and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates, subsidiaries, parents, representatives, trustees, principals, insurers, and assigns, individually, jointly and severally; and (b) IIX and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates, subsidiaries, parents, representatives,

trustees, principals, insurers, and assigns, individually, jointly and severally. For the avoidance of doubt, "Released Parties" does not include any consumer reporting agency that is not affiliated by common ownership with Defendants, or any user of a consumer report furnished by Defendants that is not affiliated by common ownership with Defendants.

1.38. "**Reservation Date**" means the date 100 days after the Notice Date.

1.39. "**Reserved Actual Damages Claim**" means the individual claim for actual damages under 15 U.S.C. § 1681e or § 1681i reserved by a Settlement Class Member in accordance with Section 8.3, which claim shall not include any claim for statutory, punitive, consequential, or any other type or category of damages aside from actual damages, and which claim may be pursued solely on an individual basis, and not on a mass, class, joint, or any other basis.

1.40. "**Settlement**" means the agreement between Plaintiffs, on behalf of themselves and as proposed representatives of the Settlement Class, and Defendants to settle and compromise Plaintiffs' and the Settlement Class Members' claims in the Litigation fully, finally, and forever, on the terms set forth in this Settlement Agreement.

1.41. "**Settlement Administrator**" shall mean the administrator for the Settlement Agreement that Settlement Class Counsel will identify and propose as described in Section 3.2.

1.42. "**Settlement Agreement**" means this Settlement Agreement and Release.

1.43. "**Settlement Class**" means all natural persons residing in the United States who were the subject of one or more consumer reports furnished to a third party by Intellicorp or IIX, for employment purposes, which report(s) contained an Intellicorp Criminal SuperSearch result reflecting a record of criminal or traffic arrest or conviction or other criminal history, during the period April 16, 2010 through September 16, 2013, provided, however, that "Settlement Class" and "Settlement Class Member" shall exclude: (i) all persons who timely and validly request

exclusion from the Settlement Class; (ii) all persons who would otherwise qualify for membership in the "Settlement Class" but for the fact that such person previously has released all claims as to the Defendants; (iii) Defendants' officers, directors, and employees; (iv) Defendants' attorneys; (v) Plaintiffs' attorneys; (vi) any judge who has presided over either mediation or disposition of this case and the members of his or her immediate family; and (vii) Niki Z. Schwartz.

1.44.   "**Settlement Class Counsel**" means Leonard Bennett and Matthew Erausquin of Consumer Litigation Associates, P.C.; Ian B. Lyngklip of Lyngklip & Associates Consumer Law Center, PLC; Jonathan E. Gertler, Nance F. Becker, F. Paul Bland and Christian Schreiber of Chavez & Gertler LLP; Devin H. Fok of The Law Offices of Devin H. Fok; Joshua E. Kim of A New Way of Life Reentry Project; and Jason R. Bristol of Cohen, Rosenthal & Kramer; and Matthew A. Dooley and Anthony R. Pecora of Stumphauser | O'Toole.

1.45.   "**Settlement Class Member**" means a person who is a member of the Settlement Class.

1.46.   "**Settlement Fund**" means the Gross Settlement Amount plus any income earned thereon held in a qualified settlement fund or similar account at the Financial Institution.

1.47.   "**Settlement Website**" means the internet website established and maintained by the Settlement Administrator for purposes of facilitating notice to, and communicating with, the Settlement Class and for receipt of online claims.

1.48.   "**Taxes**" means the taxes, interest, or penalties described in Section 13.2.2.

1.49.   "**Tax Expenses**" means the expenses described in Section 13.2.3.

## II.   NO ADMISSION OF LIABILITY OR ELEMENTS OF CLASS CERTIFICATION

### 2.1.  Defendants' Denial of Wrongdoing or Liability

Defendants have asserted and continue to assert many defenses in the Litigation and have expressly denied and continue to deny any fault, wrongdoing or liability whatsoever arising out

11

of the conduct alleged in the Litigation, as well as the validity of each of the claims and prayers for relief asserted in the Litigation. The Parties expressly acknowledge and agree that neither the fact of, nor any provision contained in, this Settlement Agreement (whether or not it becomes final), nor any of the implementing documents or actions taken under them, shall constitute or be construed as any admission for or against either Defendants or Plaintiffs of the validity of any position, any claim, any status, or any fact alleged in the Litigation or any fault, wrongdoing, violation of law, or liability of any kind on the part of Defendants, or any admission by any Party of any claim or allegation made in any action or proceeding against such Party. Defendants have denied and continue to deny each and every claim and allegation in the Litigation. Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, nor Defendants' willingness to enter into this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against any or all Defendants of any fault, wrongdoing or liability whatsoever, or any infirmity of any defenses asserted by any or all Defendants.

2.2. **No Admission by Defendants of Elements of Class Certification**

Defendants deny that a class should be certified other than for purposes of this Settlement and reserve their rights to contest any class certification motion. Defendants contend that this Litigation could not be certified as a class action for trial purposes under Federal Rule of Civil Procedure 23. Nothing in this Settlement Agreement shall be construed as an admission by any Defendant that this Litigation or any similar case is amenable to class certification for trial purposes. Furthermore, nothing in this Settlement Agreement shall prevent any Defendant from opposing class certification or seeking de-certification of the conditionally certified Settlement

Class if Final Approval of this Settlement is not obtained, or not upheld on appeal, including review by the United States Supreme Court.

## III.  MOTION FOR PRELIMINARY APPROVAL

3.1.  On or before November 12, 2013, the Parties shall file a joint motion for Preliminary Approval that seeks entry of an order that would, for settlement purposes only: (a) consolidate the Litigation under the caption *Roe, et al., v. Intellicorp Records, Inc.* (Case No.: 1:12-CV-02288-JG);  (b) certify a conditional settlement class under Federal Rule of Civil Procedure 23 composed of the Settlement Class Members; (c) preliminarily approve the proposed Settlement Agreement; (d) approve the proposed notices to the Settlement Class in a form substantially similar to those attached hereto as Exhibits A1, A2, B1, and B2; (e) certify the Plaintiffs as representatives of the Settlement Class; (f) appoint Settlement Class Counsel; and (g) appoint the Settlement Administrator.  The joint motion for Preliminary Approval shall include (i) a proposed form of preliminary approval order; (ii) a proposed form of Mail Notice; (iii) a proposed form of Inaccuracy Fund Claim Form; and (iv) a proposed form of Inaccuracy Fund Exclusion Form, the form of each of which shall have been agreed to among the Parties.

3.2.  Settlement Class Counsel will cause to be hired McGladrey LLP as the Settlement Administrator, subject to approval by the Court.

## IV.  NOTICE PLAN

### 4.1.  **Preparation and Production of List of Identified Settlement Class Members**

4.1.1.  Defendants agree to use their best reasonable efforts, based on information in Defendants' internal records, to provide the Settlement Administrator, within ten (10) business days after Preliminary Approval, a Settlement Class list in the form and with the identifiers required by the Settlement Administrator.  The class list shall include any electronic mail address of any Settlement Class Member known to Defendants through their ordinary business processes.

13

Intellicorp agrees to use its Nationwide People Search product or other appropriate Intellicorp database product to update the mailing addresses for Settlement Class Members for use in the class list,  and agrees that the mailing addresses will be electronically checked and updated against the USPS National Change of Address database, to the extent such information exists and can be systematically retrieved from such databases.  Defendants do not agree to perform any other searches to locate Settlement Class Member information.

4.1.2.  Defendants agree to use their best reasonable efforts, based on information in Defendants' internal records, to provide the Settlement Administrator, within ten (10) business days after Preliminary Approval, a list of the Settlement Class Members who are Automatic Payment Fund Class Members.

4.1.3.  The class lists shall be used solely for the purpose of effectuating the Settlement.  The Settlement Administrator (and any person retained by the Settlement Administrator) shall sign a confidentiality agreement in a form agreed to by Defendants' Counsel and Settlement Class Counsel.  The confidentiality agreement will provide that Defendants' Counsel, Settlement Class Counsel, and the Settlement Administrator (and any person retained by the Settlement Administrator) shall treat as confidential the names, addresses and all other identifying information concerning Settlement Class Members provided as or with the class lists.  The confidentiality agreement will further provide that that Defendants' Counsel, Settlement Class Counsel, and the Settlement Administrator (and any person retained by Defendants' Counsel, Settlement Class Counsel, and or Settlement Administrator) shall use the class lists or any other information provided by or on behalf of the Defendants only for purposes of fulfilling the duties and responsibilities provided for under this Settlement Agreement, and shall not disclose the class lists, in whole or in part, to any other person without prior written approval by Defendants.

4.2.  **Notice Process**

4.2.1.  For purposes of providing court-approved class notice and establishing that the best practicable notice has been given, the provision of class notice will be accomplished in accordance with the following provisions.

4.2.2.  **Mail Notice for Settlement Class Members**

No later than sixty (60) days following Preliminary Approval, the Settlement Administrator shall cause (a) the Automatic Payment Fund Mail Notice, in a form substantially similar to that attached hereto as Exhibit A1, to be sent via first class U.S. mail, postage prepaid, requesting either forwarding service or change service to each Automatic Payment Fund Class Member; and (b) the Inaccuracy Fund Mail Notice, in a form substantially similar to that attached hereto as Exhibit A2, to be sent via first class U.S. mail, postage prepaid, requesting either forwarding service or change service to each Settlement Class Member who is not an Automatic Payment Fund Class Member.  For up to forty-five days (45) days following the mailing of these notices, the Settlement Administrator will re-mail the notices via standard U.S. mail, postage prepaid, to updated addresses of Settlement Class Members to the extent that the Settlement Administrator receives address change notifications from the U.S. Postal Service. Not later than twenty (20) days before the Final Fairness Hearing, the Settlement Administrator shall cause proof of the mailing of the Automatic Payment Fund Mail Notices and the Inaccuracy Fund Mail Notices to be filed with the Court.  Neither the Parties nor the Settlement Administrator shall have any further obligation to send notice of the Settlement to the Settlement Class Members.  Both the Automatic Payment Fund Mail Notice and the Inaccuracy Fund Mail Notice shall include a postage pre-paid, pre-addressed (to the Settlement Administrator) Inaccuracy Fund Claim Form, and shall bear a stamped claim number unique for each recipient,

which shall state that each Settlement Class Member must return the Inaccuracy Fund Claim Form to be eligible to participate in the Inaccuracy Fund. The Automatic Payment Fund Mail Notice and the Inaccuracy Fund Mail Notice shall also include a separate Inaccuracy Fund Exclusion Form, which a Settlement Class Member may use to elect to preserve his or her Reserved Actual Damages Claim in lieu of participating in the Inaccuracy Fund. The Court may continue hearings from time to time without further notice to the individual class members, but Class Counsel must post any such continuances to the web site for the settlement of the case.

### 4.2.3. **Electronic Mail Notice for Settlement Class Members**

Notwithstanding the provisions of the preceding paragraph, the Settlement Administrator will substitute electronic mail notice for U.S. Postal Service notice for all class members for whom it obtains an electronic mail address pursuant to Section 4.1 that it determines to be sufficiently reliable. Within ten (10) days following the rejection of any Electronic Mail Notice for a Settlement Class Member, the Settlement Administrator will mail the appropriate Automatic Payment Fund Mail Notice or Inaccuracy Fund Mail Notice via standard U.S. mail, postage prepaid, to updated address of the Settlement Class Member.

### 4.2.4. **Internet Notice**

The Settlement Administrator shall establish an internet website containing information about the Settlement. The Settlement Website will be accessible no later than five (5) days prior to the earlier of the mailing of the Automatic Payment Fund Mail Notice and the Inaccuracy Fund Mail Notice or the mailing of the Electronic Mail Notice described above. The Settlement Website will set forth the following information: (a) the full text of the Settlement Agreement; (b) the Automatic Payment Fund Mail Notice and the Inaccuracy Fund Mail Notice; (c) the Automatic Payment Fund Long Form Notice and the Inaccuracy Fund Long Form Notice; (d) the

16

Inaccuracy Fund Claim Form and the Inaccuracy Fund Exclusion Form; (e) the Preliminary

Approval Order and other relevant orders of the Court; and (f) contact information for Settlement

Class Counsel and the Settlement Administrator.  Any language or documents appearing on the

website in addition to the above-listed documents shall be subject to approval of the Parties.  The

Settlement Website shall also receive online Inaccuracy Fund claims in accordance with Section

8.1.  Not later than twenty (20) days before the Final Fairness Hearing, the Settlement

Administrator shall cause proof of the establishment and maintenance of the Settlement Website

to be filed with the Court.  The Settlement Website shall be deactivated two hundred (200) days

following the Effective Date.

### 4.2.5.  **Telephone Assistance Program**

The Settlement Administrator will establish a toll-free telephone number, which will be

staffed by the Settlement Administrator, to answer questions from Settlement Class Members.

The toll-free number will provide access to live support, a voice response unit or a combination

of live support and voice response unit.  It shall also offer a Spanish language alternative number

and voice response unit.  Not later than twenty (20) days before the Final Fairness Hearing, the

Settlement Administrator will cause proof of the establishment and maintenance of the

Telephone Assistance Program to be filed with the Court.

### 4.2.6.  **Settlement Class Counsel Assistance.**

As necessary, the Settlement Administrator shall coordinate with Settlement Class

Counsel for Settlement Class Counsel to provide telephonic support, advice, and assistance in

connection with the expedited dispute process provided herein.

4.3.  **Expenses of Notice and Administration**

4.3.1.  All notice, claims and other administration costs, excluding the costs associated with Intellicorp's creation of the class lists pursuant to Section 4.1 and the CAFA Notice as described in Section 4.4, shall be invoiced by the Settlement Administrator and paid promptly from the Settlement Fund.

4.3.2.  Within 10 days after the Effective Date, the Settlement Administrator will provide to Settlement Class Counsel a detailed statement of the costs that will be incurred.  Subject to approval of Settlement Class Counsel, the Settlement Administrator shall retain this amount from the Settlement Fund to pay for such costs.  Any disputes relating to this Subsection 4.3.2 shall be brought to Magistrate Judge White, or any other Magistrate Judge assigned to the Litigation, for resolution.

4.3.3.   The total expenses associated with notice, claims, and other administration costs, excluding the costs associated with Defendants' creation of the class lists pursuant to Sections 4.1 and the CAFA Notice as described in Section 4.4, shall not under any circumstances increase the Gross Settlement Amount paid by Defendants as part of the Settlement.  All payments shall be made from the Settlement Fund.

4.3.4.   Settlement Class Counsel estimates that the full cost of notice and administration will not exceed $1,500,000.00.

4.3.5.   Costs of notice and administration shall be paid from the Settlement Fund before the calculation of net settlement payments to Automatic Payment Fund Class Members or to Inaccuracy Fund Claimants.

4.4.  **Notice Under Class Action Fairness Act of 2005 ("CAFA Notice")**

Defendants will send the CAFA Notice in accordance with 28 U.S.C. § 1715(a), not later than ten (10) days after this Settlement Agreement is filed with the Court.

## V.       PROCEDURES FOR OPT-OUTS AND OBJECTIONS

5.1.  **Opt-Out Procedures for Settlement Class Members**

5.1.1.  The Mail Notice shall contain information about how a Settlement Class Member may opt out of the Settlement, as well as the potential implications of doing so, including that opting out may preclude later participation in any class action against Defendants predicated upon the claims resolved in this Settlement.

5.1.2.  A Settlement Class Member may request to be excluded from the Settlement Class by sending a written request for exclusion to "Exclusion Requests – *Roe/Thomas/Johnson* Settlement Administrator."  The proposed Settlement Class Member's opt-out request must contain the class member's original signature, current postal address and telephone number, the last four digits of the class member's Social Security number or Alien Registration number, and a specific statement that the proposed Settlement Class Member wants to be excluded from the Settlement Class.  A sample Opt-out form shall be maintained on the Settlement Website.  Opt-out requests must be postmarked by the Opt-Out Deadline.  In no event shall persons who purport to opt out of the Settlement Class as a group, aggregate, or class consisting of more than one consumer be considered to have validly opted out of the Settlement.  Requests for exclusion that do not comply with any of the foregoing requirements are invalid.

5.2.  **List of Opt-Outs**

      No later than five (5) business days after the Opt-Out Deadline, the Settlement Administrator shall provide to Settlement Class Counsel and Defendants' Counsel a complete list

of all persons who have properly opted out of the Settlement, together with copies of the opt-out requests.

### 5.3.  **Representation of Opt-Outs**

5.3.1.   Settlement Class Counsel agree that the terms of this Settlement Agreement are fair, reasonable, and adequate, and in the best interest of the Settlement Class Members.  Based upon unique circumstances here, Settlement Class Counsel agree that class members who seek to opt out should be represented by counsel who do not agree that the Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class Members. Accordingly, Settlement Class Counsel shall, if contacted, refer any such opt-outs to the applicable state bar association or other referral organization for appropriate counsel in any subsequent litigation against Defendants.  Subject to Subsection 5.3.2 below, this provision shall in no way limit or hinder Settlement Class Counsel from offering legal advice to any Settlement Class Member who does not opt out.

5.3.2.   Settlement Class Counsel represent they do not currently represent any Settlement Class Members other than Plaintiffs, and represent that they have not counseled or solicited (directly or through others), and agree that they will not solicit (directly or through others), any other Settlement Class Member to forgo participation in the Inaccuracy Fund, reserve his or her Reserved Actual Damages Claim under Section 8.3 hereof, file individual claims against Defendants, or opt out of the Settlement.

### 5.4.  **Objections from Settlement Class Members**

Any Settlement Class Member who does not opt out, but who instead wishes to object to the Settlement or any other matters as described in the Mail Notice, may do so by filing with the Court a notice of his or her intention to object (which shall set forth each objection and the basis

therefore and contain the objecting Settlement Class Member's signed verification of membership in the Settlement Class), with any papers in support of his or her position, and serve copies of all such papers upon Settlement Class Counsel and Defendants' Counsel. Objections must be filed and served no later than the Opt Out Deadline. Objections to Settlement Class Counsel's attorneys' fees may be supplemented up to seven (7) days after the filing of a motion for such fees to address additional information or materials in the motion. The written objection must indicate whether the class member and/or his or her lawyer(s) intend to appear at the Final Fairness Hearing. Any lawyer who intends to appear at the Final Fairness Hearing must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the date set by the Court in its order preliminarily approving this Settlement Agreement and shall include the full caption and case number of each previous class action case in which that counsel has represented an objector. The Court will consider all timely objections received by the date set forth in the Schedule of Settlement, but any person who fails to attend the final fairness hearing waives those objections.

## VI.    INITIAL REPORT AVAILABILITY PERIOD

6.1.  During the Initial Report Availability Period, a Settlement Class Member may submit a request that the Defendants provide a Historical Report, either by mail to an address to be set forth in the Long Form Notice or by using the Settlement Website. The Settlement Administrator shall promptly transmit to Defendants a copy of any written requests to one or more individuals designated by Defendants. The Settlement Website shall provide a link to a website maintained by Intellicorp, which Settlement Class Members may use to request or access their Historical Reports. If a Settlement Class Member so requests, the Defendants will make a good faith effort to make a Historical Report for that Settlement Class Member available within 10 days, but in no event later than 45 days, after the request. Defendants shall generate

Historical Reports from the data that was used at the time the reports were initially generated and then inserted into Intellicorp's database or databases as XML text.  Historical Reports shall be provided substantially in the form of the report attached hereto as Exhibit E.  Historical Reports may not be requested, and will not be available online, after the end of the Initial Report Availability Period (i.e., after the Reservation Date).  The Settlement Website shall be maintained by the Settlement Administrator.  If a Settlement Class Member has previously disputed the contents of a report, and such dispute resulted in a revision to Defendants' report with respect to that Settlement Class Member, Defendants may furnish a copy of such revised report or reports and a cover letter explaining why a revised report is being provided to accompany the Historical Report for that Settlement Class Member.

## VII.    AUTOMATIC PAYMENT FUND

7.1.  Of the Gross Settlement Amount, an amount sufficient to pay $50 to each Automatic Payment Fund Class Member shall be set aside as the Automatic Payment Fund.  Settlement Class Members who are Automatic Payment Fund Class Members shall be eligible to participate in the Automatic Payment Fund.  A Settlement Class Member is not required to take any action to become an Automatic Payment Fund Class Member.

7.2.  The Automatic Payment Fund will be allocated among the members of the Settlement Class who are Automatic Payment Fund Class Members.

7.3.  Automatic Payment Fund settlement checks shall state: "This payment is tendered to you as a class member in *Roe v. Intellicorp Records, Inc.* (Case No.: 1:12-CV-02288-JG); *Johnson v. Insurance Information Exchange, LLC* (Case No 1:13-CV-00616-JG); and/or *Thomas, et al. v. Intellicorp Records, Inc.* (Case No. 1:12-CV-02443-JG), in consideration for your release of the Released Parties as set forth in the Settlement Agreement and Release, which can be viewed at www.intellicorpclassaction.com."  In the event the cases of the Litigation are consolidated prior

to Final Approval, the settlement checks shall state:  "This payment is tendered to you as a class

member in *Roe, et al., v. Intellicorp Records, Inc.* (Case No.: 1:12-CV-02288-JG)."

7.4.  The Automatic Payment Fund settlement checks shall expire 60 days after the date they are

issued.

## VIII.   INACCURACY FUND

8.1.  **Inaccuracy Fund Claims Process**

8.1.1.  Settlement Class Members who elect to seek a distribution from the Inaccuracy Fund must

submit such claims by no later than the Reservation Date by either (a) completing the Inaccuracy

Fund Claim Form on the Settlement Website; or (b) returning to the Settlement Administrator,

via U.S. mail, the Inaccuracy Fund Claim Form attached to the Mail Notice and the Electronic

Mail Notice.

8.1.2.  Submission of Inaccuracy Fund Claim Forms shall be permitted commencing on the

Notice Date.

8.1.3.  To be eligible to participate in the Inaccuracy Fund, a claimant must complete the

Inaccuracy Fund Claim Form, which shall be provided within the Mail Notice and the Electronic

Mail Notice and also made available by request from the Settlement Administrator or for

completion on the Settlement Website.  The Inaccuracy Fund Claim Form in a form substantially

similar to the form of Inaccuracy Fund Claim Form attached hereto as Exhibit C, shall be a

simple, one-page form requiring only confirmation of the Settlement Class Member's name,

current postal address, current telephone number, date of birth, last four digits of the Settlement

Class Member's Social Security number or Alien Registration number, and a statement signed

under penalty of perjury that the claimant believes that he or she has suffered actual damages

based on a previous Intellicorp report inaccuracy.  The Inaccuracy Fund Claim Form and the

Settlement Website shall provide complete instructions for completion of this claims process.

23

8.1.4.  Inaccuracy Fund Claim Forms submitted by U.S. mail shall contain the same information as contained in the electronic form (plus the Settlement Class Member's physical signature) and shall be mailed to a separate, dedicated post office box established by the Settlement Administrator exclusively for the purpose of receiving such Inaccuracy Fund Claim Forms as provided herein.

8.1.5.  Inaccuracy Fund Claim Forms may be filed by deceased Settlement Class Members through representatives of their estates if appropriate documentation is provided.  Any claim paid to a deceased Settlement Class Member shall be made payable to the estate of the deceased Settlement Class Member.

8.1.6.  Inaccuracy Fund Claim Forms, whether submitted electronically via the Settlement Website or by U.S. mail, that do not meet the requirements as set forth in this Settlement Agreement and in the registration form instructions shall be rejected by the Settlement Administrator.  Any Inaccuracy Fund Claimant whose claim is rejected shall not participate in the Inaccuracy Fund, but shall in all other respects be bound by the terms of this Settlement Agreement and by the Final Approval Order entered in the Litigation.

8.1.7.  The Settlement Administrator shall promptly notify such Settlement Class Member that his or her claim has been rejected and state the reasons for which the claim has been rejected. Settlement Class Counsel and Defendants' Counsel shall retain the right to review the Inaccuracy Fund Claim Forms submitted by Settlement Class Members.   In the event of a dispute as to any decision of the Settlement Administrator to approve or reject any claim, the Parties' counsel shall meet and confer to attempt resolution of the dispute in order to advise or instruct the Settlement Administrator.  Whether or not Settlement Class Counsel or Defendants' Counsel affirmatively request a review of the claim forms, the Settlement Administrator shall timely provide copies of

any rejection notices to Settlement Class Counsel and to Defendants' Counsel.  Settlement Class Members whose Inaccuracy Fund Claim Forms have been rejected may submit a corrected Inaccuracy Fund Claim Form before the Reservation Date, but not thereafter.

8.2. **Inaccuracy Fund Claimants**

8.2.1.  The amount of the Gross Settlement Amount remaining in the Settlement Fund after the distribution of Automatic Payment Fund settlement checks, net of attorney's fees, service awards, and cost of notice and administration shall be the Inaccuracy Fund.  This amount shall include the amount of any Automatic Payment Fund settlement checks that remain uncashed at the end of the 60th day after the date the Automatic Payment Fund settlement checks are issued.

8.2.2.  The payment to each Inaccuracy Fund Claimant shall be made *pro rata* based on the number of Inaccuracy Fund Claimants and the amount of the Inaccuracy Fund as calculated after the end of the sixty-day period described in Section 13.6.1.  To calculate the gross (pre-fees and costs) *pro rata* amount of each payment, the Settlement Administrator shall divide the amount in the Inaccuracy Fund by the total number of Inaccuracy Fund Claimants.  Notwithstanding the foregoing, the payment from the Inaccuracy Fund to each Inaccuracy Fund Claimant may not exceed two thousand dollars ($2,000).

8.2.3.  Inaccuracy Fund settlement checks shall state: "This payment is tendered to you as a class member in *Roe v. Intellicorp Records, Inc.* (Case No.: 1:12-CV-02288-JG); *Johnson v. Insurance Information Exchange, LLC* (Case No 1:13-CV-00616-JG); and/or *Thomas, et al. v. Intellicorp Records, Inc.* (Case No. 1:12-CV-02443-JG), in consideration for your release of the Released Parties as set forth in the Settlement Agreement and Release."  In the event the cases of the Litigation are consolidated prior to Final Approval, the settlement checks shall state:  "This

payment is tendered to you as a class member in *Roe, et al., v. Intellicorp Records, Inc.* (Case No.: 1:12-CV-02288-JG)."

8.2.4.  All Inaccuracy Fund settlement checks shall expire sixty (60) days after the issuance of the Inaccuracy Fund settlement checks.

8.3.  **Reservation of Actual Damages Claims**

8.3.1.  A member of the Settlement Class may remain in the Settlement Class, receive a distribution from the Automatic Payment Fund (if eligible), but elect to forgo the right to participate in the Inaccuracy Fund and instead reserve his or her right to pursue a claim under 15 U.S.C. §§ 1681e or 1681i, solely on an individual basis and solely for his or her actual damages (i.e., a Reserved Actual Damages Claim).  Reserved Actual Damages Claims will not include any claim for statutory, punitive, consequential, or any other type or category of damages aside from actual damages.  Settlement Class Members who preserve their Reserved Actual Damages Claims may pursue such Reserved Actual Damages Claims solely on an individual basis, and not on a mass, class, joint, or any other basis.

8.3.2.  Any Settlement Class Member who wishes to forgo the right to participate in the Inaccuracy Fund and instead preserve a Reserved Actual Damages Claim must notify the Settlement Administrator of the election to preserve such Reserved Actual Damages Claim on or before the date one hundred (100) days following the Notice Date (i.e, the Reservation Date), by completing a paper or electronic version of the Inaccuracy Fund Exclusion Form, a copy of which shall be maintained on the Settlement Website.  Any Settlement Class Member electing to preserve a Reserved Actual Damages Claim must submit a completed electronic version of the Inaccuracy Fund Exclusion Form by the Reservation Date or a paper Inaccuracy Fund Exclusion Form postmarked on or before the Reservation Date.  The Inaccuracy Fund Exclusion Form,

26

which shall be in a form substantially similar to, and contain the language of, the form of

Inaccuracy Fund Exclusion Form attached hereto as Exhibits D1 and D2, shall contain

information about how a Settlement Class Member may exclude him or herself from the

Inaccuracy Fund, and the potential implications of doing so, including that he or she may need to

retain his or her own attorney, file a complaint in the appropriate court within the time provided

by applicable statutes of limitations, and make the applicable evidentiary showing subject to the

governing burdens of proof before receiving any recovery with respect to his or her claim.

8.3.3.  Any Settlement Class Member who has not preserved his or her Reserved Actual

Damages Claim on or before the Reservation Date will be bound by the releases contained in

Section XIV of this Agreement, and will be precluded from asserting a Reserved Actual

Damages Claim.

8.3.4.  Any Settlement Class Member who completes the Inaccuracy Fund Claim Form and also

completes the Inaccuracy Fund Exclusion Form, regardless of the order in which the forms are

submitted to the Settlement Administrator, will be deemed to have elected to participate in the

Inaccuracy Fund, will be bound by the releases contained in Section XIV of this Agreement, and

will be precluded from asserting a Reserved Actual Damages Claim, unless the Settlement Class

Member expressly revokes his or her Inaccuracy Fund Claim Form, in writing, prior to the

Reservation Date.  The Settlement Administrator shall contact Settlement Class Members who

have submitted conflicting forms in an attempt to resolve the conflict.  Any Settlement Class

Member for whom such a conflict remains unresolved on the Reservation Date shall be deemed

to have made a final election to participate in the Inaccuracy Fund.

8.3.5.  **List of Settlement Class Members Requesting Exclusion from Inaccuracy Fund**

Each week, the Settlement Administrator shall provide to Settlement Class Counsel and Defendants' Counsel a complete list of all persons who have properly preserved a Reserved Actual Damages Claim, together with copies of the Inaccuracy Fund Exclusion Forms.  No later than two (2) business days after the Reservation Date, the Settlement Administrator shall provide to Settlement Class Counsel and Defendants' Counsel a complete and final list of all Settlement Class Members who have properly preserved a Reserved Actual Damages Claim.

8.3.6.  **No Liability for Determinations Relating to Validity of Claims**

No person shall have any claim against Defendants, Plaintiffs, the Settlement Class, Settlement Class Counsel, Defendants' Counsel, Defendants' insurers or the Settlement Administrator based on any claims determinations made in accordance with this Settlement Agreement.

## IX.  FINAL FAIRNESS HEARING AND FINAL APPROVAL

9.1.  **Final Fairness Hearing**

Within thirty (30) days after the Reservation Date, or on such other date as set by the Court, the Parties shall jointly file a motion for entry of the Final Approval Order, the text of which the Parties shall in good faith agree upon.  The Parties agree that the Final Approval Order will constitute a final judgment dismissing the Litigation with prejudice.  The Final Approval Order shall include, at a minimum, the substance of the following provisions:

(a) approving finally this Settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation according to its terms;

(b) ruling on Settlement Class Counsel's application for an award of attorneys' fees, costs, and service awards for the Plaintiffs;

(c) finding that all Settlement Class Members shall be bound by this Settlement Agreement including the release provisions;

(d) as to Defendants, directing that the Litigation be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

(e) finding that the notice given constitutes due, adequate and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

(f) incorporating the releases set forth in Section 14.2 of this Settlement Agreement, and forever barring any claims or liabilities related to the Litigation or any Released Claims against any of the Released Parties; and

(g) reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement.

9.2.  **Final Approval**

All relief contemplated by this Settlement Agreement is expressly contingent upon the Settlement Agreement receiving Final Approval.

## X.    CURRENT REPORTS

10.1.  For a period of one hundred and eighty (180) days after the Effective Date, upon request by any Settlement Class Member (no more than one request per Settlement Class Member), Intellicorp will generate and make available to that Settlement Class Member, without charge, a Current Report.  Each Current Report shall identify each employer who received a consumer report since April 16, 2010 for that Settlement Class Member that contained an adverse public record and the date on which such report was furnished.  Current Reports shall be provided substantially in the form of the report attached hereto as Exhibit F.

10.2.  The Class Notice will provide each Settlement Class Member with an individual identification code, which the Settlement Class Member may use (along with other information

29

sufficient to confirm the requester's identity, including name and date of birth) to request the Current Report either by telephone, mail or online. Following receipt of such request, the Current Report will be made available to the Settlement Class Member by e-mail, online, or by U.S. mail (at the Settlement Class Member's election) and will remain accessible for six (6) months after the date first made available to the Settlement Class Member.

10.3.  Any Settlement Class Member who loses his or her Class Notice may obtain the code by sufficiently identifying him/herself to the Settlement Administrator.

## XI.  EXPEDITED INACCURACY DISPUTE RESOLUTION PROCESS

11.1.  Beginning on the Effective Date and ending one hundred and eighty (180) days after the Effective Date, Defendants shall maintain an expedited inaccuracy dispute resolution process available to all Settlement Class Members who request a Current Report.

11.2.  Defendants agree to: (a) establish a dedicated toll-free telephone number to be used solely for this dispute process; (b) make available a direct contact at Intellicorp, who will be authorized to speak with Settlement Class Counsel, in Settlement Class Counsel's role assisting Settlement Class Members with the correction of inaccurate reporting in the Current Report; and (c) provide a process designed to resolve disputes, when reasonably possible, within ten (10) business days of receipt of information from the Settlement Class Member sufficient to identify the information in the Current Report that is disputed by the Settlement Class Member.

## XII.  PRACTICE CHANGES

12.1.  Within six (6) months of the Effective Date, Intellicorp agrees to implement the following process changes with respect to consumer reports sold for employment purposes:

 (a)  Intellicorp will not advertise Criminal SuperSearch or other similar database product as an "instant" product.

(b) If a Criminal SuperSearch or other similar database product includes results from a court records search, Intellicorp shall not make those results available unless and until a Single County Criminal ("SCC") search or other appropriate individualized search is conducted with respect to those results.  If the court records search shows a "hit," Intellicorp will provide to an employer only the results of the SCC search or other individualized search with respect to that criminal history information.  If the employer purchases one or more SCC searches, Intellicorp shall provide only the results of those searches when they are available.  If a Criminal SuperSearch shows a "clean" criminal history, Intellicorp may furnish a report based on those search results to the employer.  A "court records search" as used in this paragraph does not include searches of sex offender registries or department of corrections records.

## XIII.  SETTLEMENT FUND

### 13.1.  Creation of and Deposit Into Settlement Fund

The Settlement Administrator shall establish a qualified settlement fund or equivalent account approved by Defendants at the Financial Institution to hold the Settlement Fund.  The Settlement Fund shall be considered a common fund created as a result of the Litigation.  Settlement Class Counsel and Defendants' Counsel shall direct the Settlement Administrator to make distributions from the Settlement Fund only in accordance with this Settlement Agreement and orders of the Court.  The Settlement Administrator shall promptly notify the other Parties of the date of the establishment of the account. Within twenty (20) business days after Preliminary Approval, the Defendants shall cause to be deposited with the Financial Institution, by draft or by wire, one million five hundred thousand dollars ($1,500,000.00) of the Gross Settlement Amount, in order to fund the costs of notice and administration.  Within twenty (20) business days after the Effective Date, the Defendants shall cause to be deposited with the Financial

Institution, by draft or by wire, the balance of the Gross Settlement Amount, i.e., the difference

between (x) the Gross Settlement Amount and (y) the $1,500,000.00 deposited following

Preliminary Approval and any other amounts paid by Defendants and their insurers into the

Settlement Fund.  The Settlement Fund may not be commingled with any other funds and may

be held in cash, cash equivalents, certificates of deposit or instruments insured by an arm of or

backed by the full faith and credit of the United States Government.  Interest earned, if any, on

the Settlement Fund shall be for the benefit of the Settlement Class in the event this Settlement

Agreement is not terminated by the Defendants and the Effective Date otherwise occurs.

13.2.  **Settlement Fund Tax Status**

13.2.1.  The Parties agree to treat the Settlement Fund as being at all times a "qualified

settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Settlement

Administrator shall timely make such elections as necessary or advisable to carry out the

provisions of this Subsection, including the "relation back election" (as defined in Treas. Reg.

§ 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with

the procedures and requirements contained in such regulations.  It shall be the responsibility of

the Settlement Administrator to timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties, and thereafter to cause the appropriate

filing to occur.

13.2.2.  For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986,

as amended, and the regulations promulgated thereunder, the "administrator" shall be the

Settlement Administrator.  The Settlement Administrator shall timely and properly file all

informational and other tax returns necessary or advisable with respect to the Settlement Fund

(including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns

(as well as the election described in Subsection 13.2.1) shall be consistent with this Subsection and in all events shall reflect that all federal or state income taxes (including any estimated taxes, interest or penalties) ("**Taxes**") on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Subsection 13.2.3 hereof.

13.2.3.  All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this Subsection (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Subsection 13.2.2 ("**Tax Expenses**")), shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses.  The Settlement Administrator shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)); the Released Parties are not responsible therefor nor shall they have any liability with respect thereto.  The Parties hereto agree to cooperate with the Settlement Administrator,

each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

13.3.  **Attorneys' Fees**

13.3.1.  No later than fourteen (14) days before the Final Approval Hearing, Settlement Class Counsel shall file an application or applications to the Court for reimbursement of Attorneys' Fees and costs from the Settlement Fund, not to exceed one-third (⅓) of the Gross Settlement Amount.  The application or applications shall be noticed to be heard at the Final Fairness Hearing.  Defendants do not and will not oppose such a request.  To the extent the Court approves an award of Attorneys' Fees in an amount less than the amount requested by Settlement Class Counsel, the difference will remain in the Settlement Fund and be distributed to Settlement Class Members according to the terms of the Agreement.

13.3.2.  Plaintiffs and Settlement Class Counsel agree that this Settlement Agreement is not conditional on the Court's approval of Attorneys' Fees in the requested amount or in any amount whatsoever.  The Court's ruling on the application or applications for such fees shall not operate to terminate or cancel the Settlement.

13.3.3.  Defendants shall have no responsibility for, nor any liability with respect to, the payment of Attorneys' Fees to Settlement Class Counsel beyond that which is set forth in this Settlement Agreement, i.e., the sole source of any payment of Attorneys' Fees shall be the Settlement Fund.

13.3.4.  Attorneys' Fees in the amount approved by the Court will be paid through distribution from the Settlement Fund by the Settlement Administrator within twenty five (25) business days after the Effective Date.  The Attorneys' Fees approved by the Court shall be paid by the Settlement Administrator in accordance with written instructions to be provided by Leonard A.

Bennett of Consumer Litigation Associates, P.C. and Jonathan E. Gertler of Chavez & Gertler LLP, as authorized representatives of all Settlement Class Counsel.

13.4.  **Service Awards to the Plaintiffs**

13.4.1.  On or before fourteen (14) days before the Final Fairness Hearing, Settlement Class Counsel shall file an application or applications to the Court for service awards, not to exceed $10,000 each, to be paid to each of the Plaintiffs serving as class representatives.  To the extent the Court approves service awards in an amount less than $10,000 to each Plaintiff, the difference will remain in the Settlement Fund and shall be distributed to Settlement Class Members according to the terms of the Agreement.

13.4.2.  Plaintiffs and Settlement Class Counsel agree that this Settlement Agreement is not conditional on the Court's approval of service awards in the requested amount or in any amount whatsoever.  The Court's ruling on the application or applications for such service awards shall not operate to terminate or cancel the Settlement.

13.4.3.  Any service award payments shall be paid from the Settlement Fund within twenty five (25) business days after the Effective Date.

13.5.  **Use and Disbursement of Settlement Fund**

The Settlement Fund shall be used only in the manner and for the purposes provided for in this Agreement.  No portion of the Settlement Fund shall be disbursed except as expressly provided for herein.

13.5.1.  Upon Preliminary Approval, the Settlement Administrator shall disburse funds as previously contracted for the costs of notice and related administrative expenses incurred with respect to effecting the Notice Plan as provided in Section 4.2.

13.5.2.  Within thirty (30) business days after the Effective Date, the Settlement Administrator shall begin the distribution of the funds remaining in the Settlement Fund (after payments of amounts pursuant to Sections 13.3 and 13.4) to the Settlement Class Members in accordance with this Agreement.

13.5.3.  The Settlement Administrator shall distribute payments from the Settlement Fund pursuant to the Distribution Plan set forth in Section 13.6.  The Settlement Administrator may deduct from the Settlement Fund any and all reasonable and necessary expenses for the administration of such payments (e.g., costs associated with generating and mailing checks to Settlement Class Members) as well as all reasonable and necessary expenses for the determinations as to the validity of Inaccuracy Fund Claims.

13.5.4.  On or before the date eighty (80) days after the Inaccuracy Fund settlement checks are issued, the Settlement Administrator will distribute to Defendants up to two hundred thousand dollars ($200,000.00) from any excess funds remaining in the Settlement Fund that are attributable to uncashed settlement payment checks, or if the Settlement Fund contains less than $200,000.00, the balance of such uncashed checks, to defray the costs of notice and administration.

13.5.5.  Any excess funds remaining in the Settlement Fund after all distributions have been made in accordance with this Agreement shall be donated to the *cy pres* entity chosen by Settlement Class Counsel, subject to Defendants' consent, which shall not unreasonably be withheld, and as approved by the Court.

13.6.  **Distribution Plan**

13.6.1.  **Automatic Payment Fund Payments**

Within thirty (30) business days after the Effective Date, the Settlement Administrator shall mail the Automatic Payment Fund checks via U.S. mail.  The payment notices accompanying the payment checks shall notify the recipients that the checks must be cashed within sixty (60) days from the date on the payment notice and that the enclosed check shall not be valid after that date and shall include the releases set forth in Section 14.2.  Sixty (60) days after the date on the payment notice, if the check has not been deposited or cashed, the amount of the check shall become part of the Inaccuracy Fund for further distribution pursuant to Section 13.6.2.

13.6.2.  **Inaccuracy Fund Payments**

Seventy-five (75) days after the date of the last payment notice mailed to Automatic Payment Fund Class Members pursuant to the preceding paragraph, the Settlement Administrator shall mail a payment notice and check in the amount calculated pursuant to Subsection 8.2.2, via U.S. mail, to the last and best known address of each Inaccuracy Fund Claimant.

13.7.  **Capped Fund**

Except for Defendants' costs of the generation of the class lists and of the CAFA Notice pursuant to Sections 4.1 and 4.4 hereof, all of the following must be paid from the Gross Settlement Amount: (a) notice and administration costs; (b) payments to the Settlement Class Members (including, for the avoidance of doubt, any Service Awards awarded to the Plaintiffs); and (c) payments to Settlement Class Counsel for Attorneys' Fees.  The Parties and their respective counsel agree that under no circumstances will Defendants and/or Defendants' insurers pay or cause to be paid more than the Gross Settlement Amount.

## XIV.   RELEASE OF CLAIMS

14.1.  Upon the Effective Date, Plaintiffs, for themselves and as representatives of the Settlement Class, and on behalf of each member of the Settlement Class and/or his or her respective spouse, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released, and discharged the Released Parties of and from, the Released Claims.  Subject to the Court's approval, this Settlement Agreement shall bind all Settlement Class Members, and all of the Released Claims shall be dismissed with prejudice and released as against the Released Parties, even if a Settlement Class Member never received actual notice of the Settlement prior to the hearing on final approval of the Settlement.

14.2.  **Released Claims**

In exchange for the relief described in this Settlement Agreement, the Plaintiffs, Settlement Class Members, and any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf agree to release the Released Parties from all duties, obligations, demands, claims, actions, causes of action, suits, damages, rights or liabilities of any nature and description whatsoever, whether arising under local, state or federal law, whether by Constitution, statute (including, but not limited to, the FCRA and FCRA State Equivalents), tort, contract, common law or equity or otherwise, whether known or unknown, concealed or hidden, suspected or unsuspected, anticipated or unanticipated, asserted or unasserted, foreseen or unforeseen, actual, fixed, or contingent, liquidated or unliquidated, related to, arising from or in connection with Defendants' furnishing, prior to September 16, 2013, of a consumer report or other information regarding that Settlement Class Member or

38

related to, arising from or in connection with the file for that Settlement Class Member maintained by Defendants.  It is the intent of the Parties that this release cover every possible claim that could have been brought under the FCRA and FCRA State Equivalents, regardless of whether it was a claim relating to accuracy, privacy, disclosure, notification, dispute processing, or any other requirement imposed by federal or state law in connection with furnishing consumer reports.  This release includes, but is not limited to, all claimed or unclaimed compensatory damages, actual damages, damages stemming from any allegations of willfulness, recklessness, damages for emotional distress, statutory damages, consequential damages, incidental damages, treble damages, punitive and exemplary damages, as well as all claims for equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged in the Litigation, including but not limited to, any and all claims under deceptive or unfair practices statutes, or any other statute, regulation or judicial interpretation.  This release also includes interest, costs, and fees arising out of any of the claims described above.  Nothing in this Settlement Agreement shall be deemed a release of the Parties' respective rights and obligations under this Settlement Agreement.

14.3.  Notwithstanding any of the foregoing in Section 14.2, the release granted by any Settlement Class Member who has validly preserved his or her Reserved Actual Damages Claim in the manner provided by Section 8.3 of this Settlement Agreement does not release the Reserved Actual Damages Claim of that Settlement Class Member, which claim is expressly preserved and not released.  For the avoidance of doubt, this reservation does not include any claim for statutory, punitive, consequential, or any other type or category of damages aside from actual damages; such claims are released.  For the further avoidance of doubt, this reservation

does not include the right to pursue any such reserved claim for actual damages other than on an

individual basis (i.e., not on a mass, class, joint, or any other basis).

14.4.  **Release of Unknown Claims**

      The claims described in Section 14.1 or 14.2, as applicable, are released regardless of

whether they are known or unknown, concealed or hidden, suspected or unsuspected, anticipated

or unanticipated, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated

or unliquidated, fixed or contingent.

14.5.  **Waiver of California Civil Code Section 1542**

      Plaintiffs, for themselves and for each Settlement Class Member, acknowledge that they

are aware that they may hereafter discover facts in addition to or different from those that they or

Settlement Class Counsel now knows or believes to be true with respect to the subject matter of

these releases, but it is their intention to, and they do hereby, upon the Effective Date of this

Settlement Agreement, fully, finally and forever settle and release any and all Released Claims,

without regard to the subsequent discovery or existence of such different or additional facts.

Plaintiffs, for themselves and for each Settlement Class Member, waive any and all rights and

benefits afforded by California Civil Code Section 1542, which provides as follows:

          A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
          WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
          TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
          EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
          OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
          HER SETTLEMENT WITH THE DEBTOR.

      Plaintiffs and Settlement Class Counsel understand and acknowledge the significance of

this waiver of California Civil Code Section 1542 and/or of any other applicable federal or state

law relating to limitations on releases.

## XV.   TERMINATION

15.1.  **Right to Terminate Agreement**

15.1.1.  Defendants' willingness to settle this Litigation on a class basis and to agree to the certification of a conditional Settlement Class is dependent upon achieving finality in this Litigation, and the desire to avoid the expense of this and other litigation.  Consequently, Defendants shall have the unilateral and unfettered right to terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Plaintiffs, Settlement Class Members, or Settlement Class Counsel if any of the following conditions subsequently occurs:

(a)  The Court fails or declines to grant Preliminary Approval;

(b)  The Court materially modifies the Final Approval Order such that it is not acceptable to Defendants; or

(c)  The Effective Date does not occur for any reason, including the entry of an order by any court that would require either material modification or termination of the Settlement.

15.1.2.  Additionally, Defendants may, at their option, on or before the date ten (10) business days after the Reservation Date, terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Plaintiffs, Settlement Class Members, or Settlement Class Counsel if any of the following conditions occurs:

(a)  More than 3% of the Settlement Class Members request to opt out of the Settlement pursuant to Section 5.1; or

(b)  More than 3% of the Settlement Class Members elect to preserve Reserved Actual Damages Claims pursuant to Section 8.3.

15.1.3.  Plaintiffs shall have the unilateral and unfettered right to terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Defendants if any of the following conditions subsequently occurs:

(a)  The Court fails or declines to grant Preliminary Approval;

(b)  The Court materially modifies the Final Approval Order such that it is not acceptable to Plaintiffs;

(c)  The total number of Settlement Class Members within the class list prepared pursuant to this agreement exceeds 545,000 by more than 3%, unless Defendants elect to contribute an additional amount to the Settlement Fund in proportion to this increased class size; or

(d)  The total number of Automatic Payment Fund Class Members within the class list prepared pursuant to this agreement exceeds 123,697 by more than 3%, unless Defendants elect to contribute an additional amount to the Settlement Fund in proportion to this increased class size.

15.1.4.  The failure of any Court to approve the Attorneys' Fees in the requested amounts, or any amount whatsoever, or the Service Payments in the requested amounts or in any amount whatsoever, shall not be grounds for Plaintiffs or Settlement Class Counsel to terminate this Settlement Agreement.

15.2.  **Effect of Termination on This or Future Litigation**

If this Settlement Agreement is terminated:

(a)  the class certification portions of the Settlement Agreement shall have no further force and effect and shall not be offered in evidence or used in the Litigation or in any other proceeding;

(b) counsel for the Parties shall seek to have any Court orders, filings, or other entries in the Court's file that result from this Settlement Agreement set aside, withdrawn, and stricken from the record;

(c) the Settlement Agreement, the confidential memorandum of understanding, and all negotiations, proceedings, and documents prepared, and statements made in connection with either of them, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law nor offered into evidence; and

(d) the Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

**15.3. Effect of Termination on Monies Paid by Defendants and Defendants' Insurers Pursuant to Settlement Agreement**

If this Settlement Agreement is terminated, the Settlement Fund, including interest earned, less Taxes, Tax Expenses, and notice, claims, and other administration costs (including fees, costs, and other expenses of the Settlement Fund) that have been properly disbursed pursuant to this Settlement Agreement, shall be returned to Defendants and Defendants' insurers in equal proportions to their contributions into the Settlement Fund.

## XVI. PUBLIC STATEMENTS

16.1. Aside from the filing of court papers with the Court related to the Settlement, the Parties shall not, nor shall they cause any other person, to make any public statement with regard to the settlement or any terms thereof, without the express written authorization of the other Parties, until such time as the terms of the Settlement are made public as a result of Court-ordered notice to the Settlement Class. This prohibition is inapplicable to Settlement Class Counsel's communications with Settlement Class Members or potential Settlement Class Members. The

Parties shall not, nor shall they cause any other person, to issue any press release regarding the settlement or any terms thereof without express written authorization of the other Parties.

## XVII.  MISCELLANEOUS PROVISIONS

### 17.1.  Admissibility of Settlement Agreement

This Settlement Agreement shall not be offered or be admissible in evidence in any action or proceeding except (a) the hearings necessary to obtain and implement Court approval of this Settlement; or (b) any hearing to enforce the terms of this Settlement Agreement or any related order by the Court.

### 17.2.  Successors and Assigns

The terms of this Settlement Agreement shall apply to and bind the Parties as well as their heirs, successors and assigns.

### 17.3.  Communications Relating to Settlement Agreement

All notices or other formal communications under this Settlement Agreement shall be in writing and sent by mail to counsel for the Party to whom the notice is directed at the following addresses:

| **If to Plaintiffs** | **If to Defendants** |
|---|---|
| Leonard A. Bennett | Maryanne Foglia |
| Consumer Litigation Associates, P.C. | Verisk Analytics, Inc. |
| 12515 Warwick Boulevard, Suite 100 | 545 Washington Boulevard |
| Newport News, VA 23606 | Jersey City, NJ 07310 |
| *With copies to:* | *With copies to:* |
| Nance F. Becker | Joel M. Cohen |
| Chavez & Gertler LLP | Davis Polk & Wardwell LLP |
| 42 Miller Ave. | 450 Lexington Avenue |
| Mill Valley, CA 94941 | New York, NY 10017 |
| | David H. Wallace |
| | Taft Settinius & Hollister LLP |
| | 200 Public Square, Suite 3500 |
| | Cleveland, OH 44114 |

Any Party may, by written notice to all the other Parties, change its designated recipient(s) or notice address provided above.

### 17.4.  **Defendants' Communications with Settlement Class Members in the Ordinary Course of Business**

Defendants reserve the right to continue communicating with their customers and with consumers, including Settlement Class Members, in the ordinary course of business.  To the extent Settlement Class Members initiate communications regarding this Settlement Agreement, Defendants may confirm the fact of a settlement and refer inquiries to Settlement Class Counsel. Nothing herein is intended to prohibit Defendants from communicating with Settlement Class Members regarding disputes relating to the provision of consumer reports for employment purposes.

### 17.5.  **Efforts to Support Settlement**

The Parties and their counsel agree to cooperate fully in seeking Court approval for this Settlement Agreement and to use their best efforts to effect the consummation of the Settlement

and to protect the Settlement Agreement by applying for appropriate orders enjoining others from initiating or prosecuting any action arising out of or related to facts or claims alleged in the Litigation, if so required.

**17.6.  Procedures for Disputes Between Parties Relating to the Settlement Agreement**

To the extent any disputes or issues arise with respect to documenting or effecting the Settlement Agreement, the Parties agree to use their best efforts to informally resolve any such disputes or issues, and, in the event any such dispute or issue cannot be resolved informally, to bring any such dispute or issue to the Court for resolution.

**17.7.  Entire and Voluntary Agreement**

The Parties intend the Settlement Agreement to be a final and complete resolution of the Litigation.  The Parties agree that the terms of the Settlement Agreement were negotiated at arm's length and in good faith and were reached voluntarily after consultation with competent legal counsel.  There shall there be no presumption for or against any Party that drafted all or any portion of this Settlement Agreement.  This Settlement Agreement contains the entire agreement and understanding concerning the subject matter between the Parties and supersedes all prior negotiations and proposals, whether written or oral.  No Party or any agent or attorney of any Party has made any promise, representation or warranty whatsoever not contained in this Settlement Agreement to induce another Party to execute the same.  The Parties represent that they have not executed this instrument or the other documents in reliance on any promise, representation or warranty not contained in this Settlement Agreement.

**17.8.  Headings for Convenience Only**

The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

### 17.9. **Settlement Agreement Controls**

All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. To the extent that there is any conflict between the terms of this Settlement Agreement and the exhibits attached hereto, this Settlement Agreement shall control.

### 17.10. **Amendments**

The Settlement Agreement may be amended or modified only by a written instrument signed by Defendants and Settlement Class Counsel, or their respective successors-in-interest.

### 17.11. **Authorization of Counsel**

Settlement Class Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class that they deem necessary or appropriate.  Each attorney executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such attorney has the full authority to do so.

### 17.12. **Confidentiality**

All agreements made and Orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.  Within thirty (30) days of the Effective Date, all confidential documents and information obtained during discovery, including copies, summaries, or other reproductions or derivations of such materials, shall be returned promptly to the party that produced the materials.  In the alternative, the party possessing the information shall destroy it and provide the opposing party a certification to that effect unless such copies must be maintained pursuant to applicable Rules of Professional

Conduct. This paragraph includes, but is not limited to, the requirements of Magistrate Judge White's Order dated June 19, 2013, and Settlement Class Counsel will certify their compliance with that order within thirty (30) days of the Effective Date.

17.13. **Court's Jurisdiction**

The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement.

17.14. **Construction**

Each of the Parties has cooperated in the drafting and preparation of this Settlement Agreement. Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any of the Parties. Before declaring any provision of this Settlement Agreement invalid, a court should first attempt to construe the provision valid to the fullest extent possible, consistent with applicable precedent, so as to find all provisions of this Settlement Agreement valid and enforceable.

17.15. **No Claims Arising from this Settlement Agreement**

No person shall have any claim against any Defendant, Defendants' Counsel, Defendants' insurers, Plaintiffs or Settlement Class Counsel based on distribution of benefits made substantially in accordance with this Settlement Agreement or any Settlement Agreement-related order(s) of the Court.

17.16. **Applicable Law**

This Settlement Agreement shall, in all respects, be interpreted, construed and governed by and under the laws of the United States of America and the State of Ohio (without reference to Ohio's choice-of-law rules). All judicial proceedings regarding this Settlement Agreement shall be brought only in the Court. Any notice period set forth in this Settlement Agreement

shall be calculated pursuant to the Federal Rules of Civil Procedure and the Northern District of Ohio's Local Civil Rules.

17.17.  **Counterparts**

This Settlement Agreement may be executed in one or more counterparts and by facsimile.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Parties shall exchange among themselves signed counterparts, and a complete set of executed counterparts shall be filed with the Court.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Date: _____          By: _____
                                    Jane Roe, Plaintiff

Date: _10/18/2013_             By: _____
                                    Michael R. Thomas, Plaintiff

Date: _____          By: _____
                                    Mark A. Johnson, Plaintiff

Date: _____          By: _____
                                    Jonathan E. Gertler
                                    Counsel for Plaintiffs

Date: _____          By: _____
                                    Leonard Bennett
                                    Counsel for Plaintiffs

Date: _____          By: _____
                                    Joel M. Cohen
                                    Counsel for Defendants

Date: _____          By: _____
                                    Intellicorp Records, Inc.

Date: _____          By: _____
                                    Insurance Information Exchange
                                    (a division of ISO Claims Services, Inc.)

---

[1] Ms. Roe's counsel shall retain a copy of her non-pseudonymous signature, but such signature shall be subject to the Protective Order entered by the Court.

Date: _____        By: _____
                                    Jane Roe, Plaintiff[1]


Date: _____        By: _____
                                    Michael R. Thomas, Plaintiff


Date: _____        By: _____
                                    Mark A. Johnson, Plaintiff


Date: October 17, 2013         By: _____
                                    Jonathan E. Gertler
                                    Counsel for Plaintiffs


Date: _____        By: _____
                                    Leonard Bennett
                                    Counsel for Plaintiffs


Date: _____        By: _____
                                    Joel M. Cohen
                                    Counsel for Defendants


Date: _____        By: _____
                                    Kenneth E. Thompson, Secretary
                                    Intellicorp Records, Inc.


Date: _____        By: _____
                                    Kenneth E. Thompson, Secretary
                                    Insurance Information Exchange
                                    (a division of ISO Claims Services, Inc.)

---

[1] Ms. Roe's counsel shall retain a copy of her non-pseudonymous signature, but such signature shall be subject to the Protective Order entered by the Court.

Date: _____          By: _____
                                       Jane Roe, Plaintiff[1]


Date: _____          By: _____
                                       Michael R. Thomas, Plaintiff


Date: _____          By: _____
                                       Mark A. Johnson, Plaintiff


Date: _____          By: _____
                                       Jonathan E. Gertler
                                       Counsel for Plaintiffs


Date: _____          By: _____
                                       Leonard Bennett
                                       Counsel for Plaintiffs


Date: _____          By: _____
                                       Joel M. Cohen
                                       Counsel for Defendants


Date: _____          By: _____
                                       Kenneth E. Thompson, Secretary
                                       Intellicorp Records, Inc.


Date: _____          By: _____
                                       Kenneth E. Thompson, Secretary
                                       Insurance Information Exchange
                                       (a division of ISO Claims Services, Inc.)

_____

[1] Ms. Roe's counsel shall retain a copy of her non-pseudonymous signature, but such signature shall be subject to the Protective Order entered by the Court.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Date: _____      By: _____

                                                         Jane Roe, Plaintiff[1]

Date: _____      By: _____

                                                         Michael R. Thomas, Plaintiff

Date: _____      By: _____

                                                         Mark A. Johnson, Plaintiff

Date: _____      By: _____

                                                         Jonathan E. Gertler
                                                          Counsel for Plaintiffs

Date: _____      By: _____

                                                         Leonard Bennett
                                                          Counsel for Plaintiffs

Date: _____      By: _____

                                                         Joel M. Cohen
                                                          Counsel for Defendants

Date: _____      By: _____

                                                         Kenneth E. Thompson, Secretary
                                                           Intellicorp Records, Inc.

Date: _____      By: _____

                                                         Kenneth E. Thompson, Secretary
                                                           Insurance Information Exchange
                                                           (a division of ISO Claims Services, Inc.)

---

[1] Ms. Roe's counsel shall retain a copy of her non-pseudonymous signature, but such signature shall be subject to the Protective Order entered by the Court.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Date: _____        By: _____
                                        Jane Roe, Plaintiff[1]

Date: _____        By: _____
                                        Michael R. Thomas, Plaintiff

Date: _____        By: _____
                                        Mark A. Johnson, Plaintiff

Date: _____        By: _____
                                        Jonathan E. Gertler
                                        Counsel for Plaintiffs

Date: _____        By: _____
                                        Leonard Bennett
                                        Counsel for Plaintiffs

Date: _____        By: _____
                                        Joel M. Cohen
                                        Counsel for Defendants

Date: 10/18/13        By: _____
                                        Kenneth E. Thompson, Secretary
                                        Intellicorp Records, Inc.

Date: 10/18/13        By: _____
                                        Kenneth E. Thompson, Secretary
                                      Insurance Information Exchange
                                        (a division of ISO Claims Services, Inc.)

---

[1] Ms. Roe's counsel shall retain a copy of her non-pseudonymous signature, but such signature shall be subject to the Protective Order entered by the Court.